**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **OASIS RESEARCH, LLC,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | Civil Action No. 4:10cv435-MHS-ALM |
| ) | |
| **AT&T CORP., et al.,** ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## OASIS' OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

    I.     ONLINE STORAGE ..................................................................................2

    II.    ESTABLISHING ONLINE CONNECTIONS.........................................3

    III.   SIGNING UP FOR ONLINE SERVICES ................................................4

    IV.   ACCESSIBILITY OF ONLINE SERVICES ..........................................5

ARGUMENT ...........................................................................................................5

    I.     CLAIM TERMS ARE PROPERLY CONSTRUED BASED ON THEIR ORDINARY MEANING IN LIGHT OF THE PATENT SPECIFICATION ..........................................................................................5

    II.    CONSTRUCTION OF THE CRAWFORD PATENTS........................8

        A.    "auxiliary storage" (term 1) ............................................................8

        B.    "backup" / "backing up" (term 2) ............................................10

        C.    establishing a session / connection / link / relationship / identifier (terms 3, 4, 5, 6, 7, 17, and 18) .....................................................12

            1.    No reason exists to change the plain meaning of "establishing."...............................................................................13

            2.    Online backup and storage providers need not use the entire Internet to infringe the asserted claims. .........................................15

            3.    "telecommunications connection" (term 6) ...................................16

        D.    "online storage" (term 9) ........................................................16

        E.    "online processing" (term 10)....................................................17

        F.    "backup, restore, and/or archive" / "backup, restore and/or archiving" (term 11)........................................................................19

            1.    "archive" ........................................................................19

            2.    "and/or"........................................................................21

        G.    "provider of online backup, online storage, online processing" (term 8)........................................................................................22

        H.    "online service provider" / "online services" (term 12)............................22

        I.    "virtual disk" (term 15) ........................................................22

i

J.  "substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer" (term 13)..................................................................24

K.  "making available, to the customer's computer via the telecommunications connection, at least some of the storage provided by the online service provider" (term 14)..................................25

L.  "allowing the customer computer to access the remote storage area provided by the online backup service provider storage by integrating the second Internet connection for access by the customer computer's file system" (term 16)..............................................26

M.  "validating the customer identifier and password" / "validating the customer's authority / "validating that the customer is permitted to access" (terms 19 and 20) ........................................................27

N.  "conditionally restricting at least a part of the customer's access" / "conditionally authorizing and/or restricting access" / "conditionally permitting or denying the customer" (terms 21, 22, and 23) ..............................................................................................28

O.  "generating billing information" / "billing the customer" / "requesting payment" (terms 24 and 25) ...................................................29

P.  "tracking" / "logging" (term 26) ...............................................................30

CONCLUSION.................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
  334 F.3d 1343 (Fed. Cir. 2003) ................................................................... 23

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  632 F.3d 1246 (Fed. Cir. 2011) ..................................................................... 7

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
  868 F.2d 1251 (Fed. Cir. 1989) ..................................................................... 6

*DSW, Inc. v. Shoe Pavilion, Inc.*,
  537 F. 3d 1342 (Fed. Cir. 2008) ................................................................... 16

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  No. 6:09–CV–446, 2011 WL 3665342 (E.D. Tex. Aug. 22, 2011)................... 17, 21

*Epistar Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1321 (Fed. Cir. 2009) ................................................................... 17

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) ............................................................... 5, 6, 7

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*,
  887 F.2d 1050 (Fed. Cir. 1989) ................................................................... 14

*Kara Tech. Inc. v. Stamps.com Inc.*,
  582 F.3d 1341 (Fed. Cir. 2009) ..................................................................... 7

*Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*,
  630 F. Supp. 2d 654 (E.D. Va. 2008) ...................................................... 15, 16

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) .................................................................... 7, 8

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005) ................................................................... 24

*Motorola, Inc. v. VTech Commc'ns, Inc.*,
  No. 5:07cv171, 2009 WL 2026317 (E.D. Tex. July 6, 2009)...................... 6, 13, 16

*Netcraft Corp. v. eBay, Inc.*,
  549 F.3d 1394 (Fed. Cir. 2008) ..................................................................... 8

*Network Appliance Inc. v. Sun Microsystems Inc.*,
  No. C–07–06053 EDL, 2008 WL 4193049 (N.D. Cal. Sept. 10, 2008)................. 21

*NMT Medical v. Cardia*,
  239 Fed. Appx. 593 (Fed. Cir. 2007)............................................................. 18

*Omega Eng'g. Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ........................................................................ 21

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................. passim

*Regents of the Univ. of MN v. AGA Med. Corp.*,
   660 F. Supp. 2d 1037 (D. Minn. 2009) ............................................................... 6

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011) ........................................................................ 17

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001) ........................................................................ 13

*Stumbo v. Eastman Outdoors, Inc.*,
   508 F.3d 1358 (Fed. Cir. 2007) ........................................................................ 24

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ................................................................. 6, 7, 9

*TiVo Inc. v. Echostar Commc'ns Corp.*,
   No. 2:04–CV–1–DF, 2005 WL 6225413 (E.D. Tex. Aug. 18, 2005) ............... 14, 18

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*,
   366 F.3d 1311 (Fed. Cir. 2004) .......................................................................... 8

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ............................................................. 18, 19, 24

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ....................................................................... 6, 7

*White v. Dunbar*,
   119 U.S. 47 (1886)............................................................................................ 7

Plaintiff Oasis Research, LLC ("Oasis") respectfully submits this Opening Claim Construction Brief in support of Oasis' proposed constructions set forth in the parties' Joint Claim Construction and Prehearing Statement.  (D.I. 306.)

## INTRODUCTION

The patent claims at issue in this case are simple and clear.  Invented by Christopher Crawford, they claim methods by which an entity can provide commercial backup and storage services to customers using online connections.  Although the steps are claimed from the perspective of the server (the provider), most of the terms used are simple ordinary words that any jury will understand.  Such concepts include establishing an online connection, validating a customer username/password, and making storage available to the customer over that connection.  To the extent terms may not be commonly understood (*e.g.*, "virtual device") they are explicitly defined in the specification.  The claim-construction exercise in this case is straightforward.

Because many of the words and phrases used to describe and claim Crawford's invention are common, English words, they need not be interpreted by this Court.  Nonetheless, in many instances Oasis proposed definitions in an effort to narrow the issues before the Court.  Those definitions come directly from the intrinsic record, giving the terms straightforward and simple meanings supported by the specification.  Defendants' constructions are needlessly convoluted, and obfuscate Crawford's description of his invention.  That is because Defendants repeatedly commit the "cardinal sin" of claim construction by selecting a detailed description of a particular embodiment and importing it into general claim language that contains no such limitations.  Defendants' efforts to narrow and confuse Crawford's inventions should be rejected.

