# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | |
| | § | |
| | § | Case No. 4:10-CV-00435 |
| v. | § | Judge Mazzant |
| | § | |
| | § | |
| AT&T CORP., ET. AL. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This claim construction order construes the disputed claims of United States Patent Nos. 5,771,354 ('354 Patent), 5,901,228 ('228 Patent), 6,411,943 (the '943 Patent), and 7,080,051 ('051 Patent). Claim construction arguments were submitted in Plaintiff Oasis Research, LLC's Opening Claim Construction Brief ("Pl.'s Opening") (Dkt. #307), Defendants' Responsive Claim Construction Brief ("Defs.' Response") (Dkt. #320), and Plaintiff's Reply Claim Construction Brief ("Pl.'s Reply") (Dkt. #327). The Court conducted a two day claim construction hearing on January 17 and 18, 2012. For the following reasons, the Court adopts the construction set forth below.

## BACKGROUND

The patents-in-suit share a common specification and all relate back to the original application that led to the '354 Patent, an application filed Nov. 4, 1993.[1] The patents describe one of the problems with the state of the art in 1993, which was that hard disk storage capacity for personal computers was a limiting factor regarding the use of personal computers. The prior art computers are described in the specification as problematic because they did not contain enough memory to store all the desired data or programs, and the storage limitations may cause further

---

[1] Citations herein to the patents will generally be made to the column and line numbers of the '354 Patent unless otherwise noted.

problems at times of hard disk failure. 13:20-42. The simplest form of transfer of computer files was described as being done via floppy disks or magnetic tape. 1:48-51. The patents describe a system for a computer to connect to online service providers to obtain additional processing and storage resources for a computer. Abstract. The resources may take the form of virtual storage for additional disk space. Abstract. The resources may also provide online services such as software rental, release updates, anti-viral services, backup and recovery services, and diagnostic services. Abstract.

Figure 1 illustrates that a customer computer 50 may connect via a data link 150 to a remote on-line service system 100. The on-line service system may include data storage, program storage, and processing capability. Figure 1; 12:40-14:35. In a preferred embodiment, the online service may provide the storage and processing in conjunction with "virtual disks" as shown in Figure 5 which reside at the on-line service provider. Figure 5. The patent specification states that "in the context of this patent specification, a 'virtual disk' is an arrangement that 'simulates' or 'emulates' a locally-attached, physical device." 18:8-11. The background section of the specification states that virtual disks were known at the time of the application filing. 5:28-7:55. The patent summarizes the state of the art by noting that "[o]ne of the greatest limitations to existing on-line services is that no provisions are available to execute host based software on the remote user's system directly or for a user's locally executing application to directly access storage on the host system. The present invention provides an on-line service and associated equipment which solves these and other problems." 7:56-62.

A variety of the claims are asserted from the patents-in-suit, exemplary claims include:

'354 Patent claim 1:

1. An online computer system providing commercial backup services to remote customer computers over the Internet by performing the following steps:

(a) providing at least one remote storage area for use in storing customer backup information;

(b) establishing a first online Internet session with a customer's computer;

(c) allowing the customer to sign up for backup services over the first online Internet session, including the step of establishing a customer identifier and associated password for the customer;

(d) establishing a second online Internet session with the customer's computer;

(e) requesting the customer to input the customer identifier and associated password established by step (c);

(f) validating the customer identifier and password requested by step (e);

(g) conditioned at least in part on validating step (f), allowing the customer to access the remote storage area over the second Internet session substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer, including the steps of:

    (1) encrypting backup data provided by the customer's computer,

    (2) transmitting the encrypted backup data to the online backup service provider over the second online Internet session, and

    (3) storing the backup data in the remote storage area provided by the online backup service provider.

'228 Patent claim 1:

1. A method of providing on-line auxiliary storage computer services to multiple online service customers by making storage provided by a geographically remotely located online service provider available and accessible to customers' computers over telecommunications connections connecting the customers' computers with the geographically remotely located online service provider, the method comprising the following steps:

(a) establishing a customer relationship between a customer and an online service provider providing an online auxiliary storage service, said customer having a customer's computer associated therewith;

(b) establishing a telecommunications connection between the customer's computer and the online service provider;

(c) validating the customer's authority to access the online auxiliary storage service provided by the online service provider;

(d) making available, to the customer's computer via the telecommunications connection, at least some of the storage provided by the online service provider;

(e) conditionally restricting at least a part of the customer's access to the online service provider storage based at least in part on the validating step (c), and

(f) allowing the customer's computer to store data to the online service provider storage over the telecommunications connection;

(g) tracking at least one of (a) the customer's access to the online service and (b) the customer's use of the online service provider storage; and

(h) generating billing information based on at least one of (i) the relationship established in step (a), and (ii) the tracking step (g).

'943 Patent claim 1:

    1. A method of providing an offsite backup, restore and/or archiving data storage service to customers over the Internet by making backup and/or archival data storage provided by an online service provider available and accessible to the customers' computing devices via an Internet connection for use in backing up, archiving and/or restoring data from and/or to data storage local to or disposed within said customers' computing devices, the method comprising the following steps:

(a) establishing a customer relationship between a customer having a computing device and an online service provider providing an offsite data storage service accessible over the Internet for backup, restore and/or archiving, said online service provider registering a customer identifier based at least in part on a communication between said online service provider and said customer;

(b) establishing an Internet link between the customer's computing device and the online service provider;

(c) validating the customer's authority to access the data storage service provided by the online service provider;

(d) making available, to the customer's computing device via the Internet link, at least some data stored in the online service provider's storage;

(e) conditionally authorizing and/or restricting access by the customer's computing device to the data stored in the online service provider storage;

(f) receiving data sent by the customer's computing device over the Internet link, and storing, for backup, restore and/or archival purposes, said data offsite in said service provider data storage;

(g) logging at least one of (a) the customer's access to the online service and (b) the customer's use of the online service provider data storage; and

(h) generating billing information based on at least one of (i) the relationship established in step (a), and (ii) the logging step (g).

and '051 Patent claim 9:

    9. A method for online services that includes:

(1) establishing a customer/provider relationship between a computer user and a provider of online backup, online storage, online processing over the Internet;

(2) establishing a communications link between the customer and provider using the Internet;

(3) validating that the customer is permitted access to the services of the online service provider;

(4) making available to the customer some of the data stored within the online service provider's storage over the Internet;

(5) conditionally permitting or denying the customer to access the data stored within the online service provider's storage;

(6) receiving data from the customer over the Internet to be stored within the online service provider's storage as a backup, restore, and/or archive;

(7) logging the customer's use of the services provided by the online service provider; and

(8) billing the customer for using the services provided by the online service provider.

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314.

"[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may

aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324. However, the prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). Statements will constitute disclaimer of scope only if they are "clear and unmistakable statements of disavowal." *See Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). An "ambiguous disavowal" will not suffice. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (citation omitted).

The doctrine of claim differentiation provides that "different words or phrases used in

separate claims are presumed to indicate that the claims have different meaning and scope." *Seachange Intl. Inc., v. C-COR, Inc.,* 413 F.3d 1361, 1368 (Fed. Cir. 2005) (citing *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999)). However, the doctrine "only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction." *Id.* at 1369 (quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000)). The "claims cannot enlarge what is patented beyond what the inventor has described as the invention." *Abbott Labs. v. Sandoz, Inc.,* 566 F.3d 1282, 1288 (Fed. Cir. 2009) (citations omitted).

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

The parties dispute the construction of 26 terms, identified in the briefing and oral argument as Terms 1-26. As some of the terms have proposed common constructions or related disputes, for oral argument, the parties organized the terms into 14 different groups.

### 1. Storage Related Terms

The parties' fundamental disputes relate to the meaning of "virtual" disks/resources/devices with regard to Term 15, and whether Terms 13 and 14 are limited to certain concepts that the Defendants incorporate into their constructions of "virtual" for Term 15. The parties also dispute whether Term 1 ("auxiliary storage") is limited to a "virtual disk." Thus, the Court shall address the basic meaning of "virtual" (Term 15), and then address the other storage related terms.

**"virtual disk"** ('228 Patent claim 2)
**"virtual backup storage resource"** ('228 Patent claim 3)
**"virtual backup storage device"** ('228 Patent claim 3)
**(all term 15)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| an arrangement (e.g., some combination of local and/or remote hardware and/or software) that looks like a locally attached, physical [disk/resource/device] | a disk/resource/device that looks and acts like a locally attached, physical disk drive to a computer with the same basic attributes, including opening, reading from, and writing to those files as if they were locally attached, and that the computer recognizes as a physically or locally attached device |

The "virtual" terms are found in dependent claim 2 and independent claim 3 of the '228 Patent. The primary dispute between the parties is whether the construction should require the acts of opening, reading from, and writing to files.

Plaintiff asserts that its construction comes directly from a definition provided in the specification:

> In the context of this patent specification, a "virtual device" is an arrangement that "simulates" or "emulates" a locally-attached, physical device. For example, a "virtual disk drive" can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that "looks like" a physical disk drive.

PL.'S OPENING at 23 (quoting '228 Patent at 18:13-19). Plaintiff asserts that Defendants are improperly importing limitations from a preferred embodiment of the specification:

> In the preferred embodiment, "virtual disk drives" allow the customer computer 50 to access resources as if those resources were actually a physical disk device locally attached to the customer computer... Thus, customer computer 50 operating system can write to and read from a virtual disk in essentially the same manner that it can write to and read from its own local hard disk 64.

*Id.* (quoting '228 Patent at 18:19-22, 60-63). Plaintiff objects further that requiring the virtual device to both read and write explicitly contradicts the specification, which states the service provider can "control[] virtual disks access as read-only or read/write devices." *Id.* (quoting '228 Patent at 28:43-44). Plaintiff further argues that '228 claim 3 includes element (e) which states, "permitting the customer's computer to write information to the virtual backup storage device." *Id.* at 24 (quoting '228 claim 3). Plaintiff asserts that Defendants' construction makes the language of claim 3 element (e) redundant.

