# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | Cause No. 4:10-CV-435 |
| | § | Judge Mazzant |
| v. | § | |
| | § | consolidated with |
| | § | 4:12-CV-00525-ALM |
| ADRIVE, LLC, et. al. | § | 4:12-CV-00526-ALM |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF STANDING

Pending before the Court is Defendant EMC and Decho Corp.'s Motion to Dismiss Oasis's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Standing (Dkt. #515) and Carbonite's Motion to Dismiss Oasis's Complaint Pursuant to Fed. Civ. P. 12(b)(1) for Lack of Standing and Lack of Subject Matter Jurisdiction (Dkt. #518).

## BACKGROUND

Generally, Defendants contend that at the time Plaintiff filed suit against all parties, Plaintiff lacked standing because it did not possess all rights in the patents-in-suit. On November 27, 2012, Defendants EMC Corp. and Decho Corp. (collectively "EMC") filed their motion to dismiss (Dkt. #515). On November 30, 2012, Defendant Carbonite ("Carbonite") filed its motion to dismiss (Dkt. #518). Plaintiff filed its response to both motions on December 17, 2012 (Dkt. #545). On December 26, 2012, EMC filed a reply (Dkt. #553). On December 31, 2012, Carbonite filed a reply (Dkt. #556). Plaintiff filed a sur-reply on January 7, 2013 (Dkt. #572).

## ANALYSIS

EMC argues that Plaintiff failed to establish that it had standing when it filed its complaint. On July 2, 2007, Christopher Crawford, the purported inventor of the patents-in-suit, entered into a Patent Purchase Agreement with Kwon Holdings Group LLC, a wholly owned

1

subsidiary of Intellectual Ventures, LLC which was later renamed Intellectual Ventures Computing Platforce Assets LLC ("IV"). On July 30, 2010, IV and Plaintiff executed a Patent Sale Agreement in which the patents-in-suit were transferred to Plaintiff. However, EMC contends that the agreement did not transfer all substantial rights in the patents-in-suit to Plaintiff. Specifically, EMC argues that IV retained the right to grant optional licenses in the future, Plaintiff had no right not to enforce the patents, if Plaintiff failed to enforce the patents, it would be in default with no period to cure, IV controlled Plaintiff's ability to assign the patents with its veto power, IV retained a broad security interest in the patents, IV retained the right to audit Plaintiff at any time, and IV is entitled to 90% of Plaintiff's net revenues from enforcing the patents. EMC argues that IV's retention of these rights severely restricts Plaintiff's ability to exercise its rights under the patent, and thus, EMC contends that Plaintiff does not possess "all substantial rights" in the patents.

Carbonite similarly argues that IV's retention of rights restricts Plaintiff's rights under the patents, and contends that Plaintiff does not possess "all substantial rights" in the patents. In addition, Carbonite contends that Delaware law governs the Patent Sale Agreement. Carbonite argues that under Delaware law the agreement is champertous, and therefore, void.

Standing is a threshold subject matter jurisdictional requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Plaintiff has the burden of demonstrating standing. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Standing must be present when the plaintiff brings suit, and cannot be cured retroactively. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Id.* (citation omitted).

There are two types of standing at issue. One is constitutional standing, which requires "only that a plaintiff must have suffered an injury in fact, that there be a causal connection between the injury and a defendant's conduct, and that the injury be redressable by a favorable court decision." *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1313 (Fed. Cir. 2005). "Article III standing to sue in [patent cases] derives solely from the Patent Act." *Intellectual Property Development, Inc. v. TCI Cablevision of Calif., Inc.,* 248 F.3d 1333, 1346 (Fed. Cir. 2001). 35 U.S.C. § 281 provides: "A patentee shall have remedy by civil action for infringement of his patent." *Id.* "A 'patentee' includes 'not only the patentee to whom the patent was issued but also the successors in title [assignees] to the patentee.'" *Id.*

The Court finds that Plaintiff has constitutional standing. In the Patent Sale Agreement, IV agreed to assign to Plaintiff "all of [IV]'s right, title, and interest in and to the [patents-in-suit]" (Dkt. #515, Ex. 3). The assignment also assigns "causes of action and enforcement rights of any kind under, or on account of, any of the Patents… including, without limitation, all causes of action, enforcement rights and all other rights to seek and obtain any other remedies of any kind for past, current and future infringement…" *Id*. Plaintiff contends that Defendants' past infringement of the patents-in-suit constitutes an injury in fact to Plaintiff, which is redressable in this Court. The Court agrees. The fact that IV has the option to grant a sublicense to VMware (and allegedly by extension EMC, as VMware's parent and "affiliate") does not defeat Plaintiff's constitutional standing. Defendants' past infringement of the patents is sufficient to constitute an injury in fact. "The grant of a license by [IV] cannot deprive [Plaintiff] of the right to sue for

accrued damages for past infringement." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997). Further, the Patent Sale Agreement first assigns all of IV's right, title and interest in the patents to Plaintiff. Subsequently, Plaintiff granted back to IV the right to grant sublicenses to optional licensees. IV did not retain any licensing rights, and only possesses what rights Plaintiff explicitly granted it. Finally, the Court agrees that the terms of the Patent Sale Agreement are unambiguous, and the Court need not consider course of performance. Therefore, the Court finds that Plaintiff has constitutional standing.

The second type of standing at issue is prudential standing. A plaintiff must have all substantial rights in the patent in order to maintain standing. A patent "is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part." A*lfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) (citation omitted). "When a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name." *Id*. Some of the rights that should be examined include: (1) the exclusive right to make, use, and sell products or service under the patent; (2) the scope of the licensee's right to sublicense; (3) the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement; (4) the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee; (5) the duration of the license rights granted to the licensee; (6) the ability of the licensor to supervise and control the licensee's activities; (7) the obligation of the licensor to continue paying patent maintenance fees; and (8) the nature of any limits on the licensee's right to assign its interest in the patent. *Id.* at 1360-61. "Frequently, though, the nature and scope of the exclusive licensee's

purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." *Id.*

Plaintiff is the only entity with the right to sue, as neither IV, nor any other party, has any right to enforce the patents-in-suit. The Federal Circuit has held that this is the most important consideration, and Plaintiff alone has the right to sue to enforce the patents. In addition, the Patent Sale Agreement explicitly precludes IV from retaining certain rights, stating:

> 3.5  **No Retention of Substantial Rights.** As of the Closing, neither Seller nor its Affiliates will retain legal title to, equitable title to or any ownership interest in any of the Assigned Patent Rights, any right to commence, direct, or settle any litigation relating to the infringement of any of the Assigned Patent Rights and/or any right to maintain or defend the Patents. Additionally, as of the Closing:
>
> (a)  Seller will have no right to control any of Purchaser's decisions affecting the Assigned Patent Rights transferred pursuant to this Agreement;
>
> (b)  Seller will have no right to receive advance notice of any licensing or litigation decisions made by Purchaser concerning any of the Assigned Patent Rights (except for after-the-fact reporting the licensing and monetization activities under paragraph 2.4);
>
> (c)  Seller will have no right to review, approve, veto or contribute in any way to licensing or litigation decisions made by Purchaser concerning any of the Assigned Patent Rights;
>
> (d)  Seller will have no obligation to pay maintenance fees or any other fees required by the United States Patent and Trademark Office concerning any of the Assigned Patent Rights;
>
> (e)  Seller will have no rights to seek a narrowing reissue or a voluntary reexamination of the Patent;
>
> (f)  Seller will have no right to defend or otherwise participate in an interference proceeding concerning the Patent;
>
> (g)  Seller will have no right to join or to otherwise participate as a party in any lawsuit or other legal proceeding in which Seller enforces any of the Assigned Patent Rights against a Person; and
>
> (h)  Seller will not have (I) the right to exclude any Person from practicing the inventions described in the Assigned Patent Rights, (II) any other exclusive rights in any of the Assigned Patent Rights, or (III) the authority to grant exclusive rights in any of the Assigned Patent Rights to any Person.

The Federal Circuit has found that these very factors support a finding that an agreement conveys all substantial rights. *See Alfred E. Mann*, 604 F.3d at 1360-61; *Aspex Eyewear, Inc. v.*

*Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991).

The Court finds that the Patent Sale Agreement conveys to Plaintiff "all substantial rights" in the patents, and any rights retained or granted to IV under the agreement are not sufficient to divest Plaintiff of "all substantial rights" under the patents. Therefore, the Court finds that Plaintiff has prudential standing.

Finally, Carbonite argues that the Patent Sale Agreement is champertous. Texas does not have a champerty provision; however, Carbonite argues the Court should apply Delaware law. Under Delaware law, champerty is "an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense." *Street Search Partners LP v. Ricon Int'l, LLC*, No. 04C-09-191-PLA, 2006 Del. Super. LEXIS 200, at *12 (Del. Super. Ct. May 12, 2006).

To determine whether a cause of action was obtained through a champertous assignment, Delaware courts examine three factors: (1) whether the plaintiff's interest in the subject matter of the dispute was obtained only through assignment, (2) whether the plaintiff assignee carried out the litigation at his own risk, and (3) whether in consideration of bringing the suit the plaintiff assignee agreed to share any recovery with the assignor. *Hall v. State*, 655 A.2d 827, 830 (Del. Super. Ct. 1994). Carbonite argues that the agreement is champertous under Delaware law and is void.

Plaintiff argues that Texas law controls this issue, not Delaware law. First, Plaintiff contends that because this litigation is not a contract dispute between IV and Plaintiff, the choice

of law provision does not control the issue. The Court agrees. The choice of law provision states:

> This Agreement will be interpreted, construed, and enforced in all respects in accordance with the laws of the State of Delaware, without reference to its choice of law principles to the contrary. Purchaser will not commence or prosecute any action, suit, proceeding or claim arising under or by reason of this Agreement other than in the state or federal courts located in Delaware. Purchaser irrevocably consents to the jurisdiction and venue of the courts identified in the preceding sentence in connection with any action, suit, proceeding, or claim arising under or by reason of this Agreement.

(Dkt. #518, Ex. 3 at § 6.3). This provision clearly covers the interpretation, construction and enforcement of the provisions of the contract between the parties IV and Plaintiff. This litigation is a patent suit involving infringement and other issues. IV is not a party to this suit, and it is not necessary for the Court to interpret or construe any of the terms of the Patent Sale Agreement. The Patent Sale Agreement only serves to show that IV transferred its rights to the patents-in-suit to Plaintiff.

> In Texas:
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>> (a) The chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>> (b) Application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990). In the present case, the application of Delaware champerty law would be contrary to a fundamental policy of Texas state law. First, Texas has never recognized the common law doctrine of champerty. *See Glenney v.*

*Crane*, 352 S.W.2d 773, 780 (Tex. Civ. App. 1961) ("It has been held that the reasons for [the common law doctrine of champerty] have never existed in this state and that it has never been the law here."); *Wheeler v. Riviere*, 49 S.W. 697, 699 (Tex. Civ. App. 1899) ("The English statutes of champerty were never in force in this state."). Second, Plaintiff argues that Texas has a policy favoring the free assignment of patent rights and does not recognize the countervailing use of champerty to prevent those assignments. While Texas law certainly allows for the application of the laws of other states where appropriate, to apply Delaware champerty law to prevent Plaintiff from having standing to bring this suit would be contrary to Texas and Federal law regarding patent assignments. Further, Texas has a materially greater interest than Delaware in the resolution of this particular issue, which is whether the Patent Sale Agreement is champertous and deprives Plaintiff of standing in this lawsuit. Therefore, the Court finds that Texas law should apply.

However, even if the Court applied Delaware law, the Court finds that the agreement is not champertous. As stated above, champerty is "an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it." *Street Search*, 2006 Del. Super. LEXIS, at *12. Plaintiff argues that the Patent Sale Agreement does not transfer a particular claim or dispute from IV to Plaintiff, but rather assigns IV's rights in the patents to Plaintiff. The Patent Sale Agreement does not assign any specific claims or disputes to Plaintiff, and no specific claims were contemplated by the Agreement. Therefore, the Court finds that even if it applied Delware law, the Patent Sale Agreement would not be champertous, and thus, would not be void.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant EMC and Decho Corp.'s Motion to Dismiss Oasis's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Standing (Dkt. #515) is **DENIED**.

The Court further finds Carbonite's Motion to Dismiss Oasis's Complaint Pursuant to Fed. Civ. P. 12(b)(1) for Lack of Standing and Lack of Subject Matter Jurisdiction (Dkt. #518) is **DENIED**.

    **IT IS SO ORDERED.**
    **SIGNED this 1st day of March, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE