**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| OASIS RESEARCH, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ADRIVE LLC, et al., <br><br> Defendants. | Civil Action No. 4:10-cv-435-ALM <br> Consolidated with: <br> Civil Action No. 4:12-cv-525-ALM <br> Civil Action No. 4:12-cv-526-ALM |

## JOINT PROPOSED JURY INSTRUCTIONS

Pursuant to this Court's instruction, the parties hereby submit the attached joint proposed jury instructions. In accordance with this Court's scheduling order (Dkt. 190), the parties agreed-upon language is presented in normal font.  Where the parties disagree with a proposed instruction, Oasis' proposed language is presented in italicized font and EMC/Carbonite's proposed language is underlined.  The support of the proposing party's language and/or the response by the objecting party is found in a footnote immediately following the proposed language.

*PRELIMINARY INSTRUCTION 1*

**General Overview – DISPUTED**

Members of the jury:  You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.  As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the defendants, who have the burden of proof in this case, will call witnesses and present evidence. Then, the plaintiff will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the defendants may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties,

the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

*PRELIMINARY INSTRUCTION 2*

**What a Patent is and How One is Obtained – DISPUTED**

This case involves a dispute over a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained.

The United States Constitution grants Congress the powers to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."  Using this power, Congress enacted the patent laws.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). **[[EMC/Carbonite Propose**: A patent may be granted on a business method.]][1]  A valid United States patent gives the patent holder the right for 17 years from the date the patent issued to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.

**[[Oasis Proposes**: *A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.*]][2] **[[EMC/Carbonite Propose**: But infringement is not an issue in this trial.]][3]

---

[1]  EMC/Carbonite support: *Bilski v. Kappos*, 130 S. Ct. 3218, 3228-29 (2010).

[2]  Oasis Support: Oasis objects to Defendants' omission of these two statements.  These two statements are taken from the National Jury Instruction Project Model Patent Jury Instructions, § 1.1, and are also in Federal Circuit Bar Association ("FCBA") Model Jury Instruction A.1, which Defendants cite.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it, in such full, clear, concise, and exact terms so that others skilled in the field will know how to make and use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.   A patent application must list all persons who qualify as inventors of the patent.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

---

EMC/Carbonite response:  EMC and Carbonite object to Oasis' language because the Court has specifically bifurcated the inventorship and infringement issues.  Accordingly, because infringement is not at issue in this trial, there is no need to provide any jury instructions related to infringement.  In addition, this instruction is titled "What a Patent is and How One is Obtained" – the instruction has no bearing on infringement.  Finally, because this Court granted EMC and Carbonite's Motion in Limine #2, there can be no question that issues of infringement are not relevant for this trial, and therefore should not be included in any instruction.

[3]   EMC/Carbonite support: If the Court decides to provide an instruction on infringement, EMC and Carbonite request that the jury be instructed that infringement is not an issue in this trial.

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called an "Office Action."  The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."  [**EMC/Carbonite Propose:**  Prosecution of a patent application is conducted in private, not open to the public.]

[**Plaintiff Proposes in the Alternative**:  *This case involves a dispute over a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I will play a video for you to explain what a patent is and how one is obtained.*][4]

---

[4]   EMC/Carbonite Response: As discussed in the previous footnote, and as the Court ruled regarding EMC/Carbonite's Motion in Liminte #2, issues of infringement, damages and invalidity unrelated to co-inventorship are not relevant to this trial.  The video that Oasis proposes playing addresses many issues beyond the scope of this trial.  It only briefly addresses inventorship, and does not address joint inventorship.

***PRELIMINARY INSTRUCTION 3***

**The Patents-in-Suit – AGREED**

Let's take a moment to look at one of the patents in this case.  The cover page of the patent identifies the date the patent was granted and patent number along the top, as well as the inventor's name, the filing date, and a list of the references considered in the PTO.

The specification of the patent begins with an abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.  Next come the drawings.  The drawings illustrate various aspects or features of the invention.  The written description of the invention appears next and is organized into two columns on each page.  The specification ends with numbered paragraphs.  These are the patent claims.

*PRELIMINARY INSTRUCTION 4*

**The Parties and the Nature of the Case – DISPUTED**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

This is a patent infringement case wherein Oasis Research, LLC ("Oasis") alleges that Defendants EMC Corporation and Decho Corporation (collectively "EMC") and Carbonite, Inc. ("Carbonite") infringe U.S. Patent No. 5,771,354 ("the '354 patent"), U.S. Patent No. 5,901,228 ("the '228 patent"), U.S. Patent No. 6,411,943 ("the '943 patent"), and U.S. Patent No. 7,080,051 ("the '051 patent") (collectively, the "Patents-in-Suit").  Defendants deny Plaintiff Oasis' assertions of infringement.  **[[EMC/Carbonite Propose:**  But infringement is not an issue in this trial.]]

**[[Oasis Proposes:**  *Defendants further allege that the Patents-in-Suit are invalid.  You are to decide whether Defendants have proved their contention that the Patents-in-Suit are invalid under 35 U.S.C. § 102(f) for failure to name three individuals, Jack Byrd, Donald Atwood, and Chuk Campos, as inventors.*]][5]

**[[EMC/Carbonite Propose:**  For your convenience, the parties and I will often refer to these patent numbers by the last three numbers of the patent number, namely, as the "'354, '228,

---

[5]    EMC/Carbonite response:  EMC and Carbonite object to Oasis' language because the Federal Circuit has found that "[w]hen a party asserts invalidity under 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor."  *Pannu v. Iolab*, 123 F.3d 1466 (Fed. Cir. 1997). In other words, the factual issue for the jury to determine is whether Byrd, Atwood or Campos are co-inventors.  The ultimate issue of invalidity is for the Court to decide.   In addition, because this trial is for EMC and Carbonite's counterclaims, EMC and Carbonite object to the reference of Oasis as "plaintiff" and EMC/Carbonite as "defendants."   Instead of inaccurate labels, the parties' names should be used.  Finally, Oasis' proposal suggests that the jury must find that all of Byrd, Atwood and Campos are co-inventors in order for EMC/Carbonite to prevail.  That is not accurate.

'943, and '051 patents."  The patents were issued to Christopher Crawford as the sole named inventor.  In 2007, he assigned them to a subsidiary of Intellectual Ventures LLC.  Intellectual Ventures later assigned them to Oasis Research LLC.

EMC and Carbonite contend that three other individuals are co-inventors and should have been listed in the applications as inventors along with Mr. Crawford.  Those individuals are Jack Byrd, now deceased, Donald Atwood, and Charles (Chuk) Campos.  EMC and Carbonite contend that Mr. Crawford failed to list Mr. Byrd, Mr. Atwood, and/or Mr. Campos as co-inventors on the patent applications for the Patents-in-Suit.  Oasis Research denies that Mr. Byrd, Mr. Atwood, and Mr. Campos are co-inventors of the Patents-in-Suit.

Your job will be to decide whether or not Byrd, Atwood, or Campos – either one, two or all three of them – should have been listed as co-inventors of the Patents-in-Suit.

If you decide that the Patents-in-Suit do not list all of the inventors, under law, the patents are invalid.  There are procedures available to the judge to correct that, but those procedures are not part of this trial. ]][6]

---

[6]   EMC/Carbonite support:  The Model Patent Jury Instructions include detailed facts and contentions in the preliminary instructions (e.g. names of accused products and asserted claims). In this instruction, EMC and Carbonite are simply providing a commensurate level of detail for the contentions at issue.  Additionally, the last proposed paragraph is supported by *Pannu*, 123 F.3d at 1350 ("When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity.").

Oasis objects to Defendants' proposed language for setting forth detailed facts and contentions inappropriate for the Court's jury instructions.

*PRELIMINARY INSTRUCTION 5*

**Burden of Proof – Clear and Convincing Evidence – AGREED**

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  In determining whether any fact has been proved by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

***PRELIMINARY INSTRUCTION 6***

**Overview of Applicable Law[7] – DISPUTED**

[[EMC/Carbonite Propose:  In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The only issue that you will be asked to decide here is whether Jack Byrd, Don Atwood, or Chuk Campos – either one, two or all three of them – should have been listed as co-inventors of the Patents-in-Suit.  There can be more than one person who qualifies as an inventor of the patent.  In that situation the inventors are referred to as "joint inventors" or "co-inventors."

All that is required of a joint inventor is that he or she must make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.  But a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art.[8] A co-inventor need not make a contribution to every claim of the patent. A contribution to one claim is enough.[9]]]

---

[7]     Oasis objects to this preliminary instruction of law as unnecessary, confusing, and premature.

    EMC/Carbonite response:  The FCBA model rules include a preliminary instruction that gives a brief overview of the applicable law of the case.  Jurors will not be familiar with the standards of co-inventorship, and giving them a brief overview at the outset of the case will give them a better foundation to understand the presented evidence.

[8]     EMC/Carbonite support:  *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); 35 U.S.C. § 116; Dkt. 645.

[9]     EMC/Carbonite support:  35 U.S.C. § 116.

*PRELIMINARY INSTRUCTION 7*

**Glossary of patent terms – AGREED**

To assist you in your deliberations, I have attached a Glossary of Patent and Technical Terms (Appendix A) that identifies terms used in patent matters and gives you a definition of those terms.

**Glossary of patent terms—Appendix A**

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**Patent examiners** – Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

**Prior art** – Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings (if any). In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

*PRELIMINARY INSTRUCTION 8*

**Course of the Trial – DISPUTED**

The trial will soon begin.  First, each side may make an opening statement.  An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, offered to help you follow the evidence.

[[**Oasis Proposes**: *Next, the Defendants will present their witnesses, and the Plaintiff may cross-examine them.  Then the Plaintiff will present their witnesses, and Defendants may cross-examine them.*]][10]

[[**EMC/Carbonite Propose:**  After the opening statements, EMC and Carbonite will present their evidence in support of their contention that Mr. Byrd, Mr. Atwood, and Mr. Campos are co-inventors of the Patents-in-Suit.

Oasis Research will then put on evidence responding to EMC and Carbonite's proof of co-inventorship.]]

After both sides have rested fully on the case, the Court will give you instructions on the law, and the attorneys will make their closing arguments to summarize and interpret the evidence for you.  You will then retire to deliberate on your verdict.

---

[10]   EMC/Carbonite response:  Oasis' use of "defendants" and "plaintiff" is extremely confusing to the jury especially given the order of presentation in this case. This trial is for EMC and Carbonite's counterclaims, instead of inaccurate labels, the parties' names should be used.

*FINAL INSTRUCTION 1*

**General Charge – DISPUTED**

Members of the jury:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys.  Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

[[**Oasis Proposes**: *You must answer all questions based on clear and convincing evidence.  By this is meant the evidence must leave you with a clear conviction of the truth of the party's factual contentions.  In determining whether any fact has been proved by clear and convincing evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.*]][11]

---

[11]   <u>Oasis support</u>:  Oasis objects to Defendants' omission of the burden of proof entirely from this section of the instruction.  The 5th Circuit Pattern instructions include an explanation of the burden of proof, and Oasis includes the burden of proof applicable to this case.

<u>EMC/Carbonite response</u>:  EMC and Carbonite contend that this portion of Oasis' instruction is redundant; both parties already propose a stand-alone instruction on the burden of proof (Final Instruction 16).

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

*FINAL INSTRUCTION 2*

**Evidence in the Case – AGREED**

The evidence you are to consider includes:

1.      The sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers stipulate.

The following are not evidence, and you must not consider them as evidence in deciding

the facts of this case:

1.      statements and arguments of the attorneys;

2.      questions and objections of the attorneys;

3.      testimony that I instruct you to disregard; and

4.      anything you may see or hear when the Court is not in session even if what you

see or hear is done or said by one of the parties or by one of the witnesses.

*FINAL INSTRUCTION 3*

**Consideration of the Evidence – DISPUTED**

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence—such as testimony of any eye witness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  [**Oasis Proposes:** *The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from clear and convincing evidence, both direct and circumstantial.*][12] [**EMC/Carbonite Propose:** <u>As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that you find the facts from all of the evidence, both direct and circumstantial, regardless of the burden of proof involved.</u>]

---

[12]   Oasis <u>support:  Oasis</u> adapted this statement verbatim from the 5th Circuit, <u>Pattern Jury Instructions</u>, (2006 Ed.), No. 2.18, except for changing the applicable standard from "preponderance of all the evidence" to "clear and convincing evidence," as is applicable in this case.

*FINAL INSTRUCTION 4*

**Demonstrative Exhibits – AGREED**

Certain exhibits shown to you are illustrations.  We call these types of exhibits "demonstrative exhibits."  Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.  While demonstrative exhibits may have been helpful to you in determining the issues, the demonstrative exhibits of both parties are not evidence or proof of any facts.  If they do not correctly reflect the evidence in this case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.  Demonstrative exhibits not admitted into evidence will not be available to you during your deliberations.

*FINAL INSTRUCTION 5*

**Credibility of Witnesses**

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses, including Plaintiff's and Defendants' representatives, who testified in this case.  You should decide whether you believe all or any part of what each person had to say, and how important that testimony was.

In making that decision I suggest that you ask yourself a few questions:  Did the person impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?  Did the witness have any relationship with either Plaintiff or Defendants?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he or she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  These are a few of the questions and considerations that will help you determine the accuracy of what each witness said.

The testimony of witnesses should be weighed and their credibility evaluated in the same way as that of any other witness.

Your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say.  In making up your mind and reaching a verdict, do not make any decisions simply because there were more witnesses on one side than the other.  Do not reach a conclusion on a particular point just because there were more witnesses testifying for one side on that point.

*FINAL INSTRUCTION 6*

**Impeachment by Witness' Inconsistent Statements  – AGREED**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.

*FINAL INSTRUCTION 7*

**Deposition Testimony – AGREED**

Certain testimony was presented to you through deposition.  A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial.  Under some circumstances, if witnesses cannot be present to testify from the witness stand, or the parties otherwise agree, those witnesses' testimony may be presented, under oath, in the form of depositions.  Some time before this trial, attorneys representing the parties in this case questioned these witnesses under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witnesses had been present and had testified from the witness stand in court.

*FINAL INSTRUCTION 8*

**Objections – AGREED**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer these questions.

*FINAL INSTRUCTION 9*

**Use of Notes Taken by Jury – AGREED**

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

*FINAL INSTRUCTION 10*

**Summary of Contentions – DISPUTED**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

[[**Oasis Proposes***: This is a patent infringement case wherein Plaintiff Oasis Research, LLC ("Oasis") alleges that Defendants EMC and Carbonite infringe U.S. Patent No. 5,771,354 ("the '354 patent"), U.S. Patent No. 5,901,228 ("the '228 patent"), U.S. Patent No. 6,411,943 ("the '943 patent"), and U.S. Patent No. 7,080,051 ("the '051 patent") (collectively, the "Patents-in-Suit").*

*Defendants deny Plaintiff Oasis's assertions of infringement. Defendants further allege that the Patents-in-Suit are invalid. Defendants contend that the Patents-in-Suit are invalid under 35 U.S.C. § 102(f) for failure to name Jack Byrd, Donald Atwood, and Chuk Campos as inventors.[13]*

*Invalidity is a defense to infringement. Therefore, even though the U.S. Patent and Trademark Office (PTO) examiner has allowed the Patents-in-Suit, you, the jury, must decide whether they are invalid. Your job is to decide whether the Patents-in-Suit are invalid for improper inventorship.*]][14]

---

[13]  Defendants' Joint Supplemental Invalidity Contentions served on July 12, 2012.

[14]  EMC/Carbonite response:  EMC and Carbonite object to EMC's language because the Court has specifically bifurcated the inventorship and infringement issues. Accordingly, because infringement is not at issue in this trial, there is no need to provide any jury instructions related to infringement. In addition, Oasis' "summary" of contentions is cursory and misleading; EMC and Carbonite's proposal gives a more complete—and therefore more helpful—overview of the issues for the jury.

[[**EMC/Carbonite Propose:**   The parties in this case are EMC Corporation, Decho Corporation, Carbonite Incorporated, and Oasis Research LLC. For sake of convenience, I will refer to EMC and Decho collectively as "EMC."  The case involves United States Patent Nos. 5,771,354; 5,901,228; 6,411,943; and 7,050,051, obtained by Mr. Christopher Crawford.  For your convenience, the parties and I will often refer to these patent numbers by the last three numbers of the patent number, namely, as the "'354, '228, '943, and '051 patents," and collectively refer to the patents as the "Patents-in-Suit."  After the patents were issued to Mr. Crawford, he assigned them to a subsidiary of Intellectual Ventures LLC.  Intellectual Ventures later assigned the patents to Oasis Research LLC.

The patents list Christopher Crawford as the sole inventor.  EMC and Carbonite contend that three other individuals are co-inventors and should have been listed in the applications as inventors along with Mr. Crawford.  Those individuals are Jack Byrd, now deceased, Donald Atwood, and Charles (Chuk) Campos.  EMC and Carbonite contend that Mr. Crawford failed to list Mr. Byrd, Mr. Atwood, and/or Mr. Campos as co-inventors on the patent applications for the Patents-in-Suit.  Oasis Research denies that Messrs. Byrd, Atwood, and Campos are co-inventors of the Patents-in-Suit.

Your job will be to decide whether or not Byrd, Atwood, and Campos – either one, two or all three of them – are co-inventors of the Patents-in-Suit.

If you decide that the Patents-in-Suit do not list all of the inventors, under law, the patents are invalid.  There are procedures available to the judge to correct that, but those procedures are not part of this trial.]][15]

---

[15]   EMC/Carbonite support:  The Model Patent Jury Instructions include detailed facts and contentions in the final instructions (e.g. names of accused products and asserted claims).  In this

instruction, EMC and Carbonite are simply providing a commensurate level of detail for the contentions at issue.  Additionally, the last proposed paragraph is supported by *Pannu*, 123 F.3d at 1350 ("When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity.").

Oasis objects to Defendants' proposed language for setting forth detailed facts and contentions inappropriate for the Court's jury instructions.

*FINAL INSTRUCTION 11*

**Invalidity – DISPUTED**

[[**Oasis Proposes**: *I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that Defendants bear the burden of providing invalidity by clear and convincing evidence.  In other words, Defendants must leave you with a clear conviction that the claims are invalid.*]][16]

The issuance of a patent by the PTO creates a presumption that the patent is valid.  From the issuance of the patent, it is presumed that a claimed invention is "novel" (new), "useful," "not obvious," and satisfies the other legal requirements for a valid U.S. patent.

The presumption of validity remains intact throughout this litigation, and the burden of proof remains on Defendants to prove invalidity by clear and convincing evidence.

---

[16]  <u>Oasis support</u>:  Taken verbatim from the Court's charge in *Internet Machines LLC v. Alienware Corp. et al*., Civil Action No. 6:10-CV-23.

<u>EMC/Carbonite response</u>:  EMC and Carbonite object to this instruction because it is duplicative of the numerous other instructions relating to the burden of proof.

*FINAL INSTRUCTION 12*

**Inventorship – DISPUTED**

[[**Oasis Proposes**: *In this case, the Defendants contend that the Patents-in-Suit are invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the inventorship requirement.  For you to find the patent invalid for improper inventorship, you must find the absence of the inventorship requirement by clear and convincing evidence.*

*To be an inventor, one must make a significant contribution to the conception of one or more of the claims of the patent. Whether the contribution is significant is measured against the scope of the full invention.  Explaining to the actual inventor well-known concepts or the current state of the art does not make someone an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor.  What is required is some significant contribution to the idea claimed.*

*Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.*

28

*In finding the patent invalid for improper inventorship you may not rely solely on the testimony of interested parties.  Oral testimony from interested witnesses must be corroborated.*]][17]

[[**EMC/Carbonite Propose**:  A patent is required to name all of the actual inventors; this is known as the "inventorship" requirement.  When an inventor submits a patent application to the Patent Office, he must sign an oath stating that he is a true inventor of the material in the patent and also disclosing  the names of all other inventors.[18]  In this case, EMC and Carbonite contend that the Patents-in-Suit do not name all of the actual inventors.

There can be more than one person who qualifies as an inventor of the patent.  In that situation the inventors are referred to as "joint inventors" or "co-inventors."

Joint inventorship is governed by a statute (35 U.S.C. § 116), which provides:

---

[17]   Oasis support:  Oasis' proposal is taken verbatim from the Court's charge in *Mass Engineered Design, Inc. et al v. Ergotron, Inc. et al*, Civil Action No. 2:06-CV-272, without omissions or additions.  *See also, e.g., Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223 (Fed. Cir. 1994); *Coleman v. Dines*, 754 F.2d 353 (Fed. Cir. 1985).  Oasis objects to Defendants' statements in its proposed section as contrary to law, confusing, and unnecessary, nor are they included in the Court's charge in *Mass Engineered Design*, adapted from any other court's charge, or adapted from any pattern instructions.  Defendants cite support from case opinions but merely paraphrase and take statements out of context.

EMC/Carbonite response:  EMC and Carbonite believe that their version of the inventorship instruction, given below and taken almost entirely verbatim from 35 U.S.C. § 116 and *Fina Oil and Chemical Co. v. Ewen*, (Fed. Cir. 1997), gives the jury a more complete, and better understanding of the inventorship standard, particularly in a joint-inventorship case.  The trial in the *Mass Engineered Design* cited by Oasis included numerous issues beyond inventorship.  Given that inventorship is the sole issue in this trial, a more complete instruction is particularly appropriate.  In addition, EMC and Carbonite object to any discussion of corroboration in this instruction as duplicative, as both parties have proposed stand-alone corroboration instructions.  (*See* Final Instruction 15).

[18] EMC/Carbonite support:  *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed. Cir. 1997) ("Title 35 requires that an applicant disclose the names of all inventors.");37 C.F.R. 1.63; 35 U.S.C. 102(f); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998).

When an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title.  Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

This provision sets no explicit lower limit on the quantity or quality of inventive contribution required for a person to qualify as a joint inventor.  Rather, a joint invention is simply the product of a collaboration between two or more persons working together to solve the problem addressed.[19]

One need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship.  All that is required of a joint inventor is that he or she must make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.[20]  A co-inventor need not make a contribution to every claim of the patent. A contribution to one claim is enough.[21]

Conception is different from reduction to practice.  "Reduction to practice" is the process of constructing an embodiment or performing a process that meets the elements of the patent and works for its intended purpose.  The writing and filing of a patent application is considered a

---

[19]   EMC/Carbonite support:  These statements are direct quotes from the Federal Circuit.  *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997); *see also* 35 USC 116; *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 2010) (35 USC 116 "does not set forth the minimum quality or quantity of contribution required for joint inventorship"). EMC and Carbonite contend that in this case—where there are dozens of claims—such an instruction will be useful for a jury, who just has to find that the co-inventors made a contribution to one claim of each patent.

[20]   EMC/Carbonite support:  Taken directly from *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); 35 U.S.C. § 116; Dkt. 645.

[21]   EMC/Carbonite support:  35 U.S.C. § 116.

constructive reduction to practice.  Any work reducing an invention to practice (including drafting the patent application) is irrelevant to issue of who qualifies as an inventor.[22]]]

**[[EMC/Carbonite Alternate Proposal for Last Two Paragraphs**:  All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well known concepts and/or the current state of the art.[23]  A co-inventor need not make a contribution to every claim of the patent.  A contribution to one claim is enough.]][24]

---

[22]   EMC/Carbonite support:  *In re Hardee*, 223 U.S.P.Q. 1122, 1123 (Comm'r Pat. & Trademarks 1984) ("The threshold question in determining inventorship is who conceived the invention . . . . Insofar as defining an inventor is concerned, reduction to practice per se is irrelevant.").

[23]   EMC/Carbonite support:  Dkt. 645 at 4 (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998)).

[24] Oasis objects to this statement of law as misleading and an incorrect statement of the law.  The Federal Circuit has recognized that a party does not attain inventorship status merely by "providing the sole feature of a dependent claim."  Nartron Corp. v. Schukra U.S.A. Inc., 558 F.3d 1352, 1358 (Fed. Cir. 2009).  "[A] dependent claim adding one claim limitation to a parent claim is still a claim to the invention of the parent claim, albeit with the added feature; it is not a claim to the added feature alone."  *Id.*

EMC/Carbonite response:  Oasis' characterization of *Nartron* is inaccurate.  The court in *Nartron* used the established rule from *Pannu* and Fina that a co-inventors' contributions cannot be insignificant when measured against the scope of the entire invention.  The Court did not announce any rule that the contributions to a dependant claim can never support a claim of co-inventorship.  In fact, in *Ethicon*, the Federal Circuit made it clear that a contribution to a dependant claim can support a finding of co-inventorship, as the court held that a person's contribution to single element of a claim, which is no different than contributing to an element of a dependent claim, made that person a co-inventor of the patent.  *See Ethicon v. United States Surgical Corp.*, 135 F.3d 1456, 1462-64 (Fed. Cir. 1998).

## FINAL INSTRUCTION 14

**Conception – DISPUTED**

[[**Oasis Proposes**: *Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of a complete and operative invention as it is thereafter to be applied in practice.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that a person of ordinary skill in the field of technology would be able to reduce the invention to practice without extensive research or experimentation.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.*

*Objective evidence is required to corroborate an inventor's testimony concerning his or her understanding of the invention.  Corroborating evidence can be documentary, physical, or circumstantial evidence or oral testimony of someone other than the alleged inventor(s).  Conception is a purely mental act, therefore it must be proven by evidence showing what the inventor has disclosed to others and what the disclosure means to one of ordinary skill in the art.*]][25]

---

[25]   Oasis support:  Taken verbatim  from the Court's charge in *Internet Machines LLC v. Alienware Corp. et al.*, Civil Action No. 6:10-CV-23, p. 20; *see also* Court's charge in *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07-CV-113; *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 2010) (citing *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985)) ("A joint invention is the product of a collaboration between two or more persons working together to solve the problem addressed. . . . Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention.").  Oasis contends that a separate section on the law of conception is necessary for issues of co-inventorship.  Even the case Defendants rely on for joint inventorship, *Fina Oil and Chemical Co. v. Ewen*, states that "Of course, every putative inventor must nonetheless provide corroborating evidence of any asserted contributions to the conception of the invention.  Like conception of the entire invention, a contribution to conception is a mental act which cannot be accurately verified without corroboration."  123 F.3d 1466, 1474.  Defendants have cited no case opinions dealing with co-inventorship in which the

*FINAL INSTRUCTION 14(A)*

**Joint Conception – DISPUTED**

[[**EMC/Carbonite propose**: Co-inventors' claims do not necessarily fail because they cannot recall each individual's specific contribution; it is sufficient that they recall collaborating together in a series of meetings to produce the patented invention.[26]

---

court did not require a finding that the alleged co-inventors conceived of their alleged contributions.

EMC/Carbonite response:  Oasis' instruction is misleading.  Neither the *Internet Machines* case nor the *i4i* case that Oasis takes this charge from dealt with issues relating to co-inventorship (the conception charge was given in relation to prior-art related invalidity defenses). Oasis' instruction is misleading in that it suggests that a single person be required to fully conceive of an invention in order to be named as an inventor to a patent.  That is not the law as this Court recognized in the order denying Oasis's summary judgment motion on inventorship.

[26]   EMC/Carbonite support:  *Canon Computer Systems, Inc. v. Nu-Kote Intern., Inc.*, 134 F.3d 1085 (Fed. Cir. 1998); 35 U.S.C. 116; Oasis has no support for why a claim for misjoinder under 35 USC 102(f) should be treated any differently than a claim for non-joinder that same statute.

Oasis response:  Oasis objects to a separate section on "Joint Conception."  Defendants have not cited any other Court's charge with a separate section on joint conception, nor is joint conception even a legally recognized standard.  Defendants' proposed statements of law are also incorrect.  The case cited by Defendants, *Canon Computer Systems*, does not stand for the proposition that alleged co-inventors can prove their co-inventorship claims by recalling collaboration on conception—instead, it only recognizes that a patent cannot be invalidated for improper inventorship merely because ***named inventors*** do not recall each other's specific contributions.

*FINAL INSTRUCTION 15*

**Corroboration of Oral Testimony – DISPUTED**

[[**Oasis Proposes***: Defendants called witnesses in this case who have testified that they are co-inventors of the patents-in-suit.  Oral testimony alone is insufficient to prove inventorship. A party seeking to prove inventorship also must provide evidence that corroborates any oral testimony, especially when the oral testimony comes from an interested witness or a witness testifying on behalf of an interested party.  This includes any witness testifying that he/she is a co-inventor of a patent.  Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the alleged co-inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event occurred before the filing date of the patents-in-suit, that party must also have provided some sort of corroborating evidence that agrees with that oral testimony.  If you find that the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies the witness as a co-inventor.*

*If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:*

*(1) the relationship between the corroborating witness and the alleged inventor,*

*(2) the time period between the event and trial,*

*(3) the interest of the corroborating witness in the subject matter in suit,*

*(4) contradiction or impeachment of the witness' testimony,*

*(5) the extent and details of the corroborating testimony,*

*(6) the witness' familiarity with the subject matter of the patented invention, and*

34

*(7) impact of the invention on the industry, and the commercial value of its practice.*]][27]

[[**EMC/Carbonite Propose:**  An alleged co-inventor must supply evidence to corroborate his or her testimony.  Without corroboration, the oral testimony cited by an alleged co-inventor is simply insufficient as a matter of law to meet the clear and convincing standard of proof required to establish co-inventorship. However, the law does not impose an impossible standard of independence on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence having a source totally independent of the inventor. Whether a co-inventor's claim is sufficiently corroborated is determined by a rule of reason, based on the totality of the evidence.  Under the rule of reason, an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the alleged inventor's story may be reached.  Co-inventorship may be corroborated through testimony from non-

---

[27]    Oasis support:  Adapted  from the Court's charge in *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07-CV-113; *see also* the Court's charge in *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.  These factors are used by the Federal Circuit to apply a "rule of reason" analysis for corroboration of testimony:  "[T]his court applies a 'rule of reason' analysis to determine whether the testimony introduced has been sufficiently corroborated. Under this analysis, this court evaluates all of the pertinent evidence so that a sound determination of the credibility of the [witness's] story may be reached. When conducting a rule of reason analysis, this court generally considers the following eight factors."  *Lazare Kaplan Intern., Inc. v. Photoscribe Technologies, Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010) (citing *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998)).  The adapted sections set out an appropriate guideline to the jury for considering whether Defendants have shown corroboration of oral testimony to establish invention.  Defendants also cite the "rule of reason" analysis, and Oasis contends that to cite the analysis in vague language but not provide the factors provided by the Federal Circuit for the analysis would be confusing and unhelpful to the jury.

EMC/Carbonite response:  EMC and Carbonite object to this instruction as prejudicial and inaccurate.  Neither of the cases that Oasis attributes this instruction to relate to the omission of alleged co-inventors.  In addition,  Oasis deliberately omits statements from the instructions in those prior cases explaining that evidence other than documentary evidence may be used to corroborate co-inventors' testimony.

inventors, records made contemporaneously with the inventive process, or circumstantial evidence.[28]

To the extent that Mr. Crawford takes the position that he conceived of the entire invention before he met Mr. Byrd, Mr. Campos and Mr. Atwood, he must also supply corroborating evidence of that prior conception.   The rule of reason I have just described applies to the corroboration required for this testimony also.[29]]]

---

[28]   EMC/Carbonite support:  Taken verbatim from this Court's overview of the corroboration requirement (Dkt. 645 at 4-5).

[29] EMC/Carbonite support:  *Yeda Research and Dev. Co. v. ImClone Sys., Inc.*, 443 F. Supp. 2d 570, 618-19 & 621-22 (S.D.N.Y 2006) (holding that both the alleged inventors and the inventors named in the patent were required to provide corroboration, including reasoning that "there is also no corroborating evidence to suggest that [the named inventor] did in fact contemplate the mixture experiment performed by the Weizmann scientists."); *University of Pittsburg v. Hedrick*, 2008 U.S. Dist. LEXIS 112031, at *26 (C.D. Cal. June 9, 2008) ("An alleged co-inventor's testimony, *or the testimony of the inventor himself*, standing alone, cannot provide clear and convincing evidence of conception." ) (emphasis added); *Univ. of Colo. Found. v. American Cyanamid Co*. 105 F. Supp. 2d 1164, 1177, 1182  (D. Colo. 2000) (requiring named inventor to provide corroborating evidence in support of his testimony that he was the sole inventor), *aff'd,* 342 F.3d 1298 (Fed. Cir. 2003); *Fina Oil & Co. v. Ewen*, 123 F. 3d 1466, 1474 (Fed. Cir. 1997) (discussing evidence of named inventor in support of contributions to the conception: "Of course, every putative inventor must nonetheless provide corroborating evidence of any asserted contributions to the conception of the invention"); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996).(holding, in the context of 35 U.S.C. § 102(a), that after a defendant comes forward with an alleged prior art publication, the plaintiff must then come forward with evidence of an earlier date of conception to avoid the publication being prior art under § 102(a), and that evidence of an earlier conception date cannot just be testimony of the named inventor, but rather must be corroborated); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1367 (Fed. Cir. 1999) ("While this court has in the past applied the requirement of corroboration more often in the context of priority disputes under *35 U.S.C. § 102(g)*, …. [n]o principled reason appears for applying a different rule when other subsections of *§ 102* are implicated ….")

Oasis response:  Defendants' statement is an incorrect statement of law and unsupported by the various cases cited.  Mr. Crawford is the named inventor on the patent, and the alleged co-inventors must show and corroborate their conception of any alleged contributions by clear and convincing evidence.

*FINAL INSTRUCTION 16*

[[**Oasis Proposes***:*

### *BURDEN OF PROOF-INVALIDITY*

*I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that Plaintiff's patents are invalid.  To prove that a patent is invalid, Defendants must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the patent is invalid.  Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, which only requires that the party's claim be more likely true than not true.*]][30]

[[**EMC and Carbonite Propose:**

### **Burden of Proof to Show Omitted Co-Inventors**

To prove co-inventorship, EMC and Carbonite must present clear and convincing evidence. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue. This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.]][31]

---

[30]  Oasis support:  Adapted from The Federal Circuit Bar Association: Model Patent Jury Instructions, § 4.1; Fifth Circuit Pattern Jury Instructions – Civil 2006, § 9.2; *Eli Lilly and Co. v. Aradigm Corp*., 376 F.3d 1352, 1358 (Fed. Cir. 2004) ("The general rule is that a party alleging misjoinder or non-joinder of inventors must meet the heavy burden of proving its case by clear and convincing evidence").

EMC/Carbonite response:  Oasis' proposal again improperly references invalidity and also deviates from the 5th Circuit model jury instructions.

[31]  EMC/Carbonite support:  5th Circuit, Pattern Jury Instructions, (2006 Ed.), No. 2.14.

*FINAL INSTRUCTION 17*

**Level of ordinary skill – DISPUTED**

Several times in these instructions I refer to a person of ordinary skill in the art or a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention.  [[**Oasis Proposes**: *Someone with "ordinary skill in the art" is presumed to know all of the pertinent prior art, not just what the inventor may have known.*]][32]  You should consider all of the evidence introduced at trial in making this decision, including:

1.  The levels of education and experience of persons working in the field;

2.  The types of problems encountered in the field; and

3.  The sophistication of the technology.

---

[32]  <u>Oasis support</u>:  Verbatim from the Court's charge in *Internet Machines LLC v. Alienware Corp. et al.*, Civil Action No. 6:10-CV-23, p. 14.

<u>EMC/Carbonite response</u>:  Oasis' additional language is not found in the FCBA Model Patent Jury Instructions, and Oasis provides no justification for its inclusion.

*FINAL INSTRUCTION 18*

**Duty to Deliberate – AGREED**

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the other think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

*SIGNED this _____ day of March, 2013*

_____

**AMOS L. MAZZANT**
**UNITED STATES MAGISTRATE JUDGE**
**EASTERN DISTRICT OF TEXAS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

OASIS RESEARCH, LLC,

                Plaintiff,

      v.

ADRIVE LLC, et al.,

                Defendants.

Civil Action No. 4:10-cv-435-ALM
Consolidated with:
Civil Action No. 4:12-cv-525-ALM
Civil Action No. 4:12-cv-526-ALM

## <u>OASIS' PROPOSED VERDICT FORM</u>

In answering these questions, you are to follow all of the instructions I have given you in the Court's Charge:

1.  Did Defendants prove by clear and convincing evidence that any of following patents are invalid?

    **If you find the patent invalid, answer "Yes;" otherwise, answer "No."**

    '354 Patent          _____

    '228 Patent          _____

    '943 Patent          _____

    '051 Patent          _____

The jury foreperson should sign and date the Verdict Form and return it to the Bailiff.

_____            _____
        Date                               Jury Foreperson

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| OASIS RESEARCH, LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>EMC CORP., DECHO CORP., and<br>CARBONITE INC.<br><br>          Defendants. | Civil Action No. 4:10-cv-435-ALM<br>Consolidated with:<br>Civil Action No. 4:12-cv-525-ALM<br>Civil Action No. 4:12-cv-526-ALM |

## DEFENDANTS' [PROPOSED] JURY VERDICT FORM[33]

1.    Are any of the following co-inventors of U.S. Patent No. 5,771,354 (the '354 Patent)?

        Jack Byrd          ___Yes         ___No
        Donald Atwood     ___Yes         ___No
        Charles (Chuk) Campos   ___Yes         ___No

2.    Are any of the following co-inventors of U.S. Patent No. 5,901,228 (the '228 Patent)?

        Jack Byrd           ___Yes         ___No
        Donald Atwood     ___Yes         ___No
        Charles (Chuk) Campos   ___Yes         ___No

3.    Are any of the following co-inventors of U.S. Patent No. 6,411,942 (the '943 Patent)?

        Jack Byrd           ___Yes         ___No
        Donald Atwood     ___Yes         ___No
        Charles (Chuk) Campos   ___Yes         ___No

---

[33]  EMC/Carbonite support:  EMC/Carbonite's proposed verdict form is more understandable for the jurors, who are being asked to decide whether one or more of Mr. Byrd, Mr. Atwood and Mr. Campos were inventors on each of the patents-in-suit. This is clearly reflected in EMC/Carbonite's proposed verdict form, while Oasis' proposed verdict form is vague. Oasis' proposed verdict form also precludes rights under 35 U.S.C. § 256. It would improperly adjudicate rights of parties who are not before the Court (e.g., Pro Softnet, Autonomy, and Intellectual Ventures) because under Fed. R. Civ. P. 58, the Court would be obligated to enter judgment of invalidity after the jury verdict, precluding these parties from having an opportunity to ask the Court to invoke 35 U.S.C. § 256. On the other hand, the EMC/Carbonite proposed verdict form provides a basis for correction of the Patents-in-Suit, if necessary, by identifying the omitted co-inventors on a per-patent basis. Oasis' form provides no such information. EMC and Carbonite's verdict form is in accordance with the Federal Circuit's holding in *Pannu*, which requires the district court must first make factual findings relating to inventorship, and then turn to any 256 claims.

4.      Are any of the following co-inventors of U.S. Patent No. 7,050,051 (the '051 Patent)?

Jack Byrd                   ___Yes                  ___No
Donald Atwood               ___Yes                  ___No
Charles (Chuk) Campos       ___Yes                  ___No

The jury foreperson should sign and date the Verdict Form and return it to the Bailiff.

_____                _____
        Date                                    Jury Foreperson