**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

|  |  |  |
|---|---|---|
| OASIS RESEARCH, LLC, | § | |
| | § | |
| | § | Case No. 4:10-cv-00435-ALM |
| Plaintiff, | § | consolidated with |
| | § | |
| v. | § | Case No. 4:12-cv-00525-ALM |
| | § | Case No. 4:12-cv-00526-ALM |
| ADRIVE LLC, ET AL., | § | |
| | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

**JOINT FINAL PRETRIAL ORDER FOR**
**INVENTORSHIP TRIAL**

The inventorship trial Pretrial Conference is scheduled for March 1, 2013 at 9:00 a.m. in Sherman, Texas, pursuant to the Court's Docket Control Order (Dkt. No. 190), Amended Docket Control Orders (Dkt. Nos. 205, 345, and 358), Orders Resetting Trial (Dkt. Nos. 544 and 587), Local Rule CV-16, and Rule 16 of the Federal Rules of Civil Procedure. The Proposed Joint Final Pretrial Order relates to the inventorship issues currently scheduled to be tried in March 2013. The parties will submit additional pretrial orders, if necessary, on other issues as ordered by the Court.

**I. COUNSEL FOR THE PARTIES[1]**

**<u>Attorneys for Plaintiff Oasis Research, LLC:</u>**

---

[1] <u>Defendants' position</u>: This pre-trial statement lists Oasis's position first because Oasis refused to agree to any joint statement where they were not listed first. In the inventorship trial, EMC and Carbonite bear the burden of proof and, thus, are entitled to present their case first to the jury and offer rebuttal evidence after Oasis. *Martin v. Chesebrough–Pond's, Inc.*, 614 F.2d 498, 501 (5th Cir. 1980) ("Normally, the party with the burden of proof has the right to open and close the argument to the jury.")
<u>Oasis' position</u>: Oasis agrees that Defendants bear the burden of proof. As the plaintiff and patent owner in this this action, Oasis is entitled to present the Patents-in-Suit to the jury before Defendants attempt to invalidate them.

John M. Desmarais (*pro hac vice*),
jdesmarais@desmaraisllp.com
Alan S. Kellman (*pro hac vice*)
akellman@desmaraisllp.com
Tamir Packin (*pro hac vice*)
tpackin@desmaraisllp.com
Eugene Chiu (*pro hac vice*)
echiu@desmaraisllp.com
Xiao Li (*pro hac vice*)
xli@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

James C. Tidwell
Texas State Bar No. 20020100
jct@wtmlaw.com
**WOLFE, TIDWELL & MCCOY, LLP**
320 N. Travis, Suite 205
Sherman, Texas 75090
Telephone: (903) 868-1933
Facsimile: (903) 892-2397


**Attorneys for Counterclaimants EMC Corporation and Decho Corporation (collectively, "EMC"):**

Chris R. Ottenweller
California Bar No. 73649
cottenweller@orrick.com
I. Neel Chatterjee
California Bar No. 173985
nchatterjee@orrick.com
Bas de Blank
California Bar No. 191487
basdeblank@orrick.com
Jacob A. Snow
California Bar No. 270988
jsnow@orrick.com
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

John A. Jurata, Jr.
Virginia State Bar No. 46314
jjurata@orrick.com
Orrick, Herrington & Sutcliffe, LLP Columbia Center
1152 15th Street, N.W.
Washington, d.c. 20005-1706
Telephone:     (202) 339-8400
Facsimile:     (202) 339-8500

Alyssa M. Caridis
California Bar No. 260103
acaridis@orrick.com
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
Telephone:     (213) 629-2020
Facsimile:     (213) 612-2499

Eric H. Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

**<u>Attorneys for Counterclaimant Carbonite, Inc.</u>**:

Matthew B. Lowrie
mlowrie@foley.com
Kevin M. Littman
klittman@foley.com
Aaron W. Moore
amoore@foley.com
Matthew A. Ambros
mambros@foley.com
Foley & Lardner LLP
111 Huntington Ave.
Boston, MA 02199
Telephone: 617-342-4000
Facsimile: 617-342-4001

Ruben J. Rodrigues
rrodrigues@foley.com
Foley & Lardner LLP

321 N. Clark Street
Suite 2800
Chicago, IL 60654-5313
Telephone: 312-832-4500
Facsimile: 312-832-4700

Andy Tindel
atindel@andytindel.com
Andy Tindel, Attorney & Counselor at Law, P.C.
112 East Line Street, Suite 304
Tyler, TX 75702
Telephone: 903-596-0900
Facsimile: 903-596-0909

## II.     STATEMENT OF JURISDICTION

- **Oasis Research's Statement of Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq.*  Venue is proper in this Court, and this Court has personal jurisdiction over all parties.

- **Counterclaimants EMC And Carbonite's Statement of Jurisdiction**

Defendants have filed motions challenging Oasis's standing to bring this suit.  *See* EMC Corp. and Decho Corp.'s Motion to Dismiss Oasis's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) For Lack of Standing, D.I. 515 (Nov. 27, 2012); Carbonite's Motion to Dismiss Oasis's Complaint Pursuant to Fed. Civ. P. 12(b)(1) for Lack of Standing and Lack of Subject Matter Jurisdiction, D.I. 518 (Nov. 30, 2012).  If Oasis lacks standing, the Court lacks subject matter jurisdiction.

## III.    NATURE OF ACTION FOR THE INVENTORSHIP TRIAL

This is a patent infringement case wherein Oasis Research, LLC ("Oasis") alleges that EMC and Carbonite infringe U.S. Patent No. 5,771,354 ("the '354 patent"), U.S. Patent No.

5,901,228 ("the '228 patent"), U.S. Patent No. 6,411,943 ("the '943 patent"), and U.S. Patent No. 7,080,051 ("the '051 patent") (collectively, the "Patents-in-Suit"). Oasis contends at issue for the inventorship trial is whether the Patents-in-Suit are invalid under 35 U.S.C. § 102(f). Defendants contend at issue for the inventorship trial is whether Jack Byrd, Donald Atwood, and Charles "Chuk" Campos are omitted co-inventors on the Patents-in-Suit.

## IV. CONTENTIONS OF THE PARTIES

- **Oasis Research's Statement of Contentions For Inventorship Trial**

By providing these Contentions, Oasis does not concede that all of these issues are appropriate for trial. In addition, Oasis does not waive any of its motions *in limine* or motions for summary judgment.

1. Mr. Crawford obtained a trade school degree in computer programming in 1980. Afterwards, he began a career in the computer and computer software industry. With his experience in computer technology, he began forming the ideas for enhancing the online service capabilities of customer computers in the 1980s. In the early 1990s, Crawford accepted a position doing programming and systems design at a company known as Affiliated Computer Services ("ACS") in California.

2. The inventions of the Patent-in-Suit were conceived by Mr. Christopher Crawford—and only Mr. Crawford—at least as early as March 1992. On March 31, 1992, while at ACS, Crawford drafted a document titled "ACS Online Member Services" describing the ideas in Mr. Crawford's mind. This document included details for providing multiple services to remote customers online. One of those services was online backup, which eventually became the subject of the Patents-in-Suit. Crawford submitted his document proposal to ACS, hoping that ACS would consider implementing his technology. Jack Byrd, a senior level manager at ACS, received Mr. Crawford's proposal through the idea box. Out of all of the ideas proposed by Mr.

Crawford, Byrd liked the idea for doing online backup of personal computers and was interested in pursuing a business to that end. In response to Byrd's interest in the backup feature of Crawford's ideas, Crawford drafted a proposal on May 23, 1992.

3.      Sometime after May 23, 1992, Mr. Byrd, Mr. Crawford, Mr. Campos and/or Mr. Atwood may have briefly engaged in discussions about pursuing a business based on online backup. Mr. Crawford's contributions to the potential business were going to be his inventions, while the others were going to contribute business knowhow and money. But the business never came to fruition.

4.      Mr. Crawford resigned from ACS to pursue patents on his ideas, and moved back to Washington D.C. where he had lived before joining ACS. Mr. Crawford informed Mr. Campos and others that he intended to further pursue his ideas on his own. In fact, Mr. Crawford submitted a resignation letter to Mr. Campos stating that he was leaving ACS to pursue his idea for a new technology as referenced in his earlier memo to Bob Lynch—a general manager at ACS to whom Byrd reported—which indicated Crawford's intention to pursue patent rights in his ideas.

5.      Crawford proceeded to diligently work with his patent attorney to prepare his patent application and to pursue his patents. The initial application was over a hundred pages, with 63 pages of drawings and 71 claims. After a lengthy process the original application eventually issued as six patents. Four of those patents are at issue in this case—the '354 patent, the '228 patent, the '943 patent, and the '051 patent.

6.      After Mr. Crawford left ACS, none of Atwood, Byrd, or Campos ever pursued a business or filed a patent on a way to provide online backup services, even though many companies, including Defendants, are making commercial use of those ideas today.

7.     Only after twenty years, when approached by the Defendants in this case, did Atwood and Campos come forward claiming to be co-inventors of the Patents-in-Suit. Defendants offered Atwood, Campos (and Ms. Todd) money for their assistance (and eventually paid them). But Atwood and Campos have no evidence to corroborate their story that they contributed to Crawford's patented ideas. Crawford's own technical documents were authored by himself, and not during any alleged meetings, but at his own home on his own time.

8.     Oasis is the owner of all rights, title, and interest in and to the Patents-in-Suit by assignment as of July 30, 2010. Oasis possesses all rights of recovery under the Patents-in-Suit. Oasis contends that the Patents-in-Suit are valid and enforceable and that Mr. Crawford is the sole inventor of the inventions claimed in the Patents-in-Suit.

- **Counterclaimants EMC and Carbonite's Statement of Contentions For Inventorship Trial**

By providing these Contentions, EMC and Carbonite do not waive any of their motions *in limine* or motions for summary judgment.

1.     On January 2, 1990, Jack Byrd and Donald Atwood formed W.B.T. Associates, Inc., a Colorado corporation. One purpose of W.B.T. Associates was "to own and operate one or more computer consultant businesses, and operations allied with those businesses."

2.     By early 1990, Byrd and Atwood conceived the idea of a commercial service to provide on-line backup and recovery of data for PC users. The idea included the aspect of automated on-line backup of data. They successfully tested their ideas in Colorado. Those tests included backing up files from one computer to a remote computer and confirmed that Byrd and Atwood's idea was technically feasible. Byrd and Atwood discussed their ideas and related work with Byrd's wife, Teri Todd.

3.      Around the middle of 1991, Byrd and Atwood both began working in San Francisco, California.  Byrd worked for Affiliated Computer Services ("ACS").  Atwood worked for Centex Telemanagement ("Centex"), an ACS customer.  During this time, Byrd and Atwood continued to consider forming a business related to their idea to provide on-line backup and recovery services.

4.      Around Thanksgiving of 1991, Byrd and Atwood invited Charles "Chuk" Campos to join their efforts.  Campos was also employed at ACS and was a co-worker of Byrd's.  Campos, Byrd, and Atwood engaged in collaborative discussions to refine and enhance the Byrd/Atwood ideas.  Each made "not insignificant" contributions to the subject matter that Crawford would later claim in the Patents-in-Suit.  Campos discussed the group's work with Don Doss, a co-worker at ACS.

5.      In or around February-March 1991, Byrd, Atwood, and Campos invited Christopher Crawford to join their group.  Crawford was a junior technician at ACS, reporting to Campos.  Crawford was invited to join because Byrd, Atwood, and Campos were considering using IBM AS400 mid range computers to implement their remote online backup service and Crawford had experience with that type of computer.  The group asked Crawford to be the "scribe" for the group, the person responsible for taking notes at meetings and reducing the group's ideas to written format.

6.      Byrd, Atwood, Campos and Crawford met repeatedly in Byrd's San Francisco apartment to discuss a business and technology to provide on-line backup and recovery services.  Byrd developed a name and logo for the business — PC OASIS, which stood for "Offsite Archival, Software & Information Server."

7.     At no point during his interactions with the group did Crawford suggest that he had considered on-line backup and recovery services prior to joining group, which includes Byrd, Atwood, and Campos.  At no point did Crawford tell Byrd, Atwood, or Campos that Crawford believed he had invented the ideas they were discussing.

8.     As part of their discussions, the group prepared numerous documents reflecting their ideas on a service to provide on-line backup and recovery for PC users.  Because Crawford had a computer and printer at home, he was responsible for preparing documents reflecting the group's ideas and discussions.  These documents discussed the details of the proposed service for on-line backup and recovery; the contributions made by the group to those ideas; plans for implementing a business to pursue such a service; and the hardware and software requirements for such a service.  The documents corroborate the claims of Byrd, Atwood and Campos of joint inventorship.  For example, one document prepared by Crawford (also to reflect the group's discussions) acknowledged that it was "Jack Byrd's idea to provide automated offsite backup services to PC users."  Other documents chronicle the multiple meetings the group engaged in in their collaboration on the "PC Oasis" ideas and the tasks required to launch a business, such as securing patents for their ideas.

9.     Crawford engaged in a plan to deprive Byrd, Atwood, and Campos of their rights as co-inventors and the related rewards.  While working with the group — and without informing his business partners — Crawford approached an attorney to seek patents in his name alone.  Crawford continued to meet with the group after these discussions but did not inform Byrd, Atwood, or Campos of his intention to seek patents.  Crawford secretly proceeded to file a patent application claiming that he, and he alone, conceived all of the ideas relating to a service for providing data backup and recovery and that Byrd, Atwood, and Campos made no contributions

to the ideas. Pursuant to this plan, Crawford did not inform his business partners that he had filed such a patent application. Nor did Crawford inform the United States Patent and Trademark Office of the contributions of Byrd, Atwood, or Campos. Crawford repeated this deception in filing subsequent patent applications. Crawford never informed his business partners that he had filed the patent applications, nor did he inform them that patents had issued on the group's PC Oasis ideas.

10.     Crawford sold his patents to a subsidiary of Intellectual Ventures in 2007, reaping millions of dollars. In addition, Crawford signed a consulting agreement with the IV subsidiary guaranteeing him payments of hundreds of thousands of dollars in addition. Crawford never disclosed these activities to Atwood, Campos or Byrd's heirs.

11.     Crawford claimed to have conceived of the invention in the Patents-in-Suit over Memorial Day weekend, May 1992.

12.     Byrd died without ever learning that Crawford had sought and received patents in his name for their joint invention. Atwood, and Campos only learned that Crawford had sought and been granted patents during the course of this litigation.

13.     EMC and Carbonite entered into an Assignment Agreement whereby Atwood, Campos and Todd assigned their rights to the inventions claimed in the Patents-in-Suit to EMC, Carbonite, and some of the other Defendants.

14.     EMC Corporation is a Massachusetts corporation located in Hopkinton, Massachusetts.

15.     Decho Corporation is a Delaware entity located in Seattle, Washington.

16.     Carbonite, Inc. is a Delaware corporation located in Boston, Massachusetts.

17.     Oasis Research, LLC is a Delaware corporation located in Delaware.

18.     Intellectual Ventures LLC is a Washington corporation headquartered in Seattle, Washington.  Kwon Holdings Group LLC is a wholly owned subsidiary of Intellectual Ventures LLC.

19.     Oasis IPC, Inc. is a consulting business owned and operated by Christopher Crawford.

20.     In 2007, Crawford assigned his rights in the asserted patents to Kwon Holdings Group, L.L.C.

21.     Kwon Holdings Group, L.L.C, later changed its name to Intellectual Ventures Computing Platforce Assets, LLC.

22.     In 2010, Intellectual Ventures Computing Platforce Assets, LLC purported to assign Crawford's rights in the asserted patents to Oasis Research, LLC, the plaintiff in this action.

## V.     STIPULATIONS AND UNCONTESTED FACTS

- **Statement of Uncontested Facts For The Inventorship Trial**

1.     The '354 patent is entitled "Internet Online Backup System Provides Remote Storage for Customers Using IDs and Passwords which were Interactively Established When Signing Up for Backup Services."  The application for the '354 Patent was filed on November 4, 1993 and the patent issued on June 23, 1998.

2.     The '228 patent is entitled "Commercial Online Backup Service That Provides Transparent Extended Storage To Remote Customers Over Telecommunications Links."  The application for the '228 Patent was filed on March 10, 1997 and the patent issued on May 4, 1999.

3.      The '943 patent is entitled "Internet Online Backup System Provides Remote Storage for Customers Using IDs and Passwords which were Interactively Established When Signing Up For Backup Services."  The application for the '943 Patent was filed on August 20, 2000 and the patent issued on June 25, 2002.

4.      The '051 patent is entitled "Internet Download Systems and Methods Providing Software To Internet Computer Users for Local Execution."  The application for the '051 Patent was filed on March 12, 2002 and the patent issued on July 18, 2006.

5.      Mr. Christopher Crawford is a named inventor of each of the Patents-in-Suit.

- **Stipulations For Inventorship Trial**

1.      The parties stipulate that no party will seek to introduce expert testimony to the jury during the inventorship trial.[2]

2.      The parties recognize that the Court decided that the inventorship trial does not include RICO counterclaims.

3.      The parties agree that the issue of Oasis's standing is for the Court to decide and that they will not raise standing arguments before the jury.

4.      The parties further agree that during the inventorship trial they will not introduce evidence or make arguments on the following topics:

a)      Rejected claim construction positions or which party "won" or "lost" claim construction.

b)      Obviousness or non-obviousness.

## VI.     CONTESTED ISSUES OF FACT AND LAW

---

[2] For the purposes of clarity, this agreement does not apply to any bench trial on inequitable conduct.  At such bench trial, Defendants expect to offer the expert testimony of Mr. Godici, and Oasis expects to offer the expert testimony of Mr. Carmichael.

To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section. The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions *in limine*.

- **Oasis Research's Statement of Contested Issues of Fact and Law**

By providing this Statement, Oasis does not concede that all of these issues are appropriate

1.      Whether Defendants have proven by clear and convincing evidence that the Patents-in-Suit are invalid under 35 U.S.C. § 102(f) because not all of the actual inventors are named as inventors on the Patents-in-Suit.

2.      Whether Defendants have proven by clear and convincing evidence that Mr. Jack Byrd, Mr. Charles Campos and Mr. Donald Atwood each made a significant contribution to the conception of one or more claims of each patent-in-suit.

3.      Whether Defendants have proven by clear and convincing evidence that Mr. Jack Byrd, Mr. Charles Campos and Mr. Donald Atwood each contributed more than merely explaining to Mr. Christopher Crawford well-known concepts or the current state of the art.

4.      Whether or not the oral testimony of Ms. Terri Todd, Mr. Charles Campos, Mr. Donald Atwood, and Mr. Donald Doss has been corroborated.

5.      Whether or not Mr. Jack Byrd, Mr. Charles Campos and Mr. Donald Atwood acted with deceptive intent in being omitted as named inventors on the Patents-in-Suit.[3]

---

[3] Oasis' position: Oasis contends that before a jury is permitted to consider the question of invalidity under § 102(f), the Court must first determine whether or not there is any evidence of deceptive intent on the part of Mr. Atwood, Mr. Byrd, and Mr. Campos. It the Court determines that there is no evidence of deceptive intent, Defendants' § 102 (f) claim fails as a matter of law. *See, e.g., Mformation Techs., Inc. v. Research in Motion Ltd.*, 2012 WL 2239762 at *1 (N.D. Cal. June 7, 2012) (citing Shields v. Halliburton Co., 667 F.2d 1232, 1236 (5th Cir. 1982)) (precluding evidence of co-inventorship from trial because "the remedy for misjoinder is

6.      Any issues of fact that are determined to constitute issues of law are hereby designated as such, and vice versa.  Oasis also incorporates by reference the contested issues raised in its pending motions.

- **Counterclaimants Statement Of Contested Issues Of Fact And Law**

1.      Whether Counterclaimants have proven by clear and convincing evidence that Jack Byrd, Donald Atwood, or Charles "Chuk" Campos made "not insubstantial" contributions to the inventions of the Patents-in-Suit.  If the jury finds that either Byrd, Atwood or Campos is a co-inventor of the Patents-in-Suit, the Court should, as a matter of law, enter judgment based on the verdict holding the Patents-in-Suit invalid under 35 U.S.C. § 102(f).[4]  The jury does not decide the issue of patent invalidity, only the predicate issue of joint inventorship.

2.      Whether for the bench trial on inequitable conduct, Christopher Crawford claimed to be the sole inventor of the Patents-in-Suit with an intent to deceive the Patent Office.

## VII.    LIST OF WITNESSES

- Attached as Exhibit A is a list of the witnesses and rebuttal witnesses that Oasis presently expect they will call, may call, or will provide testimony through deposition designations.

---

correction of inventorship, and not invalidation" of a patent); *see also Hoffman-La Roche Inc. v. Cobalt Pharmas. Inc.*, 2010 WL 5492683 at * 2 (D.N.J. Dec. 17, 2010) (granting summary judgment of no invalidity for non-joinder under § 102(f) because inventorship can be corrected under § 256) (citing *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1350 (Fed. Cir. 1998)).
While non-joinder of inventors may still be a basis for a correction of inventorship cause of action under 35 U.S.C. § 256, Defendants have not pled that cause of action.  Moreover, 35 U.S.C. § 256 is an equitable claim to which no jury right attaches.  *See Shum v. Intel Corp.*, 499 F.3d 1272 (Fed. Cir. 2007).

[4] Defendants' position:  Oasis's contention is nonsensical.  In the inventorship trial, the jury will resolve the factual dispute as to whether Byrd, Atwood, and Campos are co-inventors.  If the jury finds that they are, there is no dispute that they were omitted and there is no § 256 claim to correct inventorship.  Thus, the Court will, as a matter of law, enter judgment that the patents are invalid.

- Attached as Exhibit B is a list of the witnesses and rebuttal witnesses counterclaimants presently expect they will call, may call, or will provide testimony through deposition designations.

## VIII. DEPOSITION DESIGNATIONS

Pursuant to the Court's Docket Control Orders (Dkt. Nos. 190, 205, 345, and 358), the parties have exchanged deposition designations on January 31, 2013. Rebuttal designations and objection to deposition designations will be exchanged on February 7, 2013. Objections to rebuttal deposition designations will be exchanged February 11, 2013. The parties will supplement this pre-trial order to include additional designations as described in Exhibits E to G:

- Oasis' Deposition Designations will be supplemented as Exhibit E.

- EMC's Deposition Designations will be supplemented as Exhibit F.

- Carbonite's Deposition Designations will be supplemented as Exhibit G.

## IX. LIST OF EXHIBITS

The parties will exchange exhibit lists as Exhibits C and D as described below:

- Oasis' Trial Exhibit List will be supplemented as Exhibit C.

- Defendants' Trial Exhibit List will be supplemented as Exhibit D.

Pursuant to the Court's Scheduling Order, the parties' respective exhibit lists will not include exhibits used solely for the purpose of impeachment. (*See* Dkt. 205 ¶ II(15).)

## X. LIST OF PENDING MOTIONS

| Docket No. | Title Motion |
|:---:|:---|
| 515 | EMC's Motion to Dismiss Oasis's Complaint for Lack of Standing, filed on November 27, 2012 |
| 518 | Carbonite's Motion to Dismiss Oasis's Complaint for Lack of Standing and Lack of Standing and Subject Matter Jurisdiction, filed on November 30, 2012. |

| 520 | Oasis's Motion to Preclude Expert Testimony Long, Ugone, and Menasce, filed on December 3, 2012 |
|-----|---------------------------------------------------------------------------------------------------|
| 524 | EMC's Motion to Preclude Expert Testimony of Polish, filed on December 6, 2012. |
| 525 | Oasis's Motion for Summary Judgment, filed on December 7, 2012 |
| 526 | EMC's Motion for Summary Judgment, filed on December 7, 2012 |
| 529 | Defendants' Motion for Summary Judgment of No Divided Infringement, filed on December 7, 2012 |
| 530 | Carbonite's Motion for Summary Judgment, filed on December 7, 2012 |
| 539 | Defendants' Motion to Exclude Report and Testimony of Nawrocki, filed on December 11, 2012 |
| 560 | Defendants' Motion to Preclude Testimony of Carmichael, filed on January 2, 2013 |
| 595 | Defendants' Motion for Summary Judgment on RICO Counterclaims, filed on January 29, 2013 |
| 601 | EMC's Motion to Require Document Production and In Camera Inspection of Nixon Vanderhye Documents, filed on February 1, 2013 |

## XI.    PROBABLE LENGTH OF TRIAL

Oasis estimates the probable length of trial will be 5 days. Oasis requests 13 hours per side for direct, cross, and rebuttal examination. Oasis further requests 30 minutes per side for voir dire, 45 minutes per side for an opening statement, and 1 hour per side for closing arguments.

Counterclaimants estimate that the probable length of the inventorship trial is at least six days. Defendants object to any limitations on opening statements, closing arguments, or examination of witnesses along the lines proposed by Oasis. In particular, to the extent Oasis proposes to limit each side (rather than each party) to 13 hours of examination, such limitations are unreasonable and prejudicial to Defendants, who must (a) share trial time, (b) have the

burden of proof on the inventorship claims, and (c) have identified far more witnesses to call than Oasis has.  Oasis's proposed limitations are designed to impede Defendants' case and prejudice each of the Defendant's ability to be heard.

## XII.   CERTIFICATIONS

The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

1.      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders;

2.      The parties have complied with discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders;

3.      Except as otherwise agreed or ordered, counsel for each party will provide the following certification when their respective exhibit lists are filed.  Each exhibit in the List of Exhibits (excluding demonstratives):

      a)      is in existence;

      b)      will be numbered; and

      c)      will be disclosed and shown to opposing counsel.


**SIGNED this 13th day of March, 2013.**


_AMOS L. MAZZANT_
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

Dated:  February 6, 2013

Respectfully submitted,

By: */s/ Tamir Packin*
John M. Desmarais *(admitted pro hac vice)*
jdesmarais@desmaraisllp.com
Alan S. Kellman *(admitted pro hac vice)*
akellman@desmaraisllp.com
Tamir Packin *(admitted pro hac vice)*
tpackin@desmaraisllp.com
Eugene Chiu *(admitted pro hac vice)*
echiu@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)

*Lead Counsel for Plaintiff*
*OASIS RESEARCH, LLC*


James C. Tidwell
Texas State Bar No. 20020100
jct@wtmlaw.net
WOLFE, TIDWELL & MCCOY, LLP
320 North Travis Street, Suite 205
Sherman, Texas 75090
(903) 868-1933 (Telephone)
(903) 892-2397 (Facsimile)

*Local Counsel for Plaintiff*
*OASIS RESEARCH, LLC*

Dated: February 6, 2013

Respectfully Submitted,

*/s/ Chris R. Ottenweller*

Chris R. Ottenweller
California Bar No. 73649
cottenweller@orrick.com
I. Neel Chatterjee
California Bar No. 173985
nchatterjee@orrick.com
Bas de Blank
California Bar No. 191487
basdeblank@orrick.com
Jacob A. Snow
California Bar No. 270988
jsnow@orrick.com
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

Eric H. Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

Attorneys for Defendants
EMC Corporation and Decho Corporation

Dated: February 6, 2013            Respectfully Submitted,

/s/ Kevin Littman
Matthew Lowrie
mlowrie@foley.com
Kevin M. Littman
klittman@foley.com
FOLEY & LARDNER LLP
111 Huntington Ave
Boston, MA 02199
Telephone: 617-342-4000
Fax: 617-342-4001

Andy Tindel
atindel@andytindel.com
PROVOST UMPHREY LAW FIRM, L.L.P.
112 East Line Street, Suite 304
Tyler, TX 75702
Telephone: 903-596-0900
Fax: 903-596-0909

ATTORNEYS FOR DEFENDANT CARBONITE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) . Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

*/s/ Tamir Packin*
Tamir Packin