1

<u>STATEMENT OF FACTS</u>

**I.   ONLINE STORAGE**

Christopher Crawford invented a commercial service that allows computer users to enhance the capabilities of their computers without leaving their homes.  (Ex. A at Abstract.) One way in which users can enhance their computers is by adding storage resources.  (*Id.*) Because of Crawford's invention, users need not leave their homes to buy additional disks or drives; instead computers can connect over the Internet to companies that provide online auxiliary storage resources.  (*Id.*)  Additional auxiliary storage is required by a computer user for two reasons: first, "to store additional data or programs" if "the hard disk internal to [the user's computer were to] run out of space;" (Ex. A at 13:28-29); and second, for use in backup because the computer's internal hard disk "may fail and lose all of the data it previously stored."  (Ex. A at 13:30-31.)  "Backup can be incremental, full backup or based on a file list." (Ex. A at 33:4-5.) Crawford recognized that manual backup could "be a long and tedious process and the user may sometimes forget to do it."  (Ex. A at 13:33-34.)  Therefore, in one embodiment of his invention, he provided for automatic, periodic backup.  (*See* Ex. A at cl. 3; Ex. A at 37:62-66 ("[I]n the preferred embodiment this on-line session can be initiated either manually when the customer depresses an 'hot key' sequence on keyboard 56, or automatically at a prescheduled time.").)

To function, the online service must process the customers' data, *i.e.*, pass the data files back and forth online with the customer. (*See* Ex. D at 2:67-3:2.)  Other substantive processing is also possible, such as manipulating the data stored on the online storage into an encrypted form. (Ex. D at 19:41-43; 34:17-18 ("encryption performed on the . . . on-line service computer").) The service could back up active files or it could back up "customer files inactive for a specified period of time," also known as archiving.  (*See* Ex. C at 14:60-63; Ex. E at 9 ("commercial

backup service customers usually want to back up their 'active' files – since 'active' files may be more valuable (and more difficult to replace) than 'inactive' files").)

Crawford also addressed online data retrieval.  Rather than recover data by mail or by physically retrieving a disk from a safe place, Crawford's invention allows customers to log in to the service and recover files through an online connection.  (*See* Ex. C at 50:12-13; 33:16-27.)

## II.    ESTABLISHING ONLINE CONNECTIONS

The services invented by Mr. Crawford require the service provider and customer computer to establish an online connection.  Crawford explains that "[a] customer may connect the on-line service system 100 by many different methods" and that additional "methods may evolve as advances in telecommunications become available." (Ex. A at 16:57-60.)  The specification provides a long list of the types of connections that can be used including: "any of ISDN link, LAN/WAN connect, a 'front end controller,' another computer, a telephone company connection, a direct connection, a fiber optic link, a cable television link, cellular link, a satellite link, a radio frequency link and/or a PDN connection." (Ex. A at 16:61-65.)

But Crawford's invention is not limited by the method of connection, and the claims only require that a connection be established between the customer computer and the server. (*See, e.g.*, Ex. B at cl. 1.)  At the time of Crawford's invention, software existed that "allow[ed] an on-line, real time link to be established via modems and a telecommunication link between the master and the remote." (*See* Ex. A at 2:43-45.)  Before the modem on each side of the connection establishes a connection, one side initiates the connection.  In one embodiment described in the specification, the server initiates a signaling connection (*see* Ex. A at 25:33-34), in response to which the customer computer initiates an on-line connection.  (*See* Ex. A at 25:47-51.)  Subsequently, the online connection is established by both sides.  (*Id.*)  It is the establishing on the server side that is claimed in the asserted claims.  (*See, e.g.*, Ex. A at cl. 1.)

3

The connection can be initiated either manually or automatically.  (Ex. A at 37:62-66.)
To enable automatic, unattended backups, Crawford "provides an option to allow an on-line
session to occur without the user being present (*e.g.*, in the middle of the night)." (Ex. A at 36:8-
10.)  "If the session is to be unattended, then the configuration of customer computer 50 is
altered so that 'keystrokes' that would normally come from keyboard 56 may be provided under
program control automatically (block 548)."  (Ex. A at 36:13-16.)  But the preferred embodiment
"require[es] on-line connections to be initiated by customer computer 50 [because it] increases
security and also may make the customer feel better about security."  (Ex. A at 25:51-54.)

## III.    SIGNING UP FOR ONLINE SERVICES

One aspect of Crawford's invention allows customers to sign up for the service over the
Internet.  (*See generally*, Ex. A at 8:54-63, 57:9-18.)  The new customer is asked to input various
pieces of information.  (Ex. A at 57:35-39.)  The service provider's sign-up system may create a
configuration file which includes within it the customer's password.  (Ex. A at 8:56-57.)  That
process is also referred to as assigning a password to the new customer.  (*See* Ex. A at 57:39-41.)
The system can assign both a customer ID and password (*see id.*), or the customer identifier can
be the password.  (*See* Ex. C at cl. 16.)  The customer identifier and/or password may be based
"in part on a communication between [the] online service provider and [the] customer," *e.g.*, the
customer may select the customer ID and password.  (Ex. C at cl. 1; *see also id.* at cl. 71.)  In
addition to being stored on the service provider's system, the customer ID and/or password may
be stored "on the customer's computer for immediate, simplified access to the [online] service."
(Ex. E at 5.)  That is because the customer ID and/or password can be used to validate the
customer computer's access to the service.  (Ex. A at 50:41-43.)

## IV.    ACCESSIBILITY OF ONLINE SERVICES

Crawford envisioned several levels of integration and accessibility of the online storage service.  In one embodiment, Crawford described using virtual devices to access the online storage.  A virtual device, as defined by the specification, is "an arrangement that 'simulates' or 'emulates' a locally-attached, physical device.  For example, a 'virtual disk drive' can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that 'looks like' a physical disk drive."  (Ex. B at 18:13-19.)  Virtual disks that only "look like" a physical drive attached to the customer computer can be "read-only" devices used to read online storage files.  (*See* Ex. A at 18:62 (identifying "read-only" virtual drives); Ex. A at 28:40-41 (identifying "read-only" virtual drives).)  Virtual disks that act as physical disks locally attached to the customer computer may "include the ability to read and write to the online storage." (Ex. B at 18:19-22, 55-58; *see also* Ex. A at 28:40-41 (identifying "read/write devices").)

Rather than requiring a virtual device in all of his claims, Crawford's patents more broadly claim online storage that has substantially the same functionality as a physically and/or locally attached drive.  (*See* Ex. A at cl. 1(g).)  Adding an additional level of accessibility, Crawford also claims integrating the connection with the file system, *i.e.*, running communications software on the computer that allows the customer computer to access the storage using its file system.  (*See* Ex. A at cl. 2; *see also* Ex. A at 17:34-39.)

## ARGUMENT

## I.    CLAIM TERMS ARE PROPERLY CONSTRUED BASED ON THEIR ORDINARY MEANING IN LIGHT OF THE PATENT SPECIFICATION

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)).

They provide the "metes and bounds" of the patentee's right to exclude. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Accordingly, claim construction begins with and "remain[s] centered on the claim language itself." *Innova*, 381 F.3d at 1116.

Claim terms "'are generally given their ordinary and customary meaning.' . . . [T]he meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In cases where the claim terms are clear and would not be confusing to a jury, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314; *see also Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07cv171, 2009 WL 2026317, *8 (E.D. Tex. July 6, 2009) ("With regard to meaning, where additional language may be unduly limiting, confusing, or redundant, it is in a court's power to determine that no construction is necessary."); *Regents of the Univ. of MN v. AGA Med. Corp.*, 660 F. Supp. 2d 1037, 1046 (D. Minn. 2009) ("[Defendant's] proposed construction wrongly transforms a simple prepositional phrase into a series of statements larded with factual assertions that relate tangentially (at best) to the claim language to be construed.").

Although "the claim construction inquiry . . . begins and ends in all cases with the actual words of the claim," courts have looked for additional guidance in the "intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The specification "'is the single best guide to the

6

meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The prosecution history is also part of the intrinsic evidence. *Id.* at 1317.

But the specification should be used "for the purpose of better understanding the meaning of the claim . . . not for the purpose of changing it, and making it different from what it is." *White v. Dunbar*, 119 U.S. 47, 51-52 (1886). At all times, the invention should still be limited by the language of the claims, and not the specification. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1256 (Fed. Cir. 2011) ("[T]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.") (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc)). In particular, the discussion of specific embodiments in the specification "[should] not be used to limit claim language that has broader effect." *Innova*, 381 F.3d at 1117; *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Teleflex*, 299 F.3d at 1324 (referring to unjustifiably importing limitations from the specification as a "cardinal sin of claim construction") (internal quotation marks omitted).

Claim limitations that appear in dependent claims should not be added to independent claims. Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315.

While the Federal Circuit has "authorized district courts to rely on extrinsic evidence," it has cautioned that such extrinsic evidence "'is less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1397 (Fed. Cir. 2008) (quoting *Phillips*, 415 F.3d at 1317). Extrinsic evidence should not be relied on "for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981. In particular, "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term." *Phillips*, 415 F.3d at 1322 (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311 (Fed. Cir. 2004)). Technical dictionaries and treatises may also have discrepancies with a patent, "because the patent by its nature describes something novel." *Id.*

## II.   CONSTRUCTION OF THE CRAWFORD PATENTS

### A.   "auxiliary storage" (term 1)[1]

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claims 1, 5, 15) | "auxiliary storage" | storage in addition to internal storage used either: (1) to store additional data or programs in the event of space limitations; or (2) to store data for the purpose of being used in case of data loss or failure of internal storage | storage using a virtual disk, allowing a computer to increase the amount of storage it has by storing files on the virtual disk rather than the computer itself |

Independent claim 1 of the '228 patent claims a "method of providing on-line *auxiliary storage* computer services." (Ex. B at cl. 1.) The parties dispute the scope of "auxiliary storage." Oasis proposes that the term be construed to encompass two types of auxiliary storage (*i.e.*, extra storage space and backup storage) described by the patentee in the claims and in the specification. Defendants, on the other hand, seek to limit the term to a particular embodiment (a virtual disk), by importing limitations not found in the claims.

---

[1] Term numbers refer to the numbers assigned in Exhibit A to the Parties' Joint Claim Construction and Prehearing Statement Pursuant to P.R. 4-3. (D.I. 306-1.)

Oasis' proposed construction of "auxiliary storage" comes directly from the specification. *Phillips*, 415 F.3d at 1313.  In the specification, Crawford described two different types of auxiliary storage—(1) additional storage in the event of space limitations and (2) backup storage in the event that data is lost:

> ***Auxiliary storage capabilities*** are provided by floppy disk slot 60 and floppy diskettes 62.  Unfortunately, ***the hard disk internal to main processor unit 52 may run out of space to store additional data or programs, or it may fail and lose all of the data it previously stored.***  The user can "back up" the data stored on the internal hard drive . . . .  The user could, of course, upgrade his customer computer 50 by adding additional internal or external storage devices . . . .

(Ex. B at 13:36-45.)[2]  Oasis' construction also is supported by the prosecution history.  Both the patentee and the patent examiner considered auxiliary storage to be broader than mere backup: "The Examiner confirmed that he would consider broader claims such as claims not limited to 'backup' but more generically claiming online auxiliary storage services." (Ex. F at 31.)

Defendants' construction improperly adds limitations to the auxiliary storage, by requiring that the auxiliary storage resides on a "virtual disk" and that the user stores files on that virtual disk, "rather than [on] the computer itself."  Neither of those limitations appears in the claim, and the specification and prosecution history do not so limit Crawford's invention. Instead, Defendants' construction seeks to limit the claim to a preferred embodiment described in the specification:  "In the preferred embodiment, host computer 104 may provide one or more 'virtual' disk drives to customer computer 50. . ."  (Ex. B at 18:7-9.)  In doing so Defendants commit the "cardinal sin of claim construction"—limiting the claims to a preferred embodiment. *See Teleflex*, 299 F.3d at 1324 (internal quotations marks omitted); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

---

[2] Unless otherwise noted, all emphasis is added.

Defendants' limitations also violate the doctrine of claim differentiation. Claim 1 of the '228 patent merely requires that the online service provider make auxiliary storage available to the customer's computer via a telecommunications connection. (Ex. B at cl. 1.) Claim 2 of the '228 patent, which depends from claim 1, adds the further limitation of "attaching a virtual disk." (*Id.* at cl. 2.) Under the doctrine of claim differentiation, it is presumed that claim 1 is not limited to a virtual disk. *Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."). No reason exists to upset that presumption.

Accordingly, the Court should adopt Oasis' construction of "auxiliary storage," because it is consistent with the claims, the specification, and the prosecution history, and does not import limitations from the specification into the claim.

### B.     "backup" / "backing up" (term 2)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('354 patent, claims 1, 2, 3, 9, 24; '228 patent, claim 3; '943 patent, claims 4, 6; '051 patent, claim 9) | Plaintiff: "backup" / "backing up"<br><br>Defendants: "backup services" / "backup" / "backing up" | storing data for the purpose of being used in case of data loss or failure of internal storage | back up (verb) / backup services:  automated, periodic transfer of data to maintain an up-to-date copy of data for recovery purposes<br><br>backup (noun):  an up-to-date copy of data for recovery purposes obtained by automated, periodic transfer of data<br><br>Carbonite: no construction necessary |

Unlike claim 1 of the '228 patent, which is directed broadly to auxiliary storage, several of the asserted claims (see chart above) are directed to ***backup*** storage. As with auxiliary storage, Oasis proposes a construction—"storing data for the purpose of being used ***in case of data loss or failure of internal storage***"—that comes directly from the specification and is consistent with the claim language. Indeed, "backup" is simply a particular form of "auxiliary storage," that a computer user can use—in the words of the specification— to "'back up' the

10

*data stored on the internal hard drive*" in case an internal hard disk "*fail[s] and lose[s] all of the data it previously stored.*" (Ex. B at 13:31-51.) Oasis' construction also is consistent with the prosecution history, which explains that "backups are typically most needed when a customer computer's hard drive 'crashes.'" (Ex. E at 10); *see Phillips,* 415 F.3d at 1317.

Not content with the simple definition of backup provided by the inventor, Defendants again seek to import limitations into the claims. Specifically, Defendants propose that the backup must be "up-to-date," "automated," and "periodic." But none of those limitations are required by the claim language. Moreover, Crawford's specification acknowledges that backups may not be up-to-date, automated, or periodic. For example, Crawford explains that a "user can 'back up' the data stored on the internal hard drive . . . but . . . *the user may sometimes forget to do it*." (Ex. A at 13:31-34.) This description of "backup" recognizes that backup is not inherently up-to-date, automated, or periodic. If it were, there would be nothing for the user to forget. *See Phillips*, 415 F.3d at 1315 ("[The specification] is the single best guide to the meaning of a disputed term.").

Defendants' additional limitations also violate the doctrine of claim differentiation. Claim 1 of the '354 patent merely requires that the service provider provide backup services. (Ex. A at cl. 1.) Claim 3 of the '354 patent, which depends from claim 1, adds the further "step of *automatically periodically* backing up customer computer data onto the online backup service providers' remote storage area." (*Id.* at cl. 3) Under the doctrine of claim differentiation, it is presumed that backup is not limited to an automatically and periodically up-to-date backup. *See Phillips*, 415 F.3d at 1314-15. No reason exists to upset that presumption.

The Court should adopt Oasis' construction of "backup" because it is consistent with the claims, the specification, and the prosecution history, and does not import limitations from the specification into the claim.

**C.    establishing a session / connection / link / relationship / identifier (terms 3, 4, 5, 6, 7, 17, and 18)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|-------|------|------------------------------|-----------------------------------|
| ('354 patent, claim 1) | "*establishing* a [first/second] online Internet session" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection resulting in a [first/second] real time link over the Internet | initiating a connection resulting in a [first/second] live, interactive communication session using a worldwide network of computers connected together |
| ('228 patent, claims 3, 21) | "*establishing* an Internet connection" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection over the Internet | initiating a connection resulting in a live, interactive communication connection using a worldwide network of computers connected together |
| ('943 patent, claim 1)<br><br>('051 patent, claim 9) | "*establishing* an Internet link"<br><br>"*establishing* a communications link . . . using the Internet" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection resulting in a link over the Internet | initiating a connection resulting in a live, interactive communication link using a worldwide network of computers connected together |
| ('228 patent, claim 1) | "*establishing* a telecommunications connection" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection over a telecommunication link (*e.g.*, ISDN link, LAN/WAN connect, a "front end controller," another computer, a telephone company connection, a direct connection, a fiber optic link, a cable television link, cellular link, a satellite link, a radio frequency link and/or a PDN connection) | initiating a connection resulting in a live, interactive communication connection using a network of computers connected together |
| ('228 patent, claim 1, '943 patent, claim 1)<br><br>('051 patent, claim 9) | "*establishing* a customer relationship"<br><br>"*establishing* a customer/provider relationship" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] an account or other commercial arrangement with a customer | Indefinite.<br><br>In the alternative: the customer dialing a special charge telephone number to access the sign up computer system of the provider, resulting in the provider assigning and sending a user ID and password to the customer's computer |
| ('354 patent, claim 1) | "*establishing* a customer identifier and associated password for the customer" | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a user ID and password for the customer | the provider creating and assigning a user ID and password to the customer during the initial login |

**1.      No reason exists to change the plain meaning of "establishing."**

All of the asserted independent claims across the four patents include the step of

***establishing*** some sort of connection between the service provider and the ultimate user.  The

claims variously refer to establishing an "online Internet session," "Internet connection,"

"Internet link," "telecommunications connection," and "communications link."  (See chart

above.)  Common to all of them is the term "establishing"—a straightforward concept that needs

no special definition.  *See Motorola*, 2009 WL 2026317, at *8 ("With regard to meaning, where

additional language may be unduly limiting, confusing, or redundant, it is in a court's power to

determine that no construction is necessary.").  Accordingly, Oasis contends that construing this

term is unnecessary.  To the extent the Court believes a construction is necessary, the term

should be construed as it is used throughout the claims and specification, to mean "setting up."

The term "establishing" is used throughout the claims of the four Crawford patents, not

only to refer to setting up a communications connection, but also to ***establish customer***

***identifiers*** (e.g., user IDs) and to ***establish customer relationships*** (*See, e.g.*, Ex. A at cl. 1 steps

(b) and (c); Ex. B at cl. 1 steps (a) and (b); Ex. C at cl. 1 steps (a) and (b); Ex. D at cl. 9 steps (1)

and (2).)  The common meaning across all of these uses is "setting up," *i.e.*, ***setting up*** customer

identifiers and ***setting up*** customer relationships.  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d

1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its

appearance in other places in the same claim or in other claims of the same patent.").

Crawford's specification also confirms this simple meaning of "establishing."  For

example, the specification discusses software that "allows an on-line, real time link to be

***established via modems*** and a telecommunications link ***between the master and the remote***."

(Ex. A at 2:42-45.)  In other words, an on-line link is established, or set up, via a modem on the

master in communication with a modem on the remote—both sides establish the link on their

respective ends.  *See id.*

Defendants seek to change the ordinary meaning of "establishing," as used in the claims

and the specification.  According to Defendants, establishing must be interpreted as

"*initiating*"—*i.e.*, that establishing is limited to the party that acts first.  But nothing in the claims

suggests such a time component.  The claims simply require that the connection is established,

regardless of who initiates the process.  *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d

1050, 1053 (Fed. Cir. 1989) ("[T]his court has consistently adhered to the proposition that courts

cannot alter what the patentee has chosen to claim as his invention.").

Moreover, Defendants' construction is inconsistent with the specification, which uses the

terms "establishing" and "initiating" to refer to different parts of the connection process:  "[A]

true on-line connection . . . is established subsequently to the signaling connection and is

initiated by the customer computer."  (Ex. A at 25:48-51.)  Defendants' proposed construction

would improperly render the two terms interchangeable.  *TiVo Inc. v. Echostar Commc'ns Corp.*,

No. 2:04–CV–1–DF, 2005 WL 6225413, *9 (E.D. Tex. Aug. 18, 2005) ("The claim language

and the specification are instructive in this regard as both 'parse' and 'separate' are at times used

in the same sentences and claims indicating that the terms are not interchangeable.").

Finally, Defendants' own inconsistent constructions of the term "establishing" throughout

the claims demonstrate that "establishing" simply means setting up.  As explained above,

Crawford's claims use the word "establishing" to describe setting up customer identifiers and

setting up customer relationships.  (Exs. A at cl. 1(c); B at cl. 1(a); C at cl. 1(a); D at cl. 9(1).)

There, Defendants concede that "establishing" does not mean "initiating."  (D.I. 306-1, Terms

17-18.)  Instead, Defendants attempt to give a wholly different meaning to the term, proposing

14

that "establishing" includes the steps of "creating and assigning" a customer identifier, and "dialing" a telephone number, and "creating" and "sending" a user ID and password to establish a customer relationship. (*Id.*) If Defendants' constructions were right, it would mean that Crawford meant to give the term "establishing" at least three different meanings in his claims. Instead, Oasis' proposed construction, which gives the term the same meaning throughout, is the proper construction. *Rexnord Corp.*, 274 F.3d at 1342.

### 2.     Online backup and storage providers need not use the entire Internet to infringe the asserted claims.

As discussed above, several of the independent claims require an Internet session, connection, or link. (*See, e.g.*, Exs. A at cl. 1(a); B at cl. 3, 21; C at cl. 1(b); D at cl. 9(2).) The parties have agreed that the "Internet" is "a worldwide network of computers connected together." (D.I. 306 at 1.) Not content with that common understanding, Defendants insist that this description of the Internet replace—instead of merely describe—the term Internet, wherever that term appears in the claims. And they insist that all such connections be established "***using*** a worldwide network of computers connected together." (*Id.*) The reason for this is transparent. Defendants want to argue to a jury that unless the entire Internet is used (*i.e.*, "worldwide network"), the asserted claims cannot be infringed.

But such a forced construction defies common sense. Indeed, courts have found arguments that "interpret the claims of the [patent-in-suit] in such a way as to require one implementing it to control every node on the [paths] . . . via [an Internet connection]" to "fly in the face of the patent's specification and claims and, indeed, the very nature of the Internet itself." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 630 F. Supp. 2d 654, 662 (E.D. Va. 2008). "It seems clear that to one of ordinary skill in the relevant art, and, indeed, to anyone with any familiarity with the Internet, the Internet is obviously not a single network over which

15

any single entity has complete control . . . ." *Id.*  Thus, to the extent Defendants are attempting to read a nonsensical, full-Internet limitation into the claims, that construction should be rejected.

### 3.  "telecommunications connection" (term 6)

Because the term "telecommunications connection" has no specialized meaning as used in the claims, no construction is necessary.  To the extent, however, the Court believes a construction is necessary, Oasis' proposed construction comes directly from the ordinary meaning set forth by Crawford in his specification.  The specification discloses that each of the various layers in a telecommunications link may comprise any of:

> ISDN link, LAN/WAN connect, a "front end controller," another computer, a telephone company connection, a direct connection, a fiber optic link, a cable television link, cellular link, a satellite link, a radio frequency link and/or a PDN connection.

(Ex. A at 16:61-65.)  Oasis' proposed alternative construction comes directly from this description in the specification.  *See Phillips*, 415 F.3d at 1315.

### D.  "online storage" (term 9)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('051 patent, claim 9) | "online storage" | storage available through an online connection | services that increase the amount of storage on the customer's computer by storing files remotely rather than on the customer's computer |

The term "online storage" has no unusual meaning.  Accordingly, Oasis contends that this term requires no construction.  *See Motorola,* 2009 WL 2026317, at *8.  In the alternative, Oasis' proposed construction—"storage available through an online connection"—adheres to the claim language, without importing additional limitations.

Defendants improperly attempt to limit online storage to storage used for a particular purpose and thus complicate a simple term.  *See DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F. 3d 1342, 1347 (Fed. Cir. 2008) ("[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis.").

16

While online storage may be used to increase the amount of storage on the customers' computer, it may also be used to store files in case of failure of the storage internal to the customer's computer.  *See supra,* Part II.A.  Nothing in the specification limits online storage to the purpose Defendants propose.  "To disavow claim scope, the specification must contain 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'"  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)).  There is no such disavowal here.  Defendants' negative requirement that the files not be stored on the customer's computer adds unnecessary complexity and should be rejected.  *See Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09–CV–446, 2011 WL 3665342, at *10 (E.D. Tex. Aug. 22, 2011) ("Defendants' proposed construction improperly includes a negative limitation.").

### E.    "online processing" (term 10)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('051 patent, claim 9) | "online processing" | either remotely manipulating customer data files, or passing data files back and forth online without doing any other substantive processing | services that remotely manipulate customer data files |

Claim 9 of the '051 patent requires "establishing a customer provider relationship between a computer user and a ***provider of online backup, online storage, online processing***." (Ex. D.)  The parties agree that this limitation requires all three of online backup, online storage, and online processing, but they dispute the meaning of online processing.  (D.I. 306-1, Term 10.)

Defendants contend that online processing includes "services that remotely manipulate customer data files."  (*See supra* above chart.)  Oasis agrees, and therefore has adopted that definition as part of its construction.  But the specification demonstrates that online processing is not limited to manipulating data files.  Indeed, there are at least two types of online processing: ***substantive*** processing, and ***other*** online processing.  (*See, e.g.*, Ex. D at: 2:67– 3:2 ("The

17

*processor* of the remote simply passes this information back and forth without doing ***any other substantive processing on it***.").) Defendants seek to redefine online processing as ***substantive*** online processing, but omit the specification's explicit explanation that online processing can include passing information back and forth with a remote computer. Oasis' construction therefore includes this "other" type of online processing described in the specification.

Defendants' attempt to limit processing to manipulating data files is inconsistent with the specification. In fact, the specification specifically uses processing to mean ***something other*** than manipulating data files: "Although the host computer 104 can also ***manipulate and process*** data objects stored on such "virtual disks," it typically cannot execute an executable PC file…." (Ex. D at 19:41-44.) Defendants' proposed construction would improperly render the words "manipulating" and "processing" interchangeable. *See TiVo Inc.*, 2005 WL 6225413, at *9. Oasis' construction, on the other hand, is consistent with the specification, which contemplates manipulating files (substantive processing), and other processing (passing data files back and forth online). *See NMT Medical v. Cardia*, 239 Fed. Appx. 593, 599 (Fed. Cir. 2007) (reversing district court's construction of "connected" as "directly connected," because claim language claimed "connected" even though specification also discussed "directly connected").

Defendants' proposed construction also improperly excludes disclosed embodiments in the '051 patent. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007). The specification discusses the use of online processing requests, sent from a customer computer to an online service processor. The "process request" can be for any number of functions, including backup, restore, and archive; program and information rental/purchase; anti-viral device scanning; and release updating. (Ex. D, Fig. 8B.) These "processing" functions comport with Oasis's proposed construction for "online processing"—some of the functions

remotely manipulate customer data files, and other functions simply pass data files back and forth online without doing any other substantive processing.  In contrast, Defendants' proposed construction improperly excludes at least several of the functions disclosed in the online processing embodiment discussed above.  *See Verizon*, 503 F.3d at 1305.  Courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification."  *Id.* Accordingly, Defendants' overly limiting construction should be rejected.

**F.      "backup, restore, and/or archive" / "backup, restore and/or archiving" (term 11)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('943 Patent, claim 1; '051 Patent, claim 9) | Plaintiff: "backup, restore, and/or archive" / "backup, restore and/or archiving"<br><br>Defendants: "providing an offsite backup, restore and/or archiving data storage service" / "backing up, archiving and/or restoring data" / "offsite data storage service accessible . . . for backup, restore and/or archiving" / "backup, restore and/or archival purposes" / "backup, restore, and/or  archive" | service for performing at least two of the three separate options of backup, restore, and archive<br><br><br>archive/archiving: backup of inactive files | service for performing all three of the separate options of backup, restore, and archive<br><br>archive: copy inactive files for long-term retention, rather than for backup |

Claim 1 of the '943 patent and claim 9 of the '051 patent require "backup, restore, and/or archive/[ing]" services.  (Ex. C at cl. 1; Ex. D at cl. 9.)  The parties dispute two aspects of this term:  the meaning of "archive," and the meaning of the term "and/or," as used in the claims.

**1.      "archive"**

Oasis' definition of archive—"backup of inactive files"—comes directly from the specification, which provides that "***customer files inactive for a specified period of time*** are automatically copied to on-line service virtual disks ***for offsite archiving.***"  (Ex. C at 14:60-63.) Indeed, the parties agree that an archiving service copies inactive files.  But Defendants' attempt to import an additional limitation—*i.e.*, that archived files must be used for "long-term retention" and cannot be used for backup—finds no support in the claims and is inconsistent with the

specification.  The specification contemplates at least two types of archival services:  virtual disk-based services, which provide for short-term, accessible archived files; and tape-based services, which provide for long term (and less accessible) archived files.  (Ex. C at 14:63-15:9.)  Indeed, the specification discusses archived files that are available on "[v]irtual disks [that] are mounted" allowing "customer files [to be] copied to their original customer disk for restoration."  (Ex. C at 14:65-66.)  The specification explains the benefit that "virtual disks provide for offsite archival is that remote storage is accessible as if locally attached."  (Ex. C at 15:7-9.)  As an alternative, the specification discusses using tape storage for "long term offsite archive."  (Ex. C at 14:67-15:1.)  Because the specification does not limit the term archive to long-term storage, that limitation should not be read into the claims.  *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments.").

Defendants' proposed construction requiring that files sent for archiving not be used for backup is also contrary to the specification.  The specification explains that the archived files can be used for backup purposes–*i.e.,* to store data for the purpose of being used in case of data loss or failure of internal storage.  (Ex. C at 8:32-36.)  The specification provides that the service "archives the customer computer mass storage data onto a host 'virtual disk drive.'  When recovery is necessary (e.g., due to failure of the local mass storage device), the customer computer may … automatically attach the host virtual disk—thereby permitting the customer computer to operate essentially normally despite the failure of its local mass storage device."  *Id.*  Plainly, archived files are used for backup purposes.  (*See* Ex. H at 24 ("The online backup/archival service aspect provided by the invention solves a critical need commonly experienced by many personal computer users.  People create and work with important data files

on their personal computers.  However, if their local hard disk fails, they will lose the important data.  This can cause you to lose many hours of work trying to recreate the data.").)  Moreover, the Federal Circuit disfavors importing negative limitations into claim language, unless there is an explicit disavowal in the intrinsic record.  *See Omega Eng'g. Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332–33 (Fed. Cir. 2003); *see also Eolas Techs.*, 2011 WL 3665342, at * 10.

> **2.**    **"and/or"**

In plain English, "and" is typically used as a conjunctive connector, requiring both (or in this case all three) of the connected terms to be true, whereas "or" is a disjunctive connector requiring one of the connected terms to be true.  While "and/or" would typically encompass as few as a single service or as many as all three, the file history demonstrates that "and/or" in this case requires at least two of the services *in combination*: "Examiner Cosimano agreed that amendments requiring backup, restore and/or archiving, *in combination*, distinguish the claimed subject matter over the applied references." (Ex. G at 12.)

Defendants attempt to replace the "and/or" connector with the "and" connector.  But the claim is not limited in that way.  If Crawford and the Patent Office required all three of the services, the claim would have said "and" rather than "and/or," as in other claims.  (*See, e.g.*, Ex. D at cl. 4 ("A method of providing a software sales *and* software update service to customers…")); *c.f. Network Appliance Inc. v. Sun Microsystems Inc.*, No. C–07–06053 EDL, 2008 WL 4193049, at *31 (N.D. Cal. Sept. 10, 2008) (rejecting proposed construction replacing "and" with "and/or" because inventor chose to use "and").

Defendants' further attempt to add the requirement that the services are "separate" is also improper.  The file history demonstrates that the services are related and are to be offered *in combination*.  *See id; see also supra*, Part II.K.1. (explaining that archiving services are also used for backup).  The file history further explains that the backup and restore services also are

related, stating that: "Applicant's invention solves this problem by providing an <u>online</u> backup/restore system and service that a customer can connect to whenever he needs to back up and restore files."  (Ex. H at 25.)  Accordingly, Defendants' attempt to add the additional "separate" limitation has no basis in the intrinsic record and should be rejected.

### G.   "provider of online backup, online storage, online processing" (term 8)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('051 patent, claim 9) | "provider of online backup, online storage, online processing" | provider of all three of online backup, storage, and processing | provider of all three of the separate services of online backup, online storage, and online processing |

The parties agree that a "provider of online backup, online storage, online processing" is one that provides all three of the services.  (D.I. 306-1, Term 8.)  But Defendants once again attempt to import the word "separate," which has no place in the claim.  For the same reasons discussed above, Defendants' additional limitation should be rejected.

### H.   "online service provider" / "online services" (term 12)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claim 1; '943 patent, claim 1; '051 patent, claim 9); ('051 patent, claim 9) | "online service provider"  "online services" | No construction necessary.  Alternative: provider of at least one online service | provider that provides a broad range of information to online computer users; not merely a provider of backup or storage services  AT&T's proposal: no construction necessary |

Nothing in the claim language, the specification, or the prosecution history suggests that "online service provider" or "online services" have a special meaning.  Accordingly, no construction of these terms is necessary, as defendant AT&T concedes.  The other Defendants' construction imports unnecessary ("broad range of information") and negative ("not merely a provider of backup or storage services") limitations, and should be rejected.

### I.   "virtual disk" (term 15)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|

| | | | |
|---|---|---|---|
| ('228 patent, claim 2) | "virtual disk" | an arrangement (e.g., some combination of local and/or remote hardware and/or software) that looks like a locally attached, physical [disk/resource/device] | a disk/resource/device that looks and acts like a locally attached, physical disk drive to a computer with the same basic attributes, including opening, reading from, and writing to those files as if they were locally attached, and that the computer recognizes as a physically or locally attached device |
| ('228 patent, claim 3) | "virtual backup storage resource" | | |
| ('228 patent, claim 3) | "virtual backup storage device" | | |

Claims 2 and 3 of the '228 patent add the requirement that the customer can access a virtual disk, resource, or device.  In this case, Crawford chose to define these terms, and Oasis' proposed construction for "virtual disk/resource/device" comes directly from that definition:

> In the context of this patent specification, *a "virtual device" is an arrangement that "simulates" or "emulates" a locally-attached, physical device.  For example, a "virtual disk drive" can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that "looks like" a physical disk drive.*

(Ex. B at 18:13-19); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1354 (Fed. Cir. 2003) ("[A] patentee may be his own lexicographer.").

In contrast, Defendants improperly import limitations (*e.g.*, opening, reading from, writing to, recognizing as a locally attached device) from the specification into the claims— beyond the explicit definition provided by the inventor.  Indeed, it appears that Defendants once again seek to limit the claim to a preferred embodiment:

> "In the **preferred embodiment**, 'virtual disk drives' allow the customer computer 50 to access resources as if those resources were actually a physical disk device locally attached to the customer computer. . . . *Thus, customer computer 50 operating system can write to and read from a virtual disk in essentially the same manner that it can write to and read from its own local hard disk* 65."

(Ex. B at 18:19-22, 60-63); *see also Phillips*, 415 F.3d at 1323.  But the specification does not limit a virtual disk/device/resource to one that can both be written to and read from, and indeed contemplates read-only devices:  the service provider can "control[] virtual disks access as read-only or read/write devices."  (Ex. B at 28:43-44.)  Defendants' proposed construction would

23

improperly exclude the read-only embodiment from the claims. *See Verizon*, 503 F.3d at 1305.

Accordingly, Defendants' proposed construction should be rejected.

Moreover, Defendants' proposed construction is inconsistent with the claim language.

Claim 3, element (d) of the '228 patent requires:  "allowing the customer's computer to ***access***

***the virtual backup storage device*** substantially as if the virtual backup storage device was a

physical backup storage device locally attached to the customer's computer" while element (e)

requires:  "permitting the customer's computer to ***write information*** to the virtual backup storage

device."  (Ex. B at cl. 3.)  If Defendants' proposed construction were correct (*i.e.*, the virtual

device must have "write" access) element (e), which requires write access, would be redundant.

*See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (rejecting a

proposed construction that rendered claim terms superfluous); *Merck & Co., Inc. v. Teva*

*Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives

meaning to all the terms of the claim is preferred over one that does not do so.").

> **J.**      **"substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer" (term 13)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('354 patent, claim 1)<br>('228 patent, claim 3) | "substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer"<br><br>"substantially as if the virtual backup storage device was a physical backup storage device locally attached to the customer's computer" | such that the remote storage area has substantially the same functionality as a backup storage device physically and/or locally attached to the customer's computer | such that the remote storage area looks and acts like a backup storage device physically and/or locally attached to the customer's computer with the same basic attributes, including the ability to open, read from, and write to all files located in the remote storage area and being recognized by the customer's computer as a physically or locally attached device |

Claim 1 of the '354 patent and claim 3 of the '228 patent require that the customer's

computer be able to access the storage "substantially as if" the storage is physically or locally

attached to the customer's computer.  Because these terms are plain English, they require no

construction.  To avoid any confusion, however, Oasis' proposed construction clarifies that "substantially as if" means "substantially the same functionality."  Defendants appear to agree, as they include in their definition that the remote storage "acts like" the locally attached device.

But Defendants' construction also imports a series of additional limitations, including "the ability to open, read from, and write to all files."  Those limitations are not required by the claims, specification, or prosecution history, and should be rejected.

### K. "making available, to the customer's computer via the telecommunications connection, at least some of the storage provided by the online service provider" (term 14)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claim 1)<br>('943 patent, claim 1)<br>('051 patent, claim 9) | "making available, to the customer's computer via the telecommunications connection, at least some of the storage provided by the online service provider"<br><br>"making available, to the customer's computing device via the Internet link, at least some data stored in the online service provider's storage"<br><br>"making available to the customer some of the data stored within the online service provider's storage over the Internet" | No construction necessary | providing remote storage that the customer's computer recognizes as a locally attached device with the same basic access abilities as if the storage was local, including the ability to open, read from, and write to all files located in the remote storage area |

Claim 1 of the '228 patent, claim 1 of the '943 patent, and claim 9 of the '051 patent all require that the provider make available to the customer (or the customer's computer) some of the provider's storage.  This is a simple concept that needs no further construction.

Defendants' construction simply appends to an otherwise simple claim term a host of additional limitations including that "the customer's computer recognizes [the storage] as a locally attached device with the same basic access abilities as if the storage was local, including the ability to open, read from, and write to all files located in the remote storage area."  (D.I. 306-1, Term 14.)  Defendants' additional limitations should be rejected.

**L.** **"allowing the customer computer to access the remote storage area provided by the online backup service provider storage by integrating the second Internet connection for access by the customer computer's file system" (term 16)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|-------|------|-------------------------------|-----------------------------------|
| ('354 patent, claim 2) | "allowing the customer computer to access the remote storage area . . . by integrating the second Internet connection for access by the customer computer's file system" | running communications software to establish a session in which the customer computer can send/receive data to/from the remote storage area after using the customer computer's file system to select files | Indefinite. In the alternative:  having a replica computer of the same type as a customer computer load device drivers and run communications software to establish a host session for providing customer access to the host computer drives |

Claim 2 of the '354 patent allows the customer computer to access the remote storage by "integrating" the Internet connection.  (Ex. A at cl. 2.)  Both Oasis and Defendants agree that this step means running communications software that establishes a session to provide access to the remote storage area.  (D.I. 306-1, Term 16.)  This is supported by the specification, which describes one method of integrating as "running communications software to establish a host session and access host virtual disks."  (Ex. A at 17:34-39.)  The file history also supports this construction.  During prosecution, the applicant explained that "special [communications] software . . . enables some of the remote online backup service's storage to be accessible to the customer's computer so the customer's computer can write to and read from it. . . . [T]his connection integrates the remote online service computer's storage with the customer computer's local file system – allowing the customer's computer to access the remote storage substantially as if it were locally and/or physically connected to the customer's computer."  (Ex. H at 25-26.)

Defendants' proposed construction, however, goes beyond the agreed-upon meaning of this term, and imports the concept of a "replica computer" from the specification.  But claim 2 of the '354 patent does not require "replica" computers.  While replica computers are discussed in

the specification, Crawford chose not to limit his claims to the replica computer embodiments.

Accordingly, no reason exists to import those limitations into claim 2 of the '354 patent.

    **M.**    **"validating the customer identifier and password" / "validating the customer's authority / "validating that the customer is permitted to access" (terms 19 and 20)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('354 patent, claim 1)<br><br>('228 patent, claim 1; '943 patent, claim 1)<br><br>('051 patent, claim 9) | "validating the customer identifier and password"<br><br>"validating the customer's authority"<br><br>"validating that the customer is permitted to access" | No claim construction necessary<br><br>In the alternative:<br>"validating the customer identifier and password":  comparing a customer identifier and password with the customer identifier and password stored by the provider<br><br>"validating the customer's authority" / "validating that the customer is permitted to access": comparing credentials with credentials stored by the provider | comparing a customer identifier and password input by the customer with the customer identifier and password stored on the host |

    Several of the asserted claims require validation of the customer's authority to access the system.  (Ex. A at cl. 1(f); Ex. B at cl. 1(c); Ex. C at cl. 1(c); Ex. D at cl. 9(3).)  For example, claim 1 of the '354 patent requires validating a customer identifier and password.  The other claims describe the process more generally—without requiring an identifier and password—as "validating the customer's authority" (Ex. B at cl. 1(c); Ex. C at cl. 1(c)) or "validating that the customer is permitted to access" the services (Ex. D at cl. 9(3).)  This is a straightforward process that requires the provider to confirm that the user may access the system and its storage capabilities.  Accordingly, the Court need not and should not construe this term.

    If, however, the Court believes a construction is necessary, Oasis agrees with Defendants that for claim 1 of the '354 patent, validating the customer identifier and password involves a comparison of the user's customer identifier and password with the authorized customer identifier and password maintained by the provider.  The validating steps of the remaining claims are similar, but do not require a customer identifier ***and*** password.  To the extent Defendants'

constructions require both a customer identifier and password for all of the validating steps—regardless of the claim language—those constructions should be rejected.

The only remaining dispute between the parties is whether claim 1 of the '354 patent requires comparing a customer identifier and password ***input by the user*** with a customer identifier and password stored ***on the host***. As an initial matter, the term "host" confuses, rather than clarifies the claim, because "host" does not appear anywhere in the claim. Therefore it is unclear what "host" Defendants are referring to. More importantly, the prosecution history confirms that the user need not input a customer identifier and password every time a comparison is made. Indeed, as the applicant explained, the results of the signup process—*e.g.*, the identifier and password—may be stored on the customer's computer for future use:

> In some embodiments, this technique might also be used to automatically, efficiently and reliably ***store the results of the "sign up" process on the customer's computer*** for immediate, simplified access to the commercial backup service during the second session.

(Ex. E at 5.) Accordingly, to the extent Defendants are seeking to exclude an identifier and password that is stored on the customer's computer, that construction should be rejected.

**N.  "conditionally restricting at least a part of the customer's access" / "conditionally authorizing and/or restricting access" / "conditionally permitting or denying the customer" (terms 21, 22, and 23)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claim 1)<br><br>('943 patent, claim 1)<br><br>('051 patent, claim 9) | "conditionally restricting at least a part of the customer's access"<br><br>"conditionally authorizing and/or restricting access"<br><br>"conditionally permitting or denying the customer" | limiting the access of a customer | limiting the access of an already authorized customer within the [storage/data] already made available in step [(d)/4] |

Several of the asserted claims require conditionally restricting, authorizing, permitting or denying a customer's access to the service. (Ex. B at cl. 1(e); Ex. C at cl. 1(e); Ex. D at cl. 9(5).)

In other words, the customer does not have access to the full system (*e.g.*, to other customers' data), but rather has access to a subset of the provider's system.  This is confirmed by the specification, which discusses restricting a customer's access to various services of the online provider.  (*See, e.g.*, Ex. A at 45:12-36.)

Defendants' proposed construction attempts to impose a requirement that the customer be limited to a subset of her own storage.  Because nothing in the claims or specification supports such a construction, it should be rejected.

### O.    "generating billing information" / "billing the customer" / "requesting payment" (terms 24 and 25)

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claim 1; '943 patent, claim 1)<br><br>('051 patent, claim 9) | "generating billing information"<br><br>"billing the customer " | No claim construction necessary.<br><br>In the alternative: generating information used to bill the customer | generating a bill that is sent to the customer to pay an amount owed for past use |
| ('228 patent, claim 3) | "requesting payment" | No claim construction necessary. | sending a bill to a customer to pay an amount owed for past use |

Several of the asserted claims require "generating billing information," "billing the customer," and "requesting a payment" as part of the claimed methods.  (Ex. B at Cls. 1(h) and 3(f); Ex. C at cl. 1(h); Ex. D at cl. 9(8).)  As with most of the terms in the claims, these are straightforward concepts that need no further explanation.  Accordingly, the Court need not and should not construe these terms.

The Defendants' proposed constructions simply paraphrase the claim terms, but add a further limitation:  that the bill must be for an "amount owed for past use."  (D.I. 306-2, Terms 24 and 25.)  No reason exists to import this limitation into the claims.  Indeed, the specification refutes the notion that billing must be based on past use.  For example, Crawford explains that the user may pay a flat monthly fee, that has nothing to do with past use:

> ***Customers can be charged a flat fee for monthly usage*** on the system.  ***A one time subscription fee may also be charged*** to initially set up the customer on the system. A flat fee could be based on the type and amount of storage and access desired.

(Ex. A at 58:8-12; *see also* Ex. A at 2:18-22.)  Because the Defendants' proposed constructions improperly import claim limitations into the claims, those constructions should be rejected.

**P.      "tracking" / "logging" (term 26)**

| Claim | Term | Oasis's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| ('228 patent, claim 1)<br><br>('943 patent, claim 1; '051 patent, claim 9) | "tracking"<br><br>"logging" | No claim construction necessary<br><br>In the alternative:  keeping a record | keeping a record for billing purposes |

Several of the asserted claims require that the provider track or log the customer's access to or use of the system.  (Ex. B at cl. 1(g); Ex. C at cl. 1(g); Ex. D at cl. 9(7).)  These are straightforward concepts that need no further explanation.  Accordingly, the Court need not and should not construe these terms.

Defendants' proposed construction not only attempts to define the simple words "tracking" and "logging," but also adds a new limitation:  "for billing purposes." The claims do not require this limitation.  Moreover, the specification explains that tracking and logging have other uses beyond billing, such as security:  "Session information is tracked for billing and security." (Ex. A at 28:55-56); "[H]ost computer 104 logs certain information (e.g., user, begin time, etc.) for billing and security purposes . . . ." (Ex. A at 29:56-57.)  Because Defendant's additional limitation is not required by the claims and is inconsistent with the specification, it should be rejected.

**CONCLUSION**

For the foregoing reasons, Oasis respectfully requests that its proposed constructions be adopted to the extent constructions are necessary.

Dated:  November 11, 2011

Respectfully submitted:

/s/ Tamir Packin

John M. Desmarais *(admitted pro hac vice)*
jdesmarais@desmaraisllp.com
Alan S. Kellman *(admitted pro hac vice)*
akellman@desmaraisllp.com
Tamir Packin *(admitted pro hac vice)*
tpackin@desmaraisllp.com
Dmitriy Kheyfits *(admitted pro hac vice)*
dkheyfits@desmaraisllp.com
Eugene Chiu *(admitted pro hac vice)*
echiu@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

James C. Tidwell
Texas State Bar No. 20020100
jct@wtmlaw.net
WOLFE, TIDWELL & MCCOY, LLP
320 N. Travis, Suite 205
Sherman, Texas 75090
(903) 868-1933 (Telephone)
(903) 892-2397 (Facsimile)

*Attorneys for Plaintiff*
*OASIS RESEARCH, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 11th day of November, 2011.


*/s/ Tamir Packin*