Defendants respond by stating that the parties agree that virtual disks "look" like a locally attached physical disk. DEF. RESPONSE at 23. However, Defendants assert that a virtual disk should also "act like" a locally attached disk, and should include the concepts of the "same basic attributes," including the ability to open, read from, and write to a virtual disk. *Id.* at 24. Defendants cite to the specification for such attributes:

> Through software executed by host computer 104 and cooperating software executing on customer computer 50 and/replica computer 160, these virtual disks can be "attached to customer computer 50 and/or replica computer 160, and appear to those computers 50, 160 as additional, locally attached physical drives. In other words, the operating systems of computers 50, 160 can access these virtual disks in the same way they access a locally attached physical disk drive. Thus, customer computer 50 operating system can write to and read from a virtual disk in essentially the same manner that it can write to and read from its own local hard disk 64.

and further cites:

> The minicomputer simulates a local disk drive with a "virtual" or "simulated" disk that actually comprises hardware and software resources of the mid-range computer. In other words, the mid-range computer when attached to the personal computer "looks like" a local disk drive to the personal computer. The personal computer "thinks" it is writing to a locally attached disk drive when actually its data is going through a communications (e.g. telephone) line and gets stored in the memory and/or hard disk of the minicomputer. Because the personal computer is "fooled" into thinking that the minicomputer "virtual disk" resource is a locally attached disk drive, no significant changes to personal computer hardware and software are needed to interface the personal computer with the minicomputer. For example, it becomes possible for a standard off-the-shelf software program such as Lotus 1-2-3 or WordPerfect to, without modification, read from and write to the disk of the minicomputer.

*Id*. at 24-25 (quoting 18:47-58 and 5:32-49+).

Defendants assert that a key concept is that the user's computer "recognize" the virtual disk as a physically or locally attached device. Defendants argue that the specification states this means the computer is in the position to "think[] it is writing to a locally attached disk drive when actually data is going through a communication (e.g. telephone) line and gets stored in the memory and/or hard disk of the minicomputer." *Id*. at 25 (quoting 5:36-40). Defendants contend that it is not improper to require both read from and write to because the specification states, "customer computer 50 operating system can write to and read from a virtual disk in essentially the same manner that it can write to and read from its own local hard disk 64." *Id*. at 25-26 (quoting 18:55-58). Defendants assert that as to element (e) of '228 Patent claim 3, the step is not redundant as the claim includes a number of other details on writing. *Id*. at 26. At the oral hearing, Defendants also cited to an October 1996 amendment in the '354 prosecution history in which the Applicant mentioned that the online connection enables the backup service storage to be accessible "so that the customer's computer can write to and read from it." Oct. 1996 Amendment, Dkt. #307-9 at 25-26.

11

Plaintiff's position more accurately reflects the intrinsic record. In the specification, a patentee may define his own terms and act as his own lexicographer. *Phillips*, 415 F.3d at 1316. Here the specification provides clear guidance as to the use of "virtual":

> In the context of this patent specification, a "virtual device" is an arrangement that "simulates" or "emulates" a locally-attached, physical device. For example, a "virtual disk drive" can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that "looks like" a physical disk drive.

'228 Patent at 18:13-19. Similarly, with regard to the prior art, the specification describes a virtual disk with the statement that "[i]n other words, the mid-range computer when attached to the personal computer 'looks like' a local disk drive to the personal computer." '228 Patent at 5:38-40. Further, the specification puts one skilled in the art on notice that although examples are given of embodiments that both read and write, a service provider may "control[] virtual disks access as read-only or read/write devices." '228 Patent at 28:43-44. "A claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software,* 362 F.3d at 1381 (quoting *Vitronics Corp.*, 90 F.3d at 1583. Thus, the specification disfavors Defendants' construction. '228 Patent claim 3 element (e), though not dispositive, is consistent with the specification as it begins "permitting the customer's computer to write information…", implying that the mere mention of "virtual" earlier in the claim does not mandate write capability. Finally, the file history cited by Defendants, though probative, does not outweigh the specification citations noted above. For example, the sentence in the file history cited by Defendants is preceded by "[i]n accordance with one aspect provided by this invention, the customer can connect to a geographically remotely located online backup service provider over a telecommunications link to establish an online connection." Oct. 1996 Amendment, Dkt. #307-9 at 25. The sentence cited by Defendants

then merely states what such an online connection enables. Such language does not amount to a clear and unambiguous disclaimer of claim scope as to the meaning of "virtual" during the prosecution of a patent. *See Middleton*, 311 F.3d at 1388.

The Court is still left to resolve the issue that neither party sought a construction that fully matches the explicit statement in the specification, more particularly including the first sentence of the citation at '228 Patent at 18:13-19, the sentence which includes both "simulates" and "emulates." At the oral hearing, Plaintiff indicated it did not object to the inclusion of the first sentence. As the specification makes a clear statement of definition, the Court includes in its construction the full statement: "an arrangement that "simulates" or "emulates" a locally-attached, physical device. For example, a "virtual disk drive" can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that "looks like" a physical disk drive." The second sentence of the construction provides guidance and understanding to the first sentence, and in combination will be understandable to the jury while remaining faithful to the explicit definition provided within the specification. As the specification contemplates read only disks and the definitional citation does not so limit the term, the Court rejects the Defendants' argument that to look or to act like a local disk, the disk must have attributes that allow opening, reading, and writing.

The Court construes Term 15 as: an arrangement that simulates or emulates a locally-attached, physical device; for example, a virtual disk/resource/device can be an arrangement (e.g., some combination of local and/or remote hardware and/or software) that looks like a locally attached physical disk/resource/device.

**"substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer"** ('354 Patent claim 1)

**"substantially as if the virtual backup storage device was a physical backup storage device locally attached to the customer's computer"** ('228 Patent claim 3)
**(both term 13)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| such that the remote storage area has substantially the same functionality as a backup storage device physically and/or locally attached to the customer's computer | such that the remote storage area looks and acts like a backup storage device physically and/or locally attached to the customer's computer with the same basic attributes, including the ability to open, read from, and write to all files located in the remote storage area and being recognized by the customer's computer as a physically or locally attached device |

**"making available, to the customer's computer via the telecommunications connections, at least some of the storage provided by the online service provider"** ('228 Patent claim 1)

**"making available, to the customer's computing device via the Internet link, at least some data stored in the online service provider's storage"** ('943 Patent claim 1)

**"making available to the customer some of the data stored within the online service provider's storage over the Internet"** ('051 Patent claim 9)
**(all term 14)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| no construction necessary | providing remote storage that the customer's computer recognizes as a locally attached device with the same basic access abilities as if the storage was local, including the ability to open, read from, and write to all files located in the remote storage area |

With regard to Terms 13 and 14, the primary dispute between the parties is the same with regard to Term 15, specifically the following: do the terms require the storage to include the ability to open, read from and write to all files located in the remote storage? Defendants rely upon an argument that Terms 13 and 14 inherently require "virtual" storage, and thus require the open, read,

14

and write language that Defendants assert is mandated by "virtual" (Term 15). DEF. RESPONSE at 23-26.

As the Court has rejected the Defendants' construction of "virtual," the Court rejects the inclusion of open, read, and write within Terms 13 and 14 based upon similar reasoning. The grounds stated above with regard to Term 15 are sufficient to reject Defendants arguments with regard to Terms 13 and 14.

In addition, the Defendants' basic premise relies upon the proposition that all claims are limited to "virtual" storage. The Court is not persuaded by Defendants' arguments. Defendants' arguments rely on two key points. First, Defendants state that the only embodiments disclosed in the specification are "virtual" storage. At the oral hearing, Defendants, citing *Toro Co. v. White Consol. Indus., Inc.*, 199 F. 3d 1295 (Fed. Cir. 1999), represented that it was a "bedrock principal of claim construction" that when a single embodiment is disclosed the claims are limited to the embodiment disclosed. Second, Defendants argue that prosecution history arguments in the '354 Patent file history limit all of the claims to virtual devices. DEF. RESPONSE at 23.

As to Defendants' first point, the Federal Circuit explicitly stated that *Toro* and other cases "demonstrate[] that our precedent establishes no such rule." *Teleflex, Inc.*, 299 F.3d at 1326. As stated in *Phillips*,

> In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. *Gemstar-TV Guide,* 383 F.3d at 1366. That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.

15

*Phillips*, 415 F. 3d at 1323. As noted in *Phillips,* reading the specification and claims in context is paramount. *Id.* Here the Court notes that some claims include "virtual," and some do not, such as '354 Patent claim 1 and '228 Patent claim 1. Furthermore, some of these claims themselves include language such as, "substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer" ('354 claim 1) and "making available…at least some of the storage" ('228 Patent claim 1). Thus, the claim language itself teaches the functional bounds of the inclusion of concepts disclosed in the specification. *See Phillips*, 415 F.3d at 1314 (noting the surrounding words of the claims themselves can be a good indication of claim scope). Here, the claims themselves appear to define the nature and extent of the functionality of the storage. Moreover, the file history provides important guidance on the issue raised by Defendants. Defendants cite to an early Amendment in the prosecution of the first patent (the '354 Patent) in which the Applicant emphasized "virtual" storage, and thus Defendants argue it is established that all claims of all of the patents-in-suit must include the virtual concepts. DEF. RESPONSE at 23 (quoting a February 20, 1996 Amendment at 21-22 and 25).

As stated in *Phillips*:

Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. *See Inverness Med. Switz. GmbH v. Warner Lambert Co.,* 309 F.3d 1373, 1380-82 (Fed.Cir.2002) (the ambiguity of the prosecution history made it less relevant to claim construction); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1580 (Fed.Cir.1996) (the ambiguity of the prosecution history made it "unhelpful as an interpretive resource" for claim construction). Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.

*Phillips*, 415 F.3d at 1317. When reviewing the <u>entire</u> file history of the '354 Patent there is no "clear and unmistakable" disavowal. *See Cordis Corp.*, 339 F.3d at 1358. In contrast, the ongoing negotiation provides notice that, rather than all claims being limited to "virtual storage" as asserted by Defendants, the opposite is in fact the case. More particularly, at the time of the February 1996 Amendment, the claims (including claim 1) explicitly contained language such as "virtual storage resource." Dkt. #320-3 at 2. However, in the subsequent October 1996 Amendment, the Applicant explicitly removed such reference to "virtual" from claim 1, and included language such as, "such a way that the online backup service provider storage appears as local storage." Dkt. #307-9 at 2-3. Similarly, in a later June 1998 Amendment in the '228 Patent file history, the Applicant further removed the language "in such a way that the online backup service provider storage appears as local storage to the customer's computer." Dkt. #307-7 at 2. When reviewed in context of the arguments made, the claims at issue, and the entire file history, the Court does not find that all the claims asserted are limited to a virtual device.

Having resolved the primary dispute with regard to Terms 13 and 14, there still remain other issues to resolve with regards to Terms 13 and 14. In Term 13, Plaintiff asserts a construction of "substantially the same functionality," while Defendants utilize "looks and acts like." At the oral hearing Defendants objected to the inclusion of "substantially" as providing no guidance to the jury. Plaintiff, in its briefing, appears to acknowledge that its use of "same functionality" equates to "act like." PL.'S OPENING at 25. Furthermore, at the oral hearing Plaintiff acknowledged that the language "acts substantially like" would be an appropriate construction for a jury. TRANSCRIPT (Dkt. #348) at 204, lines 3-5. Common words of degree may be utilized in a construction. As the Court has decided the primary dispute between the parties, a person of ordinary skill in the art, when

reading specification, would understand what it means to act substantially within the guidance provided. *See Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) (district court must determine whether terms of degree would be understood by a person of ordinary skill in the art in light of the specification). Further, Plaintiff has not established that "the same functionality" is more grounded in the intrinsic record than language that includes "acts like."

The Court construes Term 13 as: "such that the remote storage area acts substantially as a backup storage device physically and/or locally attached to the customer's computer".

As to Term 14, the Court has resolved the fundamental dispute between the parties. Having established that the term is not limited to open, read, and write, and that the term is not limited to a virtual device, the Court finds that the plain meaning of the term requires no further construction than the term itself. The Court finds with regard to Term 14 that no construction is necessary.

**"auxiliary storage" (term 1)** ('228 Patent claims 1, 5, 15)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| storage in addition to internal storage used either: (1) to store additional data or programs in the event of space limitations; or (2) to store data for the purpose of being used in case of data loss or failure of internal storage | storage using a virtual disk, allowing a computer to increase the amount of storage it has by storing files on the virtual disk rather than the computer itself |

The parties' dispute focuses on two issues: (1) does "auxiliary storage" require a virtual disk; and (2) does the term exclude storage for backup purposes. Plaintiff points to the specification to assert that "auxiliary storage" is used in a manner encompassing both additional storage and backup storage. Plaintiff quotes the '228 Patent, which states:

> Auxiliary storage capabilities are provided by floppy disk slot 60 and floppy diskettes 62. Unfortunately, the hard disk internal to main processor unit 52 may run out of space to store additional data or programs, or it may fail and lose all of the data it

> previously stored.  The user can "back up" the data stored on the internal hard drive using floppy diskettes 62, but his can be a long and tedious process and the user may sometimes forget to do it.  The user could, of course, upgrade his customer computer 50 by adding additional internal or external storage devices.

PL.'S OPENING at 9 (quoting '228 Patent at 13:36-45).

Plaintiff also points to an interview summary statement made during prosecution history: "The Examiner confirmed that he would consider broader claims such as claims not limited to 'backup' but more generically claiming online auxiliary storage services."  PL.'S OPENING at 9 (quoting Dkt. #307-7 at 31).

Plaintiff asserts that Defendants' constructions improperly limit the claim to a preferred embodiment.  Plaintiff also asserts that dependent claim 2 already adds in the limitation of a virtual disk, and thus, Defendants' construction violates the doctrine of claim differentiation.  Plaintiff also cites to '228 Patent dependent claim 55 which refers to "back up data to the online service provider" to further point out that the storage of claim 1 can include back up storage.  PL.'S REPLY at n.2.

Defendants cite to the specification to note that auxiliary storage is external to the computer.  Defendants assert that "auxiliary storage" is different from backup because auxiliary storage expands a customer's storage capacity by allowing the customer to store files on remote storage media instead of his or her computer.  Defendants cite to a dictionary for this proposition.  DEF. RESPONSE at 7 (citing Ex. 18).  Without citation to the specification, Defendants assert that "as used in the patents 'auxiliary storage' refers to storage that frees up space on the local computer; backup does not do so."  DEF. RESPONSE at 7.  As to the doctrine of claim differentiation, Defendants note that the doctrine is merely a guide, not a rigid rule.

Defendants' construction would have this Court limit the term to a virtual disk, and further implicitly exclude the usage of that virtual disk for backup usage, a usage of virtual disks that the specification repeatedly contemplates. As a starting point, Defendants' construction relies upon similar arguments discussed above as to whether all claims are limited to a virtual disks. For the reasons stated above, the Court rejects such arguments. Furthermore, Plaintiff has identified portions of the specification which clearly contemplate that "auxiliary storage" can relate to backup and also in which "auxiliary storage" is used in a context broader than a "virtual disk." '228 Patent at 13:36-45, 13:46-50. Though not rigidly controlling and binding, the doctrine of claim differentiation and the statement in the prosecution history are consistent with Plaintiff's construction. As pointed out by Plaintiff, Defendants do not provide citation to the specification with regard to the term "auxiliary storage" for their construction. With regard to the term "auxiliary" itself, the Defendants briefing and oral argument point to an external evidence dictionary which states that "auxiliary storage" is storage that "supplements" the main storage of a computer. However, backup storage itself supplements main storage so even Defendants' external evidence does not clearly support a conclusion of excluding backup storage from "auxiliary storage." In view of the specification citations noted, the claims and the file history in its entirety, the exclusion of backup storage is improper.

The Court construes claim 1 to be: "storage in addition to internal storage used either: (1) to store additional data or programs in the event of space limitations; or (2) to store data for the purpose of being used in case of data loss or failure of internal storage."

**"backup" / "backing up"** ('354 Patent claims 1, 2, 3, 9, and 24; '228 Patent claim 3; '943 Patent claim 4, and 6; '051 Patent claim 9)
**(term 2)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| storing data for the purpose of being used in case of data loss or failure of internal storage | backup (verb)/backup services: automated, periodic transfer of data to maintain an up-to-date copy for recovery purposes<br><br>backup (noun): an up-to-date copy of data for recovery purposes obtained by automated, periodic transfer of data<br><br>Carbonite's proposal: no construction necessary |

The disputes regarding Term 2 center on whether the term encompasses "automated, periodic," and "up-to-date," and further whether the concept of backup contemplates a copying process.

Plaintiff asserts that its construction is supported by the specification, citing to the use of "the hard disk … may fail and lose all of the data it previously stored. The user can 'back up' the data stored on the internal hard drive…." PL.'S OPENING at 10-11 (quoting '228 Patent 13:31-51). Plaintiff also cites a prosecution history statement that specifies "backups are typically most needed when a customer computer's hard drive crashes." *Id*. at 11 (quoting Dkt. #307-6 at 10). Plaintiff objects to the inclusion of "automated" and "periodic," and notes that the specification states a "[u]ser can 'back up' the data stored on the internal hard drive…but the user may sometimes forget to do it." *Id.* (quoting '354 Patent at 13:31-34). Plaintiff asserts that such a description recognizes that the term backup is not inherently related to an automated or periodic backup. Plaintiff also asserts that claim differentiation supports its position as claim 3 of the '354 Patent adds the step of "automatically periodically backing up."

Defendants assert that the specification makes clear that a user forgetting to backup files is a problem of the prior art, citing to the same passage as Plaintiff. DEF. RESPONSE at 11. Defendants

assert that the specification makes clear the claimed invention avoids such pitfalls by the language "these problems and difficulties are eliminated…" *Id.* (quoting 14:17-21). Defendants then cite to the portions of the specification which describe an automated/periodic process – "unattended…at a scheduled time", "automatically establish…to perform a regularly scheduled backup." *Id.* at 11-12 (quoting '354 Patent at 8:38-40, 25:23-26). Defendants assert that claim differentiation cannot be used to broaden claims beyond their correct scope. Defendants assert that Plaintiff's construction is so broad it would encompass a construction where a file is not maintained or left on the computer. Defendants assert that maintaining a copy is an inherent characteristic of backup, citing '354 Patent Figure 2 for the use of "Disk Copy & Recovery" and "Virtual Disk Copy" and Figure 8B for "Execute Disk Copy." *Id.*

The specification uses the term "backup" in a context that is not automatic and periodic. 13:31-34 Though such citation is with regard to the prior art, the citation does provide guidance that the basic term as used in the specification is not limited as sought by Defendants. Further, even the specification citations provided by Defendants use the term "backup" itself generically, for example "regular scheduled" is used to modify "backup" in the use of "regular scheduled backup." 25:23-26. Similarly, claim language including "automatically periodically backing up" gives indication to a broader meaning for "backing up." *See Phillips*, 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term "baffles" does not inherently mean objects made of steel."). Taken together, the intrinsic record supports a finding that backup itself is not inherently limited to automated, periodic updating. In addition, though not controlling, it is noted that claim differentiation is consistent with the other portions of the intrinsic evidence.

Plaintiff's construction does however fail to include a basic concept of "backing up" which relates to creating a copy of data. At the oral hearing, Plaintiff agreed that backing up includes an element of copying, and further agreed to a construction that includes "storing a copy." Transcript (Dkt. #346) at 83, lines 11-16.

The Court construes Term 2 to be: "storing a copy of data for the purpose of being used in case of data loss or failure of internal storage."

**"provider of online backup, online storage, online processing"** ('051 claim 9)
**"online storage" (term 9)** ('051 claim 9)
**"online processing" (term 10)** ('051 claim 9)
**(term 8)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Full Term:<br>provider of all three online backup, storage, and processing | Full Term:<br>provider of all three of the separate services of online backup, online storage, and online processing |
| Online Storage:<br>storage available through an online connection | Online Storage:<br>services that increase the amount of storage on the customer's computer by storing files remotely rather than on the customer's computer |
| Online Processing:<br>either remotely manipulating customer data files, or passing data files back and forth online without doing any other substantive processing | Online Processing:<br>services that remotely manipulate customer data files |

Included within Term 8 are the individual terms "online storage" (Term 9) and "online processing" (Term 10). The Court will first construe Terms 9 and 10, and then construe the full Term 8.

Online Storage (Term 9)

Plaintiff asserts that the term has no unusual meaning and that Defendants are attempting to import limitations to restrict the term to a particular purpose, and thus complicate the term. Plaintiff

asserts that online storage may encompass increasing storage on a computer or storing files in case of failure, citing to Plaintiff's section of briefing on "auxiliary storage." PL.'S OPENING at 17. Plaintiff asserts that to disavow claim scope the specification must have "a clear disavowal of claim scope." *Id*. (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011). Plaintiff further asserts that the addition of a negative limitation in Defendants' construction is confusing and improper. *Id*. At the oral hearing, Plaintiff cited to 2:49-50 as disclosing a remote processor that passed information back and forth to a master "without doing any other substantive processing on it." Plaintiff also asserts that its construction does not render online backup superfluous because Plaintiff's construction of "online storage" is broader in that "online storage" may include temporary storage or read only storage, storage not encompassed in its definition of backup. PL.'S REPLY at 2 (citing 30:43-46, 29:66-30:2). Further, Plaintiff states that "online backup" does not require "online storage" as in the patent data backup online may be transferred to offline storage devices such as floppy disks or tape. *Id*. at 3 (citing 1:47-51). At the oral hearing Plaintiff asserted that online storage means the storage is accessible online. Plaintiff also asserted that each of the claim terms has a different meaning though some meanings could overlap. Plaintiff illustrated this with a Venn diagram, as follows:



24

Defendants assert that online storage is different from online backup. Defendants assert that under Plaintiff's construction "online storage" would encompass "online backup." Defendants state that Plaintiff's construction thus renders "online backup" superfluous and should be rejected. DEF. RESPONSE at 8 (citing *August Tech Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011)). Moreover, Defendants assert that different claim terms are presumed to have different meanings and "in the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings." Def. Oral Hearing at Slide 43 (quoting *CAE Screenplates, Inc., v. Heinrich Fiedler GMBH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)).

It is presumed that the terms "online backup" and "online storage" have different meanings. *CAE Screenplates, Inc.*, 224 F.3d at 1317 (Fed. Cir. 2000). The constructions proposed by Plaintiff indicate that online storage could be broader than online backup, for example, read only storage. However, contrary to Plaintiff's assertions, Plaintiff's construction of backup (which was substantially adopted by this Court as noted above) leaves the term "online backup" entirely subsumed within Plaintiff's construction of "online storage." Such a construction renders "online backup" superfluous and is presumed improper. Though Plaintiff argues that online backup can subsequently be moved offline to tape or disk, becoming offline backup, such does not change the fact that online backup (before such offline moving) itself falls entirely within Plaintiff's online storage construction. The use of both terms in the claimed string of functions implies that such construction would be improper. The Court will address below whether the terms have to be separate and distinct services; however, it is sufficient to note that generally one term should not be rendered redundant by another term absent teaching within the intrinsic record otherwise. Here the specification teaches online backup with regard to storing data for recovery in case of data loss or

failure of internal storage. The patent repeatedly references two different types of use of online disk resources: backup and solutions to limited storage capacity. In the context of the specification and file history as a whole, and the use of both terms in the claim, "online storage" equates to the storage that provides a solution to limited customer storage capacity, a different function than backup. *See* Abstract; 1:13-17; 12:59-67; 13:22-42; 14:45-15:39; 29:55-30:30; Figure 2, Figure 8B.

The Court construes Term 9 to be: "storage available through an online connection that increases the amount of storage on the customer's computer by storing files remotely rather than on the customer's computer."

Online Processing (Term 10)

Plaintiff agrees in part with Defendants' construction but argues that the specification demonstrates that online processing is not limited to manipulating data files. Plaintiff asserts that there are two types of online processing, substantive processing and other online processing. Plaintiff quotes the specification: "the processor of the remote simply passes this information back and forth without doing any other substantive processing on it." '051 Patent 2:67-3:2. Plaintiff asserts that Defendants' construction omits the specification recitation of passing information back and forth. Plaintiff also points to a portion of the specification which refers to "the host computer 14 can also manipulate and process data objects stored on virtual disks" to argue that "manipulating" and "processing" are not merely interchangeable. PL.'S OPENING at 18 (citing '051 Patent at 19:41-44). Plaintiff also points to Figure 8B in which a "process request" can be any number of functions including backup, restore, archive, program and information rental or purchase, virus scanning and release updating. Plaintiff asserts that this comports with its construction: some processing may be

manipulation of data files and some simply passing data back and forth. *Id.* at 18-19. Plaintiff asserts that Defendants' construction excludes the passing data back and forth functions.

Defendants assert that passing data back and forth covers both online backup and online storage. Defendants point to Figure 1 in which "processing" is illustrated separate from "data storage and program storage." DEF. RESPONSE at 9. Defendants assert that online processing is defined in the patents as a remote computer "do[ing] all the computer processing, and send[ing] the results" to a customer. *Id.* at 9-10 (quoting 1:24-29). Defendants assert that the prior art product that was distinguished (PC Anyway) involved a dumb terminal that did not perform substantive processing. *Id.* ('051 Patent at 2:55-3:12) Defendants assert that under Plaintiff's construction the meaning of the claim would be the same if it only included the term "online processing" as "online backup" and "online processing" would be subsumed within "online processing."

Defendants assert that the citation noted by Plaintiff regarding "manipulate" and "process" dealt not with the invention, but rather the prior art PC Anywhere product. Further, Defendants assert that the full sentence supports Defendants' position: "Although the host computer 104 can also manipulate and process data objects stored on such 'virtual disks,' it typically cannot execute an executable PC file stored on the virtual disk because in the preferred embodiment the host computer has a different operating system than does the computer 50A." DEF. RESPONSE at 10 (quoting '051 Patent at 19:41-47). Defendants thus argue that the applicant was equating processing to manipulating, and explaining that while some files can be manipulated and processed, some files such as PC programs cannot be run on the host computer. As to Figure 8B, Defendants assert that the patents do not equate a "process request" to "online processing" and that nowhere do the patents describe "online processing" as including backup, restore and archive functions.

In reply, Plaintiff states that backup and storage do not require files to go "back and forth" rather just to the backup/storage destination. PL.'S REPLY at 3. Plaintiff states that each term is different, but may be related in a service that backs up online, stores online, and allows online recovery. *Id*.

Plaintiff's construction relies on portion of the specification describing the use of the prior art PC Anywhere product in which a remote "dumb" terminal may communicate with a master computer in a fashion that the master performs all the substantive processing. 2:45-60. In the context of the specification passage, processing is what is performed on the master. *Id*. The passing back and forth, which the dumb terminal participates in, is not described as processing itself. Plaintiff's construction would render the dumb terminal also performing processing, the opposite of what the passage teaches. Because the primary source of intrinsic evidence cited by Plaintiff does not support Plaintiff's construction, the Court rejects the inclusion of passing back and forth. Both parties agree that processing includes the concept of manipulation of files and such language is supported by the specification. 19:20-26.

The Court construes Term 10 as "remotely manipulating customer data files."

<u>"provider of online backup, online storage, online processing" (Term 8)</u>

Plaintiff objects to Defendants' requirement that the three services be "separate services." Defendants' arguments in support of such language primarily focus on the arguments described above regarding the terms having different meanings. Plaintiff states that the file history demonstrates that the services can be related and offered in combination. In particular, Plaintiff states that storage services, which may be archiving services, may also be used in combination with

backup services.  PL.'S OPENING at 20 (citing Dkt. #307-9 at 24, October 1996 Amendment stating the "online backup/archival service aspect provided by the invention solves….")

Defendants have not pointed to disavowal in the specification that teaches that the services must be mutually exclusive.  As noted by Plaintiff, in at least one portion of the file history backup and archiving are treated as "backup/archival service."  Further, it is noted that Figure 8B groups backup, restore and archive within a common category of a process request.  The Court rejects the inclusion of "separate" as not being supported by the specification.  Further, having resolved the construction of the individual terms the Court has addressed the arguments that Defendants assert regarding different terms having different meanings.

Having construed the individual terms, the Court construes the full Term 8 to be: "provider of all three of the services of online backup, online storage, and online processing."

**"backup, restore, and/or archive"** ('051 Patent claim 9)
 **"backup, restore and/or archiving"**  ('943 Patent claim 1)
**(both term 11)**

| Plaintiff's [Revised] Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| service for performing at least two of the three options of backup, restore and archive | service for performing all three of the separate options of backup, restore, and archive |
| Archive/archiving: backup of inactive files | Archive: copy inactive files for long-term retention, rather than for backup |

The parties dispute the meaning of the phrase "and/or" and "archive."  The disputes will be treated separately.

<u>And/or</u>

Both parties acknowledge that the ordinary meaning of "and/or" was modified by a statement made during prosecution: "[e]xaminer Cosimano agreed that amendments requiring backup, restore

29

and/or archiving, in combination, distinguish the claimed subject matter over the applied reference." Dkt. #307-8 at 12 – August 2001 Amendment. Plaintiff asserts that the prosecution history limits "and/or" to a case requiring at least two of the services in combination. Plaintiff asserts that Defendants' construction replaces "and/or" with "and," ignoring "or." Plaintiff argues that if the Examiner had meant such a meaning the claim would have used merely "and." For support of its position Plaintiff points to two portions of the Amendment in question in which two of the three services were described together in combination: "[a]pplicant's invention solves this problem by providing an online backup/restore system and service that a customer can connect to whenever he needs to back up and restore files" and "[a]pplicant's invention solves this problem by providing an online backup/restore system." PL.'s OPENING at 22 (quoting Dkt. #307-8 at 24 and 25). Plaintiff further objects to the "separate" argument, pointing to the arguments noted above regarding "separate."

Defendants assert that the claim means that all three options must be available ("and") and that "or" means the user need not use all three. Defendants assert that the specification discloses all three options. Figure 22C element 1004C ("Backup," "Restore," or "Archive"); Figure 22H; 48:13-16, 50:18-19. Defendants assert that the "in combination" language in the file history means all three services, and notes that the language does not say "at least two" or "two of which are combined." DEF. RESPONSE at 20. Defendants assert that a service that provides only two options would negate the word "and." *Id*.

Defendants advocate a construction that ignores the inclusion of the word "or" in the construction. However, the prosecution statement in question clearly includes "or." Further, Defendants assert that "combination" requires all three services in combination without adequately

identifying why a combination of two would not satisfy the combination language of the file history. Defendants have pointed to no clear disavowal with regard to the purpose of the file history statement that a combination of two is not encompassed. The parties all agree that backup, restore, and archive in combination would require all three options. The Court is left with considering the meaning of backup, restore, or archive in combination. Normally "or" would encompass only one option. However, "in combination" suggest more than one. If backup, restore, or archive in combination requires all three options then the construction is merely the same as "and." Accordingly the Court construes the use of "or" in the term (i.e. "backup, restore, or archive in combination") to require a combination of at least two options.

The Court construes Term 11 to be: "service for performing at least two of the three options of backup, restore, and archive".

Archive

Plaintiff asserts that its construction comes straight from the specification which states: "customer files inactive for a specified period of time are automatically copied to on-line service virtual disks for offsite archiving." PL.'S OPENING at 19 (quoting '943 Patent at 14:60-63). Plaintiff objects to Defendants' requirement that archived files must be for "long-term retention" and cannot be used for backup. Plaintiff asserts the specification contemplates two types of archiving – virtual disk archive for short-term accessible archived files and tape based archive for long term and less accessible archive. *Id*. at 20 (citing '943 Patent at 14:63-15:9). Plaintiff notes that this section of the specification describes "virtual disks [that] are mounted" allowing customer files to be "copied to their original disk for restoration." *Id*. Plaintiff asserts that as an alternative, tape is described for "long term offsite archive." *Id*. Plaintiff asserts that the specification does not limit archive to long

term storage and it is improper to so limit the claims. Plaintiff further points to a portion of the specification that states "archives the …data…when recovery is necessary (e.g., due to failure of the local mass storage), the customer computer may…." *Id*. at 20 (quoting '943 Patent at 8:32-36). Plaintiff further cites to the file history statement: "the online backup/archival service aspect provided by the invention solves a critical need…if their local hard disk fails, they will lose important data." *Id*. at 20-21 (quoting Ex. H at 24).

Defendants assert the dispute is whether archive and backup are different (Defendants) or whether archive is a type of backup (Plaintiff). Defendants assert that the patent makes clear that archive and backup are different. Defendants first note that the claims use both words. DEF. RESPONSE at 21. Defendants state that the specification gives repeated instances of the user having a choice of either backup or archive. *Id*. (citing Figure 22 element 1004C, Figure 22H elements 1012A or 1012C; '943 48:12-14, 50:12:-14). In addition Defendants state that the specification describes a service provider itself archiving some of a customer's data (as opposed to backing up) to free up space. *Id*. (citing Figure 3, Figure 4, 14:66-15:1, 33:19-21). Defendants assert that archive refers to moving a file somewhere for long term retention and removing it from a user's computer. Finally, Defendants point out that the cited prior art treats "archive" and "backup" differently. *Id.*

The claim language itself can be provide substantial guidance as to the meaning of claim terms. *Phillips*, 415 F.3d at 1314. The use of two different terms in the claim provides guidance that the terms are not meant to carry the same meaning. *See Seachange Int'l*, 413 F.3d at 1368-68 (different terms presumptively have different meanings). Plaintiff asserts that the difference between archiving and backing up is that archiving is merely the backup of inactive files. Both

parties cite to '943 Patent 14:60-663 when agreeing that "archive" includes a concept of inactive files.

How a person of skill in the art understands a claim term "provides an objective baseline from which to begin claim interpretation." *Phillips*, 415 F.3d at 1313. Defendants provide external evidence that archive is known to relate to removal of files from a disk, i.e. moving the file from one location to another without retaining at the original location. DEF. RESPONSE at 21. At the oral hearing, counsel for Plaintiff acknowledged that archiving can have a common meaning such as moving paper files from an office to an off-site storage facility. However, one skilled in the art is deemed to consider the term in the context of the entire patent and file history. *Phillips*, 415 F.3d at 1313. Plaintiff cites to a passage in the Background and Summary of Invention which describes an "automated recovery feature" of the invention that periodically "archives" the customer's disk. '943 Patent at 32-41. But, when viewed in the context of the disclosure as a whole this automated recovery feature correlates to the description in the specification of the backup feature. Further, this passage makes no mention of inactive files, but rather is presented as copying the customer's storage data in case of disk failure. Elsewhere, as Defendants note, the specification repeatedly treats backup and archive as different types of options within the online storage options provided. Within the Detailed Description portion of the specification, "Offsite Archival Services" are described in the context asserted by Defendants. More particularly "Offsite Archival Services" relate to having inactive files "copied to on-line service virtual disks for offsite archiving" and that "customer files are copied to their original customer disk for restoration." '943 Patent at 14:61-66. This entire passage appears to be written in the context of moving inactive files and not merely backing up files in case of disk error. '943 Patent at 14:61-15:9. In the context of the intrinsic record as a whole,

33

Plaintiff has not pointed to sufficient evidence to essentially equate the meanings of backup and archive, albeit for inactive files. In fact, when viewed in the context of the specification as a whole, the ordinary differences between the terms seems to be reflected. As to Plaintiff's assertions that a service cannot both provide backup and archive under Defendants' constructions, it is noted that as described within the specification an online service may provide different service options. The fact that backup and archive are different, and perhaps mutually exclusive, does not mean that a service cannot provide both options to a user.

The Court is still left with the question as to whether the construction of "archive" requires the inclusion of "long term." The specification describes archiving to disks and notes that if disks are inactive for a specified period than data may be moved to tape for "long term offsite archive." 14:67-15:1. This passage implies that there can be degrees of archiving to disks that are not necessary "long term." Thus, the Court rejects the inclusion of "long term."

The Court construes "archive" to be: "copying inactive files for offsite retention, rather than for backup."

## 2. Terms related to: establishing a session / connection / link

| | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "establishing a [first/second] online Internet session" **Term 3 ('354 Patent claim 1)** | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection resulting in a [first/second] real time link over the Internet | initiating a connection resulting in a [first/second] live, interactive communication session using a worldwide network of computers connected together |
| "establishing an Internet connection" **Term 4 ('228 Patent claims 3, 21)** | No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a connection over the Internet | initiating a connection resulting in a live, interactive communication connection using a worldwide network of computers connected together |

| | No claim construction necessary. | initiating a connection resulting in a live, interactive communication link using a worldwide network of computers connected together |
|---|---|---|
| "establishing an Internet link" **Term 5 ('943 patent, claim 1)** | In the alternative: establishing [or setting up] a connection resulting in a link over the Internet | |
| "establishing a telecommunications connection" **Term 6 ('228 patent, claim 1)** | No claim construction necessary. In the alternative: establishing [or setting up] a connection over a telecommunication link (e.g. ISDN link, LAN/WAN connect, a "front end controller", another computer, a telephone company connection, a direct connection, a fiber optic link, a cable television link, cellular link, a satellite link, a radio frequency link and/or a PDN connection) | initiating a connection resulting in a live, interactive communication connection using a network of computers connected together |
| "establishing a communications link … using the Internet" **Term 7 ('051 patent, claim 9)** | No claim construction necessary. In the alternative: Establishing [or setting up] a connection resulting a link over the Internet | initiating a connection resulting in a live, interactive communications link using a worldwide network of computers connected together |

Issues that are raised by the parties with regard to Terms 3-7 include whether "establishing" requires "initiating," whether a "live, interactive" link is required, and the definition of Internet. Plaintiff asserts that the term "establishing" is a straightforward concept that needs no construction. Plaintiff notes that the term "establishing" is also used with regard to establishing a customer relationship (Term 17) and establishing customer identifiers (Term 18). Plaintiff asserts that a common meaning across all uses of term is "setting up." Plaintiff asserts that a claim term should generally be construed consistently across claims. PL.'S OPENING at 13 (citing *Rexnord Corp. v. Laitram Corp.* 274 F.3d 1336, 1342 (Fed. Cir. 2001)). Plaintiff asserts that the specification confirms this simple meaning as the specification describes software that "allows an on-line, real

time link to be established via modems and a telecommunication link between the master and the remote." *Id.* (quoting 2:42-45).

Plaintiff asserts that Defendants change "establishing" as used in the claims to "initiating," thus limiting the term to the party that acts first. Plaintiff asserts that nothing in the claims requires such a limitation. Plaintiff asserts Defendants' construction conflicts with the specification which uses "establishing" and "initiating" to refer to different parts of the connection process: "a true on-line connection…is established subsequently to the signaling connection and is initiated by the customer computer." *Id.* at 14 (quoting '354 Patent at 25:48-51). At the oral hearing Plaintiff cited the specification at 25:29-34, 47-56 which describes either the system or the customer initiating the connection and asserted that Defendants construction would thus exclude a disclosed embodiment. Moreover, with regard to the other uses of "establishing" in Terms 17 and 18, Plaintiff asserts that Defendants concede "initiating" is not proper as Defendants' construction does not use the term "initiating," but rather "creating and assigning," "dialing," and "sending." *Id.* at 14.

As to "live, interactive," Plaintiff asserts that such language excludes a disclosed embodiment that allows for an "on-line session to occur without the user being present (e.g. in the middle of the night)" and also for an "on-line session without user interaction." *Id.* at 5 (quoting 36:7-10 and 28:5-6).

Plaintiff asserts that though the parties have agreed to a meaning for "Internet" (agreed: "a worldwide network of computers connected together"), the replacement of the term Internet may be misconstrued to allow argument to the jury that the claims require the entire Internet to be used (i.e. using computers worldwide). To the extent that the Defendants are attempting to require control over the whole worldwide network, Plaintiff asserts such construction is nonsensical. *Id.* at 15-16.

As to "telecommunication connection," Plaintiff asserts no construction is necessary. Plaintiff asserts that its alternative construction comes straight from the specification which states:

> These methods may evolve as advances in telecommunications become available. For example each of the various layers may comprise any of ISDN link, LAN/WAN connect, a 'front end controller,' another computer, a telephone connections, a direct connection, a fiber optic link, a cable television link, cellular link, a satellite link, a radio frequency link and/or a PDN connection.

*Id*. at 16 (quoting '354 Patent at 16:61-65). Plaintiff asserts that Defendants provide no arguments with regard to this portion of the term.

Defendants assert that two primary disputes exist: (1) whether the term includes initiation and (2) whether "session" requires real-time two way communications as reflected in Defendants' use of "live, interactive." Defendants assert that inclusion of these concepts captures the purported invention. DEF. RESPONSE at 13. Defendants assert that initiation and access (live, interactive) are the two components of "establishing" a "session."

Defendants assert that the specification shows that "establishing" includes someone "initiating" a session: "…in the preferred embodiment system 100 is able to initiate a contact with a customer computer it needs to contact. In the preferred embodiment, system 100 initiates such a communication by 'signaling' the specified customer computer 50." *Id*. at 13 (quoting '354 Patent at 25:27-32). Defendants also point to:

> Rather, for security and other reasons, a true on-line connection (which may occur automatically in response to the signaling contact from the host) is established subsequently to the signaling connection and is initiated by the customer computer 50. Preferably requiring on-line connections to be initiated by customer computer 50 in the preferred embodiment increases security and also may make the customer feel better about security.

DEF. RESPONSE at 14 (quoting 25:47-54). Defendants also cite to Item 404 of Figure 8A which the

patent describes as "Block 404 is the main control process for customer access. The interactive Customer Session Control Process is used to manage the on-line session. Activities are initiated under control of this process." *Id*. at 14 (quoting 28:53-55). Defendants assert that excluding "initiating" from the construction excludes the preferred embodiment. DEF. RESPONSE at 14.

Defendants assert that Plaintiff seeks to incorrectly combine network procedures initiated by a customer computer with different network procedures initiated by the host server. In addition, Defendants assert that merely using "setting up" fails to help the jury understand the true scope of what the inventor invented. DEF. RESPONSE at 15.

As to "live, interactive connections," Defendants assert that the Field of Invention states that the invention allows users "to do such things as run computer software from them," and that the Summary of Invention states that "provisions are available to execute host based software on the remote user's system directly or for user's locally executed application to directly access storage on the host system." 7:56-61

The specification utilizes "establishing" in a manner that does not equate establishing and initiates: "a true on-line connection…is established subsequently to the signaling connection and is initiated by the customer computer." 25:48-51. Thus the Defendants' construction does not conform with the intrinsic record as a whole. Further, the specification describes various connections in which a connection may be initiated by the system and other connections in which the connection is initiated by the user. 25:24-60. In both cases, a connection is established between the system and user without limiting establishment based upon who initiated the connection. Again, Defendants' construction does not conform to the specification. The Court rejects the argument that the specification requires "establishing" to be limited to initiating. Having clarified that

"establishing" does not require "initiating," the Court finds that no further construction of "establishing" is needed.

As to "live, interactive," the Defendants have not articulated to the Court how such a phase clarifies the meaning of the term. The inclusion of such language does not clarify the meaning of the claim term to the jury, but would actually require further construction of "live, interactive" in order to be of assistance for the jury. In addition, Defendants' construction appears at a minimum to conflict with the examples of the specification which include "without the user being present (e.g. in the middle of the night)" and also for an "on-line session without user interaction." 36:7-10, 28:4-6. The Court rejects the Defendants' inclusion of the use of "live, interactive."

The parties have an agreed meaning as to the term Internet and such agreement should encompass the use of "Internet" in the terms at issue. Plaintiff expresses concern that Defendants will construe this to require use of the network to be around the world. Such concerns are unfounded as the agreed language does not require worldwide use.

The Court construes Term 3 ("establishing a [first/second] online Internet session") to be: "establishing a connection resulting in a [first/second] communication session over a worldwide network of computers connected together."

The Court construes Term 4 ("establishing an Internet connection") to be: "establishing a connection resulting in a communication connection over a worldwide network of computers connected together."

The Court construes Term 5 ("establishing an Internet link") to be: "establishing a connection resulting in a communication link over a worldwide network of computers connected together."

The Court finds that Term 6 ("establishing a telecommunication connection") needs no further construction.

The Court construes Term 7 ("establishing a communications link … using the  Internet") to be:  "establishing a connection resulting in a communication link over a worldwide network of computers connected together."

## 3.  Establishing a Relationship Terms

**"establishing a customer relationship" (term 17)** ('228 Patent claim 1; '943 Patent claim 1)
**"establishing a customer/provider relationship (term 17)** ('051 Patent claim 9)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No claim construction necessary.<br><br>In the alternative: establishing [or setting up] an account or other commercial arrangement with a customer | Indefinite.<br><br>In the alternative: the customer dialing a special charge telephone number to access the sign up computer system of the provider, resulting in the provider assigning and sending a user ID and password to the customer's computer |

Plaintiff asserts that the term itself would be clear to a jury.  Plaintiff notes that '943 Patent claim 5 provides additional details as to an establishing step including obtaining a customer name, address, and credit card.  Plaintiff asserts that the specification at 8:55-64 indicates that the special phone number of Defendants' construction is but an "alternative."  Plaintiff also asserts that the claim language itself of '943 Patent claim 1 indicates that customer ID is registered "based at least in part" on communication between the online service provider and the customer, thus in conflict with Defendants' proposed construction.

Plaintiff asserts that the specific point in time that a provider creates an account depends on the provider, and that is a question of infringement, not claim construction.  Pl.'s Reply at 5. Plaintiff asserts that Defendants are improperly importing an embodiment from the claim and more

importantly Defendants construction is inconsistent with the other claim terms. For example, Plaintiff asserts that the claims already include "provider registering a customer identifier" ('943 Patent claim 1), and "allowing the customer to specify information used for accessing the online service provider" ('228 Patent claim 71).

Defendants assert that the term "relationship" is wholly absent from the specification and file histories. Defendants assert there is no guidance as to when a relationship becomes established and states that a variety possibilities may exist including when a website is clicked, when a user provides information, etc. DEF. RESPONSE at 16. Defendants assert that thus one would not know when the claim was infringed, and, therefore, the claim is indefinite. To the extent a construction can be given, Defendants assert it should be constrained to the preferred embodiment as that is the only guidance provided. *Id.* Defendants cite to the portion of the specification that describes the telephone dialing process to receive a user ID and password. *Id.* at 16-17 (citing '228 Patent at 56:62-57:46, Fig. 27).

Defendants assert that Plaintiff's proposed construction is not supported in the specification and is not helpful to the jury as "setting up," "account," and "arrangement" would still require construction. Moreover, Defendants assert that the claims require a "validating" step after the "customer relationship" step and therefore the "customer relationship" step must require more than just setting up an "account" as it must enable the validation step to provide secure access. Defendants assert that such access requires the ID and password components. DEF. RESPONSE at 17.

Defendants have not pointed to a clear indication in the intrinsic record that the claim term carries special meaning other than its plain and ordinary meaning. The fact that elsewhere in one of the independent claims registering a customer identifier is included further indicates the flaw in

Defendants' alternative construction. Defendants point to disclosed embodiments that show identifiers and passwords, but do not point to clear claim scope disclaimer language in the specification. The Court rejects Defendants' attempts to limit the term to particular embodiments within the specification. The concept of establishing customer relationship will be understandable to a jury without the need for further construction.

The Court finds that Term 17 needs no further construction.

### 5. "establishing a customer identifier and associated password" (term 18) ('354 Patent claim1)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No claim construction necessary.<br><br>In the alternative: establishing [or setting up] a user ID and password for the customer | the provider creating and assigning a user ID and password to the customer during the initial login |

The dispute between the parties is similar to the other "establishing" terms and the parties rely in part on the prior arguments. Further, the dispute includes a disagreement at to whether the provider must create and assign the password and whether this must occur during the initial login.

Plaintiff states that Defendants are improperly importing limitations from specific embodiments of the specification and that even these embodiments do not use "creating" or "during the initial login." Plaintiff asserts that there is no language in the specification that shows the inventor expressly restricted the invention to the exact details of the shown embodiment. PL.'S REPLY at 6-7. Plaintiff asserts the specification passage relied on by Defendants (57:35-44) does not include "create."

Defendants assert that its construction reflects the disclosure as to who performs the creating and as to when it is done. Defendants assert that Plaintiff's construction is divorced from the context

of the disclosure. Defendants assert that no evidence is provided that the phrase would have an ordinary and customary meaning to one of skill in the art. Def. Response at 18. Defendants assert that its construction is supported by the "On-Line Service Sign Up Process" section of the specification which states:

> At this point, the new customer is queried for various customer computer configuration and service option information so that the on-line service sig up computer can begin to build potions of a customer control data block 1002 of the type shown in FIG. 22B. The sign up computer system then assigns a user ID and password to the new customer (block 2014), and completes the customer control data 1002 and on-line service control data 501 (FIG. 16A) based upon the information it has supplied (block 2016).

Def. Response at 18 (quoting 57:36-44). Defendants assert it is clear from this passage, the passage at 57:53-56 and Figure 16A that the host computer does the assigning and that it is done during the initial login. Def. Response at 19.

Contrary to Defendants assertions, the claim term is straightforward. In addition, Defendants have failed to show that such a term would not be understandable to one of ordinary skill in the art. Defendants are improperly attempting to read in embodiments from the specification while the intrinsic record as a whole does not point to disclaimer of claim scope.

The Court finds that Term 18 needs no further construction.

**6. Validating terms**

**"validating the customer identifier and password" (term 19)** ('354 Patent claim 1)
**"validating the customer's authority" / "validating that the customer is permitted to access" (term 20)** ('228 Patent claim 1, '943 Patent claim 1 / '051 Patent claim 9)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No claim construction necessary. | comparing a customer identifier and password input by the customer with the customer identifier and password stored on the host |
| In the alternative: "validating the customer identifier and password": comparing a | |

| | |
|---|---|
| customer identifier and password with the customer identifier and password stored by the provider.<br><br>"validating the customer's authority" / "validating that the customer is permitted to access": comparing credentials with credentials stored by the provider | |

The parties dispute whether it is proper to include "input by the customer" within the construction and dispute whether the data is stored on the host or stored by the provider.

Plaintiff asserts that the claim language is straightforward and no construction is necessary. To the extent construed, Plaintiff objects to the inclusion by Defendants in term 19 of "input by the customer" and "on the host." With regard to "the host," Plaintiff objects that there is no host mentioned in the claims and thus inclusion just confuses the claim. PL.'S OPENING at 28. At the oral hearing, Plaintiff emphasized an embodiment at 28:44-48 which describes the validation program residing in the replica server computer and also pointed to Figure 9 as disclosing validation by the replica computer. Plaintiff asserts that Defendants' construction improperly excludes these embodiments. As to "by the customer," Plaintiff asserts that there is no requirement that a user input the customer identifier and password every time. Plaintiff also points to the file history in which a process is described in which the system is used to automatically store the "results of the 'sign up' process on the customer's computer." *Id*. (quoting Dkt. #307-6 at 5).

Plaintiff further states that the '354 Patent claim 1 is internally consistent and clear because the claim says "validating the customer identifier and password requested by step (e)" and step (e) contains "requesting the customer to input" the identifier and password. PL.'S REPLY at 9 (quoting '354 Patent claim 1). Plaintiff states that the "input by the customer" limitation is inconsistent with

the '228, '943 and '051 Patent claims and conflicts with the file history description in which the system stores the results. Plaintiff further asserts that requiring an ID and password conflicts with '943 Patent claim 16 in which the identifier comprises a password and claim 17 which states that the identifier is used in part to validate. *Id*.

With regard to Term 20, Plaintiff objects to Defendants' requirement of both an identifier and a password as reading in a preferred embodiment from the specification.

Defendants assert that a construction of Term 19 is required because a dispute exist as to whether the customer must input the identifier and password and as to whether the provider or host stores the data. Defendants assert that this raises an issue that, per *O2 Micro*, requires construction. Defendants assert that step (e) includes the step of requesting the customer to input the ID and password and that for internal consistency the only identifier and password are ones input by the customer. DEF. RESPONSE at 27. As to a host, Defendants assert that Figure 8A shows a host performing the validation operation. *Id*.

As to term 20, Defendants assert that there is no support or use of "credentials" in the specification and that the only disclosure for validating is the use of both a password and identifier. DEF. RESPONSE at 28 (citing Figures 13, 16A, 21A, 23 and 26 and '354 at 50:39-45).

It is appropriate to look to the surrounding claim language to help interpret a term. *See Phillips*, 415 F.3d at 1314. The claim language of '354 Patent claim 1 element (e) addresses the input of the identifier and password in the context of the system "requesting" such actions. This is evidence supporting Plaintiff's position that Defendants' "input by the customer" should not be read into other portions of the claims. Though the specification describes a user entering the identifier and password, the Defendants are merely improperly reading within the claim elements embodiments

from the specification. The Federal Circuit has cautioned against such an approach to claim construction, "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee … intends for the claims and the embodiments in the specification to be strictly coextensive." *JVW Enterprises, Inc. v. Interact Accessories, Inc.* 424 F.3d 1324, 1335 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1323). Here the language of the claims makes clear that the invention is not limited to the embodiments described in the specification. Furthermore, Defendants appear to be attempting to insert limitations within the claims which add functional actions by the user even though the claim elements in question are directed to validating actions performed on the provider system side of the communications. Defendants construction is thus inconsistent with the claims, and Defendants have not pointed to clear reasons to require the importation of embodiments from the specification.

With regard to "stored on the host," Defendants' construction excludes disclosed embodiments, a disfavored claim construction result. The specification shows an online service system that may include a host computer 104 and replica computers 160 in Figure 5, including embodiments in which a customer computer is connected directly to a replica computer. Figure 5, *See also* 32:40-41. The specification further notes that the validation program is not limited to the host; but could also reside in the replica computer. Such an arrangement is illustrated in Figure 9. 28:44-50, Figure 9. It would be improper to exclude such embodiments.

The two terms in question are different and present a different scope. Defendants attempt to read both terms to have an identical meaning. Though not a hard and fast rule, terms are presumed to carry different meanings absent a showing in the intrinsic record otherwise. *See Seachange Int'l*, 413 F.3d at 1368-69. The record as a whole does not mandate such an

46

interpretation and the record as a whole does not support reading preferred embodiments into the claims. It is further noted, that though not controlling the dependent claims are consistent with the Plaintiff's construction. Defendants' objection to the use of "credentials" in Plaintiff's Term 20 construction raises valid concerns of lack of support within the specification and raises a question of interpretation as to what is a credential. The surrounding claim language of Term 20 in each of the three relevant claims includes that language that the validating is a validation of authority/permission "to access" services. Within the specification description is provided of a user authorization process that may include the creation of a password "and other access information." 8:55-58. With regard to the specification and the claims themselves, "access information" is more consistent and true to the intrinsic record then "credentials." The constructions of both parties recite a comparison of some type of data to data stored on the system side (albeit stored on the provider or stored on the host). Though the language of the claim itself may be more easily understood by the jury, as both parties have included the storage concept, the Court construction also shall include such concept.

The Court construes Term 19 to be: "comparing a customer identifier and password with the customer identifier and password stored by the provider". The Court construes Term 20 to be: "comparing access information with access information stored by the provider".

### 7. Conditionally Terms

**"conditionally restricting at least a part of the customer's access" (term 21)** ('228 Patent claim 1)
**"conditionally authorizing and/or restricting access" (term 22)** ('943 Patent claim 1)
**"conditionally permitting or denying the customer" (term 23)** ('051 Patent claim 9)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| limiting the access of a customer | limiting the access of an already authorized |

| | customer within the [storage/data] already made available in step [(d)/(4)] |
|---|---|

The primary dispute centers upon whether the method steps of the claims at issue must be performed in the recited order.

Plaintiff asserts that the claim language relates to limiting a customer's access to the full system (e.g., preventing access to other customers' data) by providing access to only a subset of the provider's system. Plaintiff asserts that the specification discusses restricting a customer's access to various services of the online provider. PL.'S OPENING at 29 (citing 45:12-36). Plaintiff further asserts that as a general rule method steps do not have to be performed in the recited order.

Defendants assert that the dispute centers on whether the access is limited to an already authorized customer. Defendants assert that the express words of the claim support their construction. DEF. RESPONSE at 28. As an example, Defendants cite to '228 Patent claim 1 steps (c)-(e). In particular Defendants assert that step (c) validates a customer, step (d) makes the service available by giving full access, and then step (e) restricts that access by "conditionally restricting at least a part of the customer's access to the online service provider storage based at least in part on the validating step (c)." *Id.* (quoting '228 Patent claim 1). In the oral hearing, Defendants also emphasized a portion of the specification at 45:10-25 which describes one embodiment in which when an allowed user requests to change to a different virtual drive, that request is further validated for access rights.

As a general rule method claims are not mandated to be performed in the step order listed in the claims absent requirements of such order in the specification or the surrounding language of the claims themselves. *See Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1342-43

(Fed. Cir. 2003) ( "unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one. However, such a result can ensue when the method steps implicitly require that they be performed in the order written."). Defendants have not pointed to such evidence. In fact, some of the claim language itself is indicative that the order is not required. For example '228 Patent claim 1 element (e) states that the conditionally restricting is "based at least in part on the validating step (c)." Such language contradicts Defendants assertion that step (d) must be performed between step (c) and (e). Further, Defendants construction could be read to require first making available certain data then restricting that data, an interpretation not supported by the specification. Finally, the specification portions cited by the Defendants relate more to additional validation steps for access to additional storage in contrast to the claimed steps such as in the '228 Patent claim 1 in which the conditional restriction is based on the same validating step. Defendants have not overcome the presumption regarding method steps. *See Id*.

The Court construes Term 21-23 to be: "limiting the access of a customer."

### 7. Online Service Terms

**"online service provider"** ('228 Patent claim 1; '943 Patent claim 1; '051 Patent claim 9)
**"online services"** ('051 Patent claim 9)
**(Term 12)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternative: provider of at least one online service | Provider that provides a broad range of information to online computer users; not merely a provider of backup of storage services.<br><br>AT&T proposal: no construction necessary |

The parties dispute whether an online service provider must provide a broad range of services or whether a provider need only provide one online service.

Plaintiff asserts that the terms have no special meaning and no construction is needed. Planitiff objects to importing unnecessary limitations ("broad range of information") and a negative limitation ("not merely a provider of backup or storage services").

Defendants assert that it is inconsistent with the specification to describe an entity that only provides backup or storage services as an "online service provider." Defendants quote the background of the invention in which it is stated:

> An entire industry of "information providers" (also referred to as "on-line services") has been created to support the need for computers to share information. These information providers automatically answer telephone calls placed by user's computers, automatically respond to information requests, and provide the information over the telephone line to the calling computer. Compuserve, Prodigy and American On-line are all examples of information providers. A computer user can use these on-line service to do useful things such as place a computer want ad, read electronic mail message, download a new video game program, scan the news wires, get a stock quote, and conference with other computer uses about his favorite hobby.

DEF. RESPONSE at 22 (quoting 2:5-22). Defendants assert that such language equates service providers with information providers. Defendants assert that such language is explicit definitional language, and cite *Martek* for stating that such definition controls. DEF. RESPONSE at 22. Defendants assert that the definition is consistent with the meaning at the time of filing. Defendants also cite to other claims which refer to a specialized provider "online backup service provider" and "online auxiliary storage service" to indicate that the use of specialized language was used when the patentee referred to a provider of specialized online services. *Id*. (quoting '228 Patent claims 3 and 53).

With regard to the quoted passage, Plaintiff argues that the fact that the passage states that online "information providers" provide different "on-line services" (in the plural form) does not

mean that an "online service provider" (in the singular form) cannot provide a single online service. PL.'S REPLY at 7-8. Plaintiff also notes that the claims use terms such as "providing on-line auxiliary storage computer services" ('228 claim 1), "providing offsite backup, restore and or archiving data storage services" ('943 claim 1), and "a provider of online backup, online storage, online processing" ('051 claim 9).

The language of the various claims supports Plaintiff. For example the claims include "online backup provider" and "online auxiliary storage computer services," language which implies that the underlying term "online provider" need not provide a broad range of services. With regard to the quoted passage, the passage in context provides examples of "on-line services" as opposed to being a claimed explicit definition as asserted by the Defendants. The passage in question does not provide clear indication that on an online service provider is limited to a provider of a broad range of services. The Court rejects Defendants' inclusion of "a broad range of information" and "not merely a provider of backup storage services."

With regard to "online services" which is found in '051 Patent claim 9, the term in question is used in the context of "a method for online services." The Court rejects the Defendants' construction for the reasons above. The construction proposed by Plaintiff for "online services" ("a provider…") may yield confusion to the jury as that construction is more applicable to a "service provider" than the services themselves as used in claim 9.

The Court construes "online service provider" to be: "provider of at least one online service". The Court finds that the term "online services" needs no further construction.

### 8. Integrating

**"allowing the customer computer to access the remote storage area provided by the online backup service provider storage by integrating the second Internet connection for access by the customer computer's file system"** ('354 Patent claim 2)
**(Term 16)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Running communications software to establish a session in which the customer computer can send/receive data to/from the remote storage area after using the customer computer's file system to select files | Indefinite.<br><br>In the alternative: having a replica computer of the same type as a customer computer load device drivers and run communications software to establish a host session for providing customer access to the host computer drives |

In the briefing Plaintiff sought construction of the full term listed above while Defendants' sought construction of only "integrating the second Internet connection for access by the customer computer's file system." Plaintiff states that the parties agree that the term includes running communications software to establish a session to provide access to the remote storage area. Plaintiff cites to the specification and a file history response for support. PL.'S OPENING at 26 (citing '354 17:34-39 and Ex. H). Plaintiff objects to the incorporation of a "replica computer." Plaintiff argues that replica computers are included in the specification but the claim is in no way limited to replica computers. *Id*. at 26-27.

Defendants assert that the "integrating the second Internet connection for access by the customer computer's file system" phrase has no ordinary meaning. Defendants assert that there is only one reference to integrating:

> The on-line replica computer 160 is used to facilitate customer access to host computer virtual disks by seamlessly integrating a replica of the customer computer into the communications link 150. The replica computer 160 loads device drivers and runs communications software to establish a host session and access host virtual disks.

DEF. RESPONSE at 26 (quoting 17:34-39). Defendants assert that the file history citation referred to by Plaintiff relates to the invention as a whole and not integrating a second internet connection. Defendants assert that to the extent the term can be construed it must be referring to the replica computer. DEF. RESPONSE at 27.

A claim is invalid as indefinite under 35 U.S.C. section 112, ¶ 2 if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. The party seeking to invalidate a claim as indefinite must show by clear and convincing evidence that one skilled in the art would not understand the scope of the claim when read in light of the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). The test for indefiniteness is stringent—a claim is invalid as indefinite if it is not "amenable to construction." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). The definiteness requirement of section 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001) (citing *Solomon*, 216 F.3d at 1379). Section 112, ¶ 2 also requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research*, 265 F.3d at 1375. Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.*; *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).

In the context of the specification as a whole, the specification citation of "integrates" cited by the Defendants does not tie any special meaning of "integrates" to replica computers. In context, the term could also have been used with reference to a host. In fact, the intrinsic record provides

53

such language as the online connection is described in the October 1996 Amendment in the prosecution history as integrating the online service storage with the customer's local file system:

> In accordance with a further aspect of the invention, this connection integrates the remote online service computer's storage with the customer computer's local file system – allowing the customer's computer to access the remote storage substantially as if it were local and/or physically connected to the customer's computer.

Dkt. #307-9 at 26. Thus, based on the intrinsic evidence, integrating a connection allows "the customer's computer to access the remote storage substantially as if it were local and/or physically connected to the customer's computer." Dependent claim 2 which contains the term in question adds that the customer computer includes a file system and that step (g) of claim 1 includes integrating for access by the file system. Step (g) includes language "substantially as if the remote storage area was a backup storage device physically and or locally attached." Thus, the claim itself conforms to the file history statement cited above. In the context of the intrinsic record the integration of the connection for access by the customer computer is sufficiently definite.

The Court construes "integrating the second Internet connection for access by the customer computer's file system" to be: "the second Internet connection allowing the customer computer to access the remote storage area substantially as if it were local and/or physically connected to the customer computer file system."

### 9. Billing

**"generating billing information" (term 24)** ('228 Patent claim 1; '943 Patent claim 1)
**"billing the customer" (term 24)** ('051 Patent claim 9)
**"requesting payment (terms 25)** ('228 Patent claim 3)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Term 24:<br>generating information used to bill the customer | Term 24:<br>generating a bill that is sent to the customer to pay an amount owed for past use |

54

| Term 25: | Term 25: |
|----------|----------|
| No claim construction necessary | sending a bill to a customer to pay an amount owed for past use |

Plaintiff asserts that the terms are straightforward with little need for construction. Plaintiff objects to the addition of "amount owed for past use." Plaintiff objects to the importation of such limitation without reason, and further asserts that such term conflicts with an embodiment of the specification which provides for monthly flat fees or a one-time subscription: "customers can be charged a flat fee for monthly usage on the system. A one-time subscription fee may also be charged." PL.'S OPENING at 30 (quoting 58:8-12, *see also* 2:18-22).

Defendants assert that the specification describes a "pay as you go" system. Defendants point to the quote, "billing activity is captured during command begin and end, log-on and log-off…this provides the necessary provisions to correctly bill a customer." DEF. RESPONSE at 29 (quoting 59:6-10). Defendants also assert that during prosecution the applicant argued over prior art bases on "[the prior art] has no capability to charge or bill remote customers for services on a usage or other 'pay as you go' basis and doesn't teach or suggest a customer-based online service." *Id*. at Ex. 2 at 22 Defendants further argue that a "bill" is commonly understood to be an invoice for services previously rendered. At the oral hearing Defendants asserted that the language in the specification at 58:8-17 must refer to pay as you go because later at 59:5-10 billing is summarized as a pay as you go activity.

The specification describes three types of billing options (a), (b), and (c). Billing option (b) clearly refers to flat fee and one time subscription fees that are not a pay as you go model. 58:8-17 That the specification later describes a "preferred embodiment" that is summarized as a pay as you go activity does change the clear disclosure of non-pay as you go options. 58:5-10, 58:24-59-10.

In context of the entire intrinsic record, there is no clear disavowal of the term's scope provided in the specification.

The Court construes Term 24 to be: "generating information used to bill the customer." The Court construes Term 25 to be: "no construction necessary."

**10. "tracking" / "logging"**

**"tracking"** ('228 Patent claim 1)
**"logging"** ('943 Patent claim 1 and '051 Patent claim 9)
**(Term 26)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No claim construction necessary<br><br>In the alternative: keeping a record | Keeping a record for billing purposes |

Plaintiff objects to the Defendants' inclusion of the limitation "for billing purposes." Plaintiff asserts that the specification provides for tracking and logging for other purposes also, such as security: "session information is tracked for billing and security" ('354 Patent at 28:55-56); "host computer 104 logs certain information (e.g., user, being time, etc.) for billing and security purposes" ('354 Patent at 29:56-57). Pl.'s Opening at 30. Plaintiff thus argues that the additional language sought by Defendants is inconsistent with the specification.

Defendants assert that tracking and logging in the specification is always used for at least in part billing purposes. Def. Response at 30 (citing '354 Patent at 30:18-22, 28:55-56, 29:55-65). At the oral hearing the Defendants emphasized that '228 Patent claim 1 provides for tracking in step (g), and generating billing information in step (h) based on the tracking step of (g), thus inherently requiring tracking to be limited to billing.

The specification provides clear guidance that tracking can include tracking for security purposes. 28:55-56; 29:56-57. Defendants' arguments regarding the claim language itself fail when the entire text of the limitations in question is considered. More particularly, step (h) provides for billing "based on at least one of" two different steps "(i) the relationship established in step (a), and (ii) the tracking step (g)." Defendants ignore the "at least one of" language. Step (h) does not require the billing to be based on step (g) but rather provides step (g) as one of two options. As the specification provides for security tracking, the limitations on scope sought by the Defendants are not consistent with embodiments of the specification. The Court finds that Term 26 is not limited to billing purposes.

The Court construes Term 26 to be: "no construction necessary."

## CONCLUSION

For the reasons stated, the Court adopts the constructions set forth above.

**It is SO ORDERED.**

**SIGNED this 23rd day of February, 2012.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE