**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| OASIS RESEARCH, LLC, | Civil Action No. 4:10cv435-ALM |
| | Consolidated with: |
| *Plaintiff,* | Civil Action No. 4:10cv525-ALM |
| | Civil Action No. 4:10cv526-ALM |
| vs. | |
| | **JURY TRIAL DEMANDED** |
| ADRIVE LLC, et al., | |
| | |
| *Defendants.* | |

**OASIS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)
AND ALTERNATIVE REQUEST FOR A NEW TRIAL UNDER RULE 59(a)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................ 2

BACKGROUND .................................................................................................................... 5

I.     History Of The Patents-In-Suit And Their Inventor, Chris Crawford. ............................ 5

II.    Crawford Briefly Engaged In Business Discussions With Atwood, Byrd, And Campos Regarding His Ideas. ....................................................................................... 6

III.   Events In Litigation ......................................................................................................... 8

ARGUMENT ....................................................................................................................... 10

I.     JMOL That The Crawford Patents Are Not Invalid For Failure To Name Jack Byrd As A Co-Inventor Is Appropriate. .......................................................................... 10

     A.    There Is No Testimony From Jack Byrd Or Documents Written By Jack Byrd Regarding His Conception Of Any Contributions To Crawford's Inventions. ......................................................................................................... 10

     B.    The Oral Testimony From Don Atwood, Chuk Campos, Teri Todd, And Donald Doss Is Insufficient Evidence As A Matter Of Law To Establish Jack Byrd's Co-Inventorship. ................................................................. 11

     C.    Jack Byrd's Alleged "Idea" For Online Backup For PCs Is Insufficient To Establish His Co-Inventorship ................................................................... 14

     D.    There Is No Documentary Evidence To Corroborate Byrd's Co-Inventorship .......................................................................................... 18

          1.    No Documentary Evidence Exists Showing That Byrd Conceived An Idea For Online Backup Before Talking To Crawford. ..................... 18

          2.    The May 23, 1992 Proposal Is Insufficient As A Matter Of Law To Prove Byrd's Co-Inventorship. ............................................................... 20

     E.    The Evidence Demonstrates That Byrd Did Not Communicate Any Conception Of Online Backup To Crawford Before Crawford's Conception Of Online Backup In The March 31, 1992 Proposal. ....................... 23

     F.    Given That The Jury Discredited Atwood's And Campos' Testimony, No Reasonable Jury Could Have Found Byrd To Be A Co-Inventor ........................ 25

II.    The Jury's Inconsistent Verdict Warrants A New Trial ................................................. 26

CONCLUSION...................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bosies v. Benedict*,
 27 F.3d 539 (Fed. Cir. 1994)................................................................. 11, 14, 22

*Caterpillar Inc. v. Sturman Indus., Inc.+*,
 387 F.3d 1358 (Fed. Cir. 2004)................................................................. 3, 12

*Coleman v. Dines*,
 754 F.2d 353 (Fed. Cir. 1985)................................................................. passim

*Eli Lilly and Co. v. Aradigm Corp.*,
 376 F.3d 1352 (Fed. Cir. 2004)................................................................. 23

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456 (Fed. Cir. 1998)................................................................. 3

*Ford v. Cimarron Ins. Co., Inc.*,
 230 F.3d 828 (5th Cir. 2000) ................................................................. 2

*Garrett Corp. v. U. S.*,
 422 F.2d 874 (Ct. Cl. 1970) ................................................................. 4, 14, 20

*Hess v. Advanced Cardiovascular Sys., Inc.*,
 106 F.3d 976 (Fed. Cir. 1997)................................................................. 3, 4, 10

*Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*,
 322 F.3d 1335 (Fed. Cir. 2003)................................................................. 4, 11

*Medichem, S.A. v. Rolabo, S.L.*,
 437 F.3d 1157 (Fed. Cir. 2006)................................................................. 3, 25

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.*,
 690 F.3d 1354 (Fed. Cir. 2012)................................................................. 25

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*,
 729 F.2d 1530 (5th Cir. 1984) ................................................................. 2, 28

*Oney v. Ratliff*,
 182 F.3d 893 (Fed. Cir. 1999)................................................................. 12

*Pannu v. Iolab Corp.*,
 155 F.3d 1344 (Fed. Cir. 1998)................................................................. 3, 5, 16, 21

*Price v. Symsek*,
 988 F.2d 1187 (Fed.Cir.1993)................................................................. 12

*Smith v. Trans World Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) ............................................................ 2

*Tavory v. NTP, Inc.*,
   297 F. App'x 976 (Fed. Cir. 2008) ........................................... passim

*Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*,
   308 F.3d 1167 (Fed. Cir. 2002)..................................................... 3, 11

*Vanderbilt Univ. v. ICOS Corp.*,
   601 F.3d 1297 (Fed. Cir. 2010)...................................................... 3, 4

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*,
   143 U.S. 275 (1892)......................................................................... 25

*Weaver v. Houchin*,
   467 F. App'x 878 (Fed. Cir. 2012) .............................................. 3, 13

*Whitehead v. Food Max of Miss., Inc.*,
   163 F.3d 265 (5th Cir. 1984) ............................................................ 2

*z4 Techs., Inc. v. Microsoft Corp.*,
   No. 6:06-CV-142, 2006 WL 2401099 (E.D. Tex. Aug. 18, 2006) ...................... 4, 10, 23

## Regulations

37 C.F.R. § 1.105 ........................................................................... 21

## INTRODUCTION

Plaintiff Oasis moves for Judgment As Matter Of Law ("JMOL") that Jack Byrd is not a co-inventor of the patents-in-suit,[1] and that the patents-in-suit are therefore not invalid under 35 U.S.C. § 102(f).  Defendants have not met *their* burden to prove that Jack Byrd is a co-inventor of Crawford's patents, much less by clear and convincing evidence.  As an initial matter, there has been no testimony from Byrd himself or written documents from Byrd produced in this litigation to prove the critical inquiry for co-inventorship—conception, which is the formation in *Byrd's mind* of a *definite and permanent idea* of the complete and operative invention.  No documents corroborate any inventive activity by Mr. Byrd, and Defendants have not provided competent corroborating testimony.  Indeed, the testimony of Byrd's close colleague, Don Atwood, demonstrates that Byrd *did not* conceive the idea for online backup—and any testimony of joint invention by Byrd, Atwood, and their third colleague, Chuk Campos was rejected by the jury, which found that neither Atwood nor Campos are co-inventors of the patents-in-suit.  Finally, Defendants have not shown by clear and convincing evidence that Crawford communicated with Byrd regarding online backup before Crawford's own March 31, 1992 proposal—which itself discloses the idea of online backup.  Accordingly, the Court should grant Oasis' motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).

Alternatively, Oasis requests a new trial.  The jury's verdict finding Jack Byrd a co-inventor of the patents-in-suit even after rejecting Atwood's and Campos' testimony regarding their joint collaborations reflects confusion.  The evidence shows Byrd—who was the only common link between the other individuals in the group—only serving the role of recruiting Atwood, Campos, and Crawford to pursue the possibility of doing a business for online backup,

---

[1] U.S. Patent Nos. 5,771,354; 5,901,228; 6,411,943; 7,080,051.

using Crawford's inventions.  As explained, testimony from Atwood proves that Byrd made no inventive contributions to any alleged original ideas for online backup when Atwood and Byrd were in Colorado.  Accordingly, even assuming the mere idea for online backup for PCs without more was inventive—and it is not—any purported communications from Byrd to the other individuals regarding an idea for online backup does not make Byrd a co-inventor of the Crawford patents.  This Court should grant in the alternative Oasis' request for a new trial under Fed. R. Civ. P. 59(a).

## LEGAL STANDARD

"A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 830 (5th Cir. 2000).  In the Fifth Circuit, "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Id.*

"The court may, on motion, grant a new trial on all or some of the issues[.]" Fed. R. Civ. P. 59(a)(1).  The trial court's power to grant a new trial has "long been regarded as an integral part of trial by jury." *See Smith v. Trans World Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Id.*  In deciding to grant a new trial, the Court "need not take the view of the evidence most favorable to the verdict winner . . . but may weigh the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1984). "A trial judge may order a new trial if he suspects that the jury verdict reflects confusion." *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1538 (5th Cir. 1984).

When the United States Patent and Trademark Office issues a patent, that issuance creates a presumption that the named inventor is the true and only inventor.  *See Hess v.*

*Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).   To rebut this presumption, the burden of proof on an alleged co-inventor is a "heavy one" to prove joint inventorship by "clear and convincing" evidence, particularly where the patent has been outstanding for a considerable time.  *Hess*, 106 F.3d at 980 (emphasis added); *accord Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1305 (Fed. Cir. 2010).   "When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor."  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998).

"[A]n alleged co-inventor must supply evidence to corroborate his or her testimony." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (emphasis added)).   As a matter of law, an alleged co-inventor's testimony standing alone cannot rise to the level of clear and convincing proof of inventorship.  *See Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) ("Uncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of a patent."); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998); *see Weaver v. Houchin*, 467 F. App'x 878, 880 (Fed. Cir. 2012) ("[W]ithout corroboration, the oral testimony cited by [an alleged co-inventor] is simply insufficient as a matter of law to meet the clear and convincing standard of proof required to establish co-inventorship.").   "The requirement of independent knowledge remains key to the corroboration inquiry."  *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006).   "One consequence of the independence requirement is that testimony of one co-inventor cannot be used to help corroborate the testimony of another."  *Id.* at 1171.  The Federal Circuit has found "a clear requirement that such oral testimony by interested

parties must be corroborated by documentary testimony." *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003).

To be a co-inventor, one must "conceive[] some important element or some important claim that is claimed in the patent." *See Hess v. Advanced Cardiovascular Sys., Inc.,* 106 F.3d 976, 980 (Fed. Cir. 1997). Conception, in turn, is "the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice." *z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, *14 (E.D. Tex. Aug. 18, 2006). Merely having a general idea is insufficient for showing conception—"each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice." *Vanderbilt*, 601 F.3d at 1303 (internal citation and quotation marks omitted); see also *Garrett Corp. v. U. S.*, 422 F.2d 874, 881 (Ct. Cl. 1970) ("One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor."). "Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'completed thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985). "Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "This evidence can be in the form of contemporaneous documents or the oral testimony of an independent witness," but in either case it must disclose or describe the invention in such detail to "enable one skilled in the art to make the invention." *Tavory v. NTP, Inc.*, 297 F. App'x 976, 979 (Fed. Cir. 2008) .

Under Federal Circuit law, an alleged co-inventor must show competent evidence that conception of his purported contribution "was more than just the exercise of ordinary skill" in the art, in order to establish co-inventorship under § 102(f).  *Tavory*, 297 F. App'x at 979-80; *Pannu*, 155 F.3d at 1351 (requiring alleged co- inventors to "do more than merely explain to the real inventors well-known concepts and/or the current state of the art").  Where the alleged co-inventor "has not established that [the contribution] ***was not in the prior art***," he has failed to establish co-inventorship.  *Tavory*, 297 F. App'x at 980.

## BACKGROUND

### I.     History Of The Patents-In-Suit And Their Inventor, Chris Crawford.

Chris Crawford obtained a trade school degree in computer programming in 1980.  Ex. A, Trial Tr. at 1287:13-21.  While in trade school, Mr. Crawford worked on programming with mainframe systems.  *Id.* at 1287:24-1288:11.  Soon after, he began his career in the computer industry, holding positions at a variety of companies, including a software development firm, a few banks, and his own consulting service.  *Id.* at 1289:18-1290:21; 1291:9-14; 1292:15-1293:10.  In his employment, he continued doing programming, design, and software analysis work on mainframe systems and "minicomputers," or midrange computers.  *Id.* at 1290:1-21; 1293:3-10.  Immersed in the latest computer technology of his day, Crawford first thought of ideas for enhancing the online service capabilities of customer computers in the 1980s.  *Id.* at 1293:20-1294:17.  Crawford sought to provide advanced, sophisticated computer processing capabilities that would allow users to enhance their personal computers.  *Id.*  In the early 1990s, Crawford accepted a position with a company known as Affiliated Computer Services ("ACS") in California.  *Id.* at 1294:22-24.  On March 31, 1992, he submitted a document titled "ACS Online Member Services" to an idea box at ACS, describing the ideas, including online backup,

which eventually became the subject of the patents-in-suit.  *Id.* at 1296:6-1297:21; Ex. B, PX-045.

## II.   Crawford Briefly Engaged In Business Discussions With Atwood, Byrd, And Campos Regarding His Ideas.

Crawford met Chuk Campos, Jack Byrd, and Don Atwood while working at ACS.  *Id.* at 1305:14-1306:11.  Soon after submitting the March 31, 1992 proposal to the idea box, Byrd, a senior-level manager at ACS, became aware of Crawford's ideas for online services.  *Id.* at 1304:12-1305:13.  Crawford presented his ideas to Byrd.  *Id.* at 1306:12-17.  Byrd liked Crawford's idea for doing online backup of personal computers and was interested in pursuing a business to that end.  *Id.* at 1306:18-1307:24.  In response to Byrd's interest in this one feature of Crawford's ideas, Crawford drafted a proposal on May 23, 1992.  *Id.* at 1311:16-25; Ex. AB, DTX-011.  During the eventual prosecution of the patents-in-suit, Crawford candidly disclosed this May 1992 document—including the reference to Byrd—to the Patent Office to prove his prior conception over a reference cited by the Examiner.  *Id.* at 1321:13-16, 1321:17-20; Ex. AG, PX011 at PX011-1475–PX011-1483.

The four of them—Crawford, Byrd, Campos, and Atwood—then briefly formed a group to discuss pursuing a business based on online backup, for which Crawford drafted a few documents.  Ex. A, Trial Tr. at 1326:4-11, 1326:18-1328:2, 1328:25-1329:19; Ex. C, PX-031; Ex. D, PX-034.  Not only did Crawford put together the technical details for his inventions, he also was solely responsible for coming up with a name for a business related to his ideas—"PC OASIS"—which the group adopted.  Ex. A, Trial Tr. at 1310:22-1311:5, 1313:17-1316:21, 1316:24-1317:19; Ex. E, PX-522 at PX522-0001.  But while Crawford was interested in pursuing the commercialization of online backup, he did not want to give up on his ideas of providing other online services for personal computers.  Ex. A, Trial Tr. at 1327:10-1328:17; Ex.

F, PX-519; Ex. G, PX-518; Ex. H, PX-521; Ex. E, PX-522.   Because the others were not interested in exploring his ideas that went beyond online backup, Crawford ultimately decided not to go into business with them.   Instead, he resigned from ACS to pursue patents on all of his ideas, moving back to Washington D.C. where he lived before joining ACS.   *Id.* at 1357:3-1357:25; Ex. I, PX-086.   Before leaving, Mr. Crawford submitted a resignation letter directly to Campos on July 29, 2012, stating that he was leaving to pursue his idea for a new technology as referenced in his earlier memo to Bob Lynch—a general manager at ACS to whom Byrd reported—which indicated Crawford's intention to pursue patent rights in his ideas.   Ex. A, Trial Tr. at 1351:7-1355:5; 1355:8-1356:23; Ex. J, PX-043; Ex. K, PX-044.   Predictably, after Crawford left with his ideas, Atwood, Byrd, and Campos never formed the contemplated business, and in fact never pursued—through patents, commercialization, or otherwise—online backup or any other inventions disclosed in Crawford's patents-in-suit.   Ex. A, Trial Tr. at 494:1-24; 828:19-832:11.

Beginning in 1992, Crawford spent considerable time and resources working with prosecution counsel in Washington, D.C. to prepare his patent application and prosecute his patents.   The application itself was over a hundred pages, with 70 pages of drawings and 71 claims, on which Mr. Crawford worked diligently. Ex. L, PX-532.   Crawford filed his application on November 4, 1993.   *Id.*   After a lengthy prosecution, during which Crawford struggled to pay filing fees, legal fees, and fees for formatting drawings, the application eventually issued as six patents relating to online services, including remote backup, additional processing power, and additional software for personal computers.   Ex. A, Trial Tr. at 1379:16-1381:3; 1381:13-1383:11; 1388:18-1389:25; Ex. M, PX-001; Ex. N, PX-002; Ex. O, PX-003; Ex. P, PX-004; Ex. Q, PX-005; Ex. R, PX-006; Ex. S, PX-533; Ex. T, PX-534.

Starting in 2001, Crawford pursued efforts to enforce his patents, which he considered very valuable.  Ex. A, Trial Tr. at 1390:11-1391:22.  In 2007, Crawford sold his patents to Kwon Holdings Group, a subsidiary of Intellectual Ventures.  Ex. A, Trial Tr. at 1392:5-1393:22; Ex. U, PX-208.

## III.   Events In Litigation

In December 2011, counsel for EMC cold-called Chuk Campos, informing him of this litigation and that Christopher Crawford had applied for patents relating to online backup.  Ex. A, Trial Tr. at 443:3-7; Ex. V, PX-042, at 42-0001.  Campos then contacted Don Atwood in February 2012 to discuss EMC's calls.  Far from showing any belief in his alleged co-inventor status, however, Atwood instructed Campos to "keep [him] out of it" when learning of the litigation.  Ex. A, Trial Tr. at 834:19-25.  In addition, in an email exchange between Campos and Atwood on April 15, 2012, rather than claiming that they were inventors, Campos' reaction to learning about the patents was that no patent should have issued.  Ex. W, PX 41 ("if money were not an issue for me now, the right thing would be to focus our efforts on getting the patent approvals taken away").  Mr. Atwood agreed.  *Id.* ("I agree with you, no patent should have issued, however it was, so the game becomes who are we more valuable to in this charade.").

In the following months, counsel for EMC repeatedly badgered Campos—indeed, "threatened" him—to become involved in the litigation.  *See, e.g.*, Ex. A, Trial Tr. at 530:4, 529:14-19, 530:5-10, 531:25-532:5; *see also* Ex. X, PX 514.  In subsequent calls, Defendants explained the testimony that they sought.  For example, in April 2012, without being asked to do so, lead counsel for EMC described to Campos the legal standards for demonstrating co-inventorship.  *See* Ex. V, PX 42, at 42-0007.  During that conversation, Campos noted the "order of things" was that Defendants needed to be "satisfied that I have something worthwhile" and a "proposal made to get me early compensation" with an "agreement to cooperate."  Ex. V, PX 42,

at 42-0008.  On March 28, 2012, he also made note of an "arrangement" where the Defense

Group would "pay soon."  *Id.* at 42-0009.  Campos conveyed his understanding to Atwood that

working with the Defendants would be an "opportunity [for them] to make a few bucks."  *See*

Ex. A, Trial Tr. at 835:1-8.

Defendants subpoenaed Atwood, Campos, and Todd to testify in this litigation during

June and July of 2012.  A week before the Atwood and Campos depositions, lead counsel for

EMC led a joint call between the Defense Group and both Mr. Atwood and Mr. Campos during

which they reviewed in advance the documents they planned to use and the testimony they

planned to solicit during the depositions. *See* Ex. A, Trial Tr. at 649:5-13, 649:19-651:24, 652:9-

653:7, 832:25-834:13.  This rehearsal session gave Campos and Atwood a "preview" of each

other's testimony.  Ex. A, Trial Tr. at 653:2-7.

Then, in the very first of those depositions, Atwood admitted that the Defense Group had

offered to pay Atwood, Campos, and Todd $75,000 for their testimony, only 45 days before their

depositions.  Ex. A, Trial Tr. at 836:25-837:8, 837:13-16.  Atwood repeatedly testified under

oath at the deposition that the money was in exchange "for testimony." *Id.* at 835:18-21; 836:6-

8; 836:20-23; 838:10-13.  The three individuals declined Defendants' offer because it was too

low and did not seem reasonable for what Defendants were expecting. *See* Ex. A, Trial Tr. at

837:20-25.

After having their initial offer of $75,000 dollars rejected, Defendants finally struck a

deal with Campos, Atwood, and Todd.  In a written agreement, dated August 30, 2012,

Defendants agreed to pay these witnesses $200,000 upfront and an additional $140,000 once this

litigation is over, plus expenses and legal fees. *See* Ex. Y, PX 517; Ex. A, Trial Tr. at 561:24-

565:4.  Mr. Campos confirmed that the $200,000 has already been paid. *Id.* at 562:22-563:1.  At

trial Mr. Atwood confirmed that he was "required by this agreement, for the money that [he was] paid, to come here and testify that [he is] a co-inventor." *Id.* at 853:13-16.  Mr. Campos similarly confirmed that pursuant to the agreement Mr. Campos is required to testify that he is a co-inventor, Mr. Atwood is required to testify that he is a co-inventor, and Ms. Todd is required to testify Mr. Byrd is a co-inventor.  *Id.* at 565:6-18; *see also id.* at 560:21-24.

During trial, Mr. Campos explained that he entered the agreement with Defendants because he was "looking for money" and that Atwood, Campos and Todd "were doing what was best for us and our families."  *Id.* at 554:11-13; 554:20-21.  And while Atwood and Campos each provided extensive testimony detailing their own contributions to the elements and claims of Crawford's patents—in addition to pointing to documents drafted by Crawford and claiming that Crawford was merely "memorializing" the groups' discussions—the jury found that neither of them were co-inventors.  *Id.* at 361:21-362:7; 366:8-388:18; 668:5-19; 763:20-800:13.

## ARGUMENT

I.   **JMOL That The Crawford Patents Are Not Invalid For Failure To Name Jack Byrd As A Co-Inventor Is Appropriate.**

A.   **There Is No Testimony From Jack Byrd Or Documents Written By Jack Byrd Regarding His Conception Of Any Contributions To Crawford's Inventions.**

Without testimony from or documents written by Jack Byrd showing what, if anything, his contributions to Crawford's inventions were, as a matter of law Defendants cannot satisfy their burden of proving by clear and convincing evidence that Byrd is a co-inventor of Crawford's patents.  That is because the Defendants cannot prove the required conception by Byrd.  *Hess*, 106 F.3d at 980.  Conception is "the formation in the ***mind of the inventor*** of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice."  *z4 Techs.*, 2006 WL 2401099, at *14.  "Conception is the touchstone of

inventorship, the completion of the mental part of invention." *Burroughs*, 40 F.3d at 1227-28. "The conception analysis necessarily turns on ***the inventor's ability to describe his invention with particularity***." *Id.* at 1228. "Until he can do so, he cannot prove possession of the complete mental picture of the invention." *Id.* "These rules ensure that patent rights attach only when an idea is so far developed that ***the inventor can point to a definite, particular invention***." *Id.* The Federal Circuit has found that where the alleged co-inventor provided no testimony as to conception, he failed as a matter of law to prove his co-inventorship. *See Bosies v. Benedict*, 27 F.3d 539, 542-43 (Fed. Cir. 1994) (recognizing that alleged co-inventor who did not testify did not provide evidence of his understanding to demonstrate conception). And testimony of a non-inventor is "not probative of what the inventors conceived." *Id.*

Here, where there is no testimony from Jack Byrd himself, and no written documentation by Jack Byrd, as a matter of law the Defendants cannot prove the formation in ***Byrd's mind*** of a definite and permanent idea of the complete and operative invention claimed in Crawford's patents.

**B.    The Oral Testimony From Don Atwood, Chuk Campos, Teri Todd, And Donald Doss Is Insufficient Evidence As A Matter Of Law To Establish Jack Byrd's Co-Inventorship.**

During trial, the jury heard testimony from Don Atwood, Teri Todd, Chuk Campos, and Don Atwood. As a matter of law, this oral testimony is insufficient to establish that Jack Byrd is a co-inventor of Mr. Crawford's patents.

As a preliminary matter, the Federal Circuit has established "a clear requirement that [] oral testimony by interested parties must be corroborated by documentary testimony" to establish invalidity of a patent. *Lacks Industries, Inc.*, 322 F.3d at 1350; *see id.* ("Starting with the Supreme Court's decision in *The Barbed Wire Patent Case* [], and ending with our recent decision in *Union Carbide v. Shell Oil Co.* [], courts have consistently required documentary

corroboration of oral testimony by interested parties presented to invalidate a patent").  Atwood, Campos, and Todd have financial interests in this litigation and an interest in seeing themselves and Jack Byrd added to the patents-in-suit.  Ex. Y, PX517; Ex. A, Trial Tr. at 526:6-8, 15-18, 887:9-13.  Doss testified that Campos is one of his best friends and that Doss' family values their relationship with the Campos family.   Ex. A, Trial Tr. at 990:8-18, 1014:4-1015:10. Accordingly, the oral testimony of Atwood, Todd, Campos, and Doss as interested parties is insufficient by itself to invalidate Mr. Crawford's patents.  *Oney v. Ratliff*, 182 F.3d 893, 896-97 (Fed. Cir. 1999) ("The uncorroborated oral testimony of [the alleged prior inventor,] and his close associates would be insufficient to prove invalidity.")

Furthermore, the testimony of one alleged co-inventor cannot be used to help corroborate the testimony of another.  *Medichem*, 437 F.3d at 1171.  For this reason as well, the testimony of Atwood, Campos, and Todd[2] cannot be used to corroborate each other.

In addition, according to the Federal Circuit, Mr. Doss' testimony cannot corroborate Jack Byrd's inventorship.  In a recent decision with similar facts, the Federal Circuit found that the testimony, of a witness who: 1) the alleged co-inventor did not talk to about his contribution to the invention; 2) "did not [] work on the invention"; and 3) was not present for any meetings

---

[2] Ms. Todd is testifying on behalf of the now-deceased Jack Byrd.  Ex. A, Trial Tr. at 894:7-8 ("I'm here to speak for Jack because he's not here to speak for himself"), 894:11-12.  Ms. Todd possesses all of Mr. Byrd's accompanying interests (Ex. Y, PX517; Ex. A, Trial Tr. at 893:8-24) and for all intents and purposes of testimony corroboration, must be treated as an alleged co-inventor.  *See Price v. Symsek*, 988 F.2d 1187, 1194 (Fed.Cir.1993) ("Throughout the history of the determination of patent rights, oral testimony by an alleged inventor ... is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence.").  In the alternative, if Ms. Todd is not testifying on Mr. Byrd's behalf as an alleged co-inventor, then there is no testimony of Mr. Byrd's co-inventorship to even corroborate, and JMOL that Mr. Byrd is not a co-inventor of the patents-in-suit should be granted.  *See Caterpillar Inc.*, 387 F.3d at 1377 ("[A]n alleged co-inventor must supply evidence to corroborate **his or her testimony**.").

involving conception, was insufficient as a matter of law to establish co-inventorship. *Weaver v. Houchin*, 467 Fed. App'x. 878, 881 (Fed. Cir. 2012). Here, Jack Byrd never talked to Doss about his contribution to the invention. Ex. A, Trial Tr. at 1030:2-4, 9-12 ("Q. . . . You don't remember any conversations with Mr. Byrd regarding remote backup, correct? A. True."); 1031:2-19. Indeed, Doss retained at best a confused memory of Jack Byrd. *Id.* at 992:4-10, 20-23; 1029:7-23. In addition, there is no evidence that Doss did any work on the invention or was present for any meetings involving conception. *Id.* at 1028:24-1029:3 (describing the idea for remote backup as only being "presented" to Doss as coming from Byrd); 1031:16-19 ("Q. . . . But none of [Byrd, Atwood, and Crawford] ever told you about any ideas that they had regarding remote backup, right? A. True."). Notably, the Court found that "[w]ithout personal knowledge of [the alleged co-inventor's] contribution, [the witness]'s testimony is insufficient corroboration to prove by clear and convincing evidence that [the alleged co-inventor] was a co-inventor." *Weaver*, 467 Fed. App'x. at 881.

And finally, the testimony of Ms. Todd and Mr. Doss fails to corroborate that Mr. Byrd "disclosed [to them] his completed thought expressed in such clear terms as to enable those skilled in the art to make the invention." *Coleman*, 754 F.2d at 359; *Burroughs*, 40 F.3d at 1228. Mr. Byrd never disclosed any thoughts regarding remote backup to Mr. Doss. Ex. A, Trial Tr. at 1030:2-4, 9-12 ("Q. . . . You don't remember any conversations with Mr. Byrd regarding remote backup, correct? A. True."); 1031:2-19. And Mr. Byrd never disclosed to Ms. Todd a completed thought regarding online backup expressed so clearly as to enable one skilled in the art to make the invention (*Id.* at 881:23-882:3, 888:9-17)—indeed, Ms. Todd is not one skilled in the art. *Id.* at 889:2-4. Accordingly, for this reason as well, the testimony of Ms. Todd and Mr. Doss cannot corroborate Jack Byrd's co-inventorship.

13

### C.     Jack Byrd's Alleged "Idea" For Online Backup For PCs Is Insufficient To Establish His Co-Inventorship

Teri Todd, providing testimony on behalf of Jack Byrd,[3] testified that Mr. Byrd thought of an idea for online backup of PCs.  Ex. A, Trial Tr. at 881:7-12.  Todd remembers no other details, other than this "idea."  *Id.* at 882:2-3 ("I honestly don't remember the more specific details.").  However, mere ideas are insufficient to prove conception.  *Burroughs*, 40 F.3d at 1228 ("An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue."); *Garrett Corp.*, 422 F.2d at 881 ("One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor.").

Mr. Atwood and Mr. Campos testified that Atwood and Byrd performed experiments pertaining to online backup in 1990 and 1991 in Colorado.  But Atwood, not Campos, is the only witness in this litigation with any first-hand knowledge of that purported experimentation—and Atwood's testimony gave no credit to Byrd for any inventive contributions or testing of ideas:

> A. . . . We were using a software package called "Carbon Copy."  *I was a little bit better at working at the PCs than Jack was, and sometimes he would have a problem manipulating a file or finding it or doing whatever.*  Carbon Copy gave us the ability to dial between these two PCs, hook them up, and the keyboard and monitor from one end could pretend to be the keyboard and monitor of the other computer.  That way *I could go onto Jack's computer and look for files or try to help him solve the problem or whatever and I didn't have to drive to his house to do that.*

---

[3] Oasis maintains that an alleged co-inventor who provides no testimony concerning his alleged contributions to a patent cannot attain co-inventorship status under Federal Circuit law, as he cannot prove the act of conception in his mind.  *See, e.g.*, *Bosies*, 27 F.3d at 543.  Further, there is no testimony to corroborate.  *See Caterpillar Inc.*, 387 F.3d at 1377 ("[A]n alleged co-inventor must supply evidence to corroborate *his or her testimony*.").  At trial, there was no testimony from Jack Byrd himself, and accordingly no opportunity for Oasis to cross-examine the witness or for a jury to determine his credibility.
Accordingly, as a preliminary matter, Oasis contends that there is no testimony of Byrd's inventive contributions in this case, but Oasis will address the sufficiency of Mr. Byrd's inventive contribution based on the testimony of Ms. Todd, who is testifying on his behalf.

Ex. A, Trial Tr. at 717:11-24 (emphasis added).

> A. It worked.
> Q. What do you mean?
> A. I mean *I was actually able to – **I did the testing, or most of the testing.  I could take files** from my computer and transfer them to his computer and vice versa.  So, **I could technically create** a backup file on my computer that would have been written to a floppy diskette or one of the smaller diskettes and send it to his end; and I didn't have to go through the physical transport part of it.*

*Id.* at 718:19-719:3; *see also id.* at 722:23-24 ("**I began testing** how much data could we move."); 723:6-8 ("**I began to te**st what it would take – or how long it would take to transfer larger files or more files."); 723:17-18; 723:25-11 ("So, **my thought** was, well, we could have a series of PCs residing in a protected site . . . . Once **I began to calculate** how long it would take to transmit data"); 767:11-18 (Q.  So, whose idea was this?  Who conceived of this part?  A. **I guess it was mine.  I was doing the testing**.).   Even after Atwood and Byrd relocated from Colorado to San Francisco, there is no evidence that Byrd ever developed the idea or showed any initiative with respect to online backup—in fact according to Atwood's testimony, Atwood alone was responsible for any purported investigations into online backup and any considerations:

> Q. Was there a point where you and Mr. Byrd resumed your discussions about an online computer backup service?
> A. Yes.  In looking for solutions for Centex's problem with their minicomputer, **I had begun to look around** at was there some other type of computer that would be more powerful, more reliable that we could substitute for that minicomputer.
> **In that investigation I became aware** of some newer offerings from IBM of what I would call a "midrange computer" that was more – easier to communicate with. . . . **I looked at it as a solution** for Centex to start off with, but **it also occurred to me** that instead of a roomful of PCs as a place to store data that had been remotely backed up from PCs, the AS/400 might be a candidate to do that.  So, **I talked to Jack** about the idea again.  **I said**, "Remember, we were working on such-and-such and one of the big problems was the PC?  Well, possibly one of – you know, a small AS/400 could substitute **for that particular problem**."

*Id.* at 730:17-731:13 (emphasis added).

In fact, not once does Atwood respond to any non-leading, conclusory question by Defense counsel by describing a contribution from Byrd rising to the level of conception.  *See Coleman*, 754 F.2d at 359 ("Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'completed thought expressed in such clear terms as to enable those skilled in the art' to make the invention.").  Thus, even according to the testimony of Mr. Atwood, Mr. Byrd neither developed nor attempted to investigate further the means to accomplish any idea of online remote backup.[4]  This level of effort does not rise to the level of conception to establish co-inventorship.

Moreover, any alleged activities by Atwood and Byrd to transfer files from one PC to another was not inventive.  Mr. Atwood testified that he purportedly used a commercial software product called *Carbon Copy*—and he agreed that he did not create, invent, make, or use *Carbon Copy* in any way outside the normal operation of the product, as purchased off the shelf.  *Id.* at 816:2-817:23, 818:15-17 ("Q.  Okay.  So, *Carbon Copy* is not the invention, right?  A.  No.  Q. And transferring files using *Carbon Copy* from one computer to another isn't the invention is it? A.  No. ").  Indeed, *Carbon Copy* was submitted to the Patent Office during prosecution of the Crawford patents and is listed on the face of the patents.  *Id.* at 818:4-14; 1384:19-1387:1 ("Q. . . . Is [Carbon Copy] something that you disclosed to the Patent Office?  A.  Yes, I did."); PX007-0002.

Regardless of whether Byrd had an idea of online backup for PCs, the idea of online backup for PCs, without more, was already in the prior art and as a matter of law cannot establish Byrd's co-inventorship.  *Tavory*, 297 F. App'x at 980; *Pannu*, 155 F.3d at 1351.  Indeed, during

---

[4] And any testimony by Campos that Byrd conceived the idea of online backup in Colorado is refuted by Atwood's first-hand knowledge testimony that Byrd made no inventive contributions.

prosecution of the Crawford patents, prior art dated in 1989 relating precisely to the idea of

online PC data backup was submitted to the USPTO:

> "Secure Data Network Inc. Introduces Nation's First Online
> PC Data Backup and Retrieval Service," Oct. 31, 1989 (3
> pages).

Ex. Z, PX009 at PX009-0003; *see also* Ex. AA, PX013 at PX013-0224 (showing in the '943 file

history an entry was submitted in an information disclosure citation and examiner initialed the

entry); *Tavory*, 297 F. App'x at 979 (finding that even contribution of "the key to the claimed

invention" fails to prove inventorship where the alleged co-inventor "has not established that the

[contribution] itself was not in the prior art").   Accordingly, even if the evidence did establish

that Byrd had an "idea" for online backup of PCs—and it does not—Byrd is not a co-inventor of

Crawford's patents.

Indeed, Chris Crawford's patents claim much more than just the high-level concept of

online backup.  Crawford's inventions were ***solutions*** for providing commercial online backup

services to remote customer computers, as set forth in the claims.  *See, e.g.*:

> What is claimed is:
> 1. An online computer system providing commercial
> backup services to remote customer computers over the
> Internet by performing the following steps:
> (a) providing at least one remote storage area for use in
>    storing customer backup information;
> (b) establishing a first online Internet session with a
>    customer's computer;

> (c) allowing the customer to sign up for backup services over the first online Internet session, including the step of establishing a customer identifier and associated password for the customer;
>
> (d) establishing a second online Internet session with the customer's computer;
>
> (e) requesting the customer to input the customer identifier and associated password established by step (c);
>
> (f) validating the customer identifier and password requested by step (e);
>
> (g) conditioned at least in part on validating step (f), allowing the customer to access the remote storage area over the second Internet session substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer, including the steps of:
>
>   (1) encrypting backup data provided by the customer's computer,
>
>   (2) transmitting the encrypted backup data to the online backup service provider over the second online Internet session, and
>
>   (3) storing the backup data in the remote storage area provided by the online backup service provider.

Ex. AH, PX007 at PX007-0096.  The USPTO examiner did not grant Crawford his patents based on the high level idea of online backup—rather, it is Crawford's claiming of the particular elements which provided a detailed solution.  *See Burroughs*, 40 F.3d at 1228 ("An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.").

### D.   There Is No Documentary Evidence To Corroborate Byrd's Co-Inventorship

#### 1.   No Documentary Evidence Exists Showing That Byrd Conceived An Idea For Online Backup Before Talking To Crawford.

The earliest document evidencing a conception of online backup in this litigation is Crawford's own March 31, 1992 proposal.  Ex. B, PX-45; Ex. A, Trial Tr. at 468:2-6.  Campos himself testified to that effect.  *Id.* at 464:7-10 ("Q.  The first document that exists in this case regarding online backup is a document dated March 31st, 1992, by Christopher Crawford, correct?  A.  Correct."); *see also id.* at 466:14-16.  The next earliest document evidencing a conception of online backup in this litigation is Crawford's own May 23, 1992 proposal.  Ex.

AB, DTX-011; Ex. A, Trial Tr. at 468:7-9.  Notably, there is no documentary evidence of Jack

Byrd conceiving an idea for online backup before Crawford's March 31, 1992 and May 23, 1992

proposals.  *See Coleman*, 754 F.2d at 359 ("Conception must be proved by corroborating

evidence which shows that the inventor disclosed to others his 'completed thought expressed in

such clear terms as to enable those skilled in the art' to make the invention."); *see, e.g.*, Ex. AB,

DTX-011; Ex. C, PX-31; Ex. AC, PX-32; Ex. AD, PX-33; Ex. D, PX-34; Ex. AE, PX-35; Ex.

AF, PX-37.

For example, Atwood testified that no documentation of his or Byrd's alleged work on an

idea for online backup in 1990 and 1991 in Colorado exists.[5]  Ex. A, Trial Tr. at 814:5-10,

814:12-22, 815:1-5 ("Q.  Now, you have no evidence that you and Mr. Byrd came up with an

idea for online backup in 1990, right, sir?  A.  I have no written documentation that we came up

with that idea in 1990 and 1991."), 815:6-12, 815:13-15 ("Q.  No documents corroborate your

testimony here today, correct, sir?  A.  Correct."), 815:16-22 ("Q.  There is no evidence that

corroborates your testimony that you, Mr. Campos, and Mr. Byrd discussed the idea of online

backup before Mr. Crawford was involved, correct, sir?  A.  Not that I'm aware of.").

Atwood and Campos testified that the three of them had collaborative discussions on an

idea for online backup while Campos and Byrd were at ACS in 1991 and 1992 in San

Francisco—months before meeting Crawford.  Ex. A, Trial Tr. at 349:3-8, 351:19-352:3.  But

like Atwood, Campos testified that no documentary or physical evidence of that work exists:

---

[5] Campos also testified that he has no first-hand knowledge of any work allegedly performed by
Byrd and Atwood in Colorado pertaining to online backup.  Ex. A, Trial Tr. at 454:2-5, 454:10-
455:6, 455:22-456:5.  Neither does he have any written or physical evidence of that work.  *Id.* at
456:16-457:1.

> Q.   Now, from November of 1991 until March of 1992, you claim that you began discussing the concept of an online backup idea with Mr. Byrd and Mr. Atwood; is that right?
>
> A.  Yes.
>
> Q.   . . . I didn't see any notes of any meetings or any work that you did between November, 1991, and March of 1992.  Am I right about that?
>
> A.  That's correct.
>
> Q.  So, there are no notes that exist of any work that you did on online backup between November, 1991, and March of 1992, right?
>
> A.  None that I know of.
>
> Q.  In fact, there are no notes of any work that you did at all online backup before March of 1992; is that right?
>
> A.  Not that I can find.

Ex. A, Trial Tr. at 457:2-20; *see also* 457:21-458:21, 463:3-13, 464:1-6.  Campos' and Atwood's testimony is consistent with the evidence presented at trial—no dated documents relating to online backup exist before Crawford's own March 31, 1992 and May 23, 1992 proposals.

### 2.   The May 23, 1992 Proposal Is Insufficient As A Matter Of Law To Prove Byrd's Co-Inventorship.

#### a.   The Proposal Was Submitted To The Patent Office During Prosecution Of Crawford's Patents.

The sole evidence upon which the jury could have based its verdict finding Byrd a co-inventor of the patents-in-suit is a single sentence from Crawford's May 23, 1992 Proposal.  *See* Ex. AG, PX011 at PX011-1475–PX011-1483.  In relevant part, the first paragraph of that Proposal reads:  "This proposal is the by-product of an earlier one titled 'ACS Online Member Services,' [] Specifically, it is in response to Jack Byrd's idea to provide automated offsite backup services for PC users."  But this reference to "Jack Byrd's idea" is insufficient as a matter of law to prove Byrd's co-inventorship by clear and convincing evidence.  As a preliminary matter, the idea alone is not an invention, nor does it describe the invention as claimed in the Crawford patents.  *See Burroughs*, 40 F.3d at 1228 ("An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, ***not just a general goal or research plan he hopes to pursue***."); *Garrett Corp.*, 422 F.2d at 881 ("One who

***merely suggests an idea*** of a result to be accomplished, ***rather than means of accomplishing it***, is not a joint inventor.").

Furthermore, it is undisputed that Crawford submitted the May 23, 1992 proposal attached to a Rule 131 Declaration to the Patent Office during prosecution of the patents-in-suit. *See* Ex. AG, PX011 at PX011-1475–PX011-1483; *see also* Ex. A, Trial Tr. at 1321:13-16, 1321:17-20 ("Q.  So, what did you do to hide this document from the Patent Office?  A.  I didn't do anything to hide it.  I showed it to the Patent Office.").  And despite having considered the May 23, 1992 proposal, the Patent Office granted the patents-in-suit with Crawford as the sole-inventor.  *See* Ex. AH, PX-007; Ex. AI, PX-008; Ex. Z, PX-009; Ex. AJ, PX-010.

In addition, no evidence exists that the Examiner did not consider the statement in the proposal:  "Specifically, it is in response to Jack Byrd's idea to provide automated offsite backup services for PC users."  Indeed, circumstantial evidence strongly suggests that the examiner would not have ignored the statement given the subject matter nature of the declaration. Notably, the statement is the second sentence in the document, which is attached to a Declaration pertaining to Crawford's conception of the inventions.  *See* Ex. AG, PX011 at PX011-1475 ("I conceived of the subject matter disclosed and claimed in my patent application").

Furthermore, the examiner could have issued a requirement for information under 37 C.F.R. § 1.105 to further examine the statement regarding Byrd in the Mr. Crawford's document. But the prosecution history demonstrates that such a request was never made, indicating that the examiner did not believe that this single sentence raised any question of inventorship by Jack Byrd.  37 C.F.R. § 1.105 (2009).  That is unsurprising given that the patent office examined the prior art—and any "idea" for online backup for PCs purportedly attributed to Byrd does not go beyond well-known prior art concepts.  *Pannu*, 155 F.3d at 1351 (requiring alleged co- inventors

21

to "do more than merely explain to the real inventors well-known concepts and/or the current state of the art"); *Tavory*, 297 F. App'x at 980.  Accordingly, the patent examiner was correct to conclude that Byrd is not a co-inventor.

> **b.** **Non-Inventors' Testimony As To The Meaning Of Incomplete Written Conception Is Insufficient As A Matter Of Law To Prove Co-Inventorship.**

Because the statement regarding Jack Byrd in the May 23, 1992 document is insufficient as a matter of law to establish that Jack Byrd is a co-inventor, Defendants rely on the testimony of Chuk Campos to interpret Mr. Crawford's statement.  But Defendants' attempt to use testimony of non-inventor Chuk Campos to provide his understanding of Crawford's statement in the May 23, 1992 proposal is insufficient as a matter of law to prove Byrd's conception of any online backup ideas.  As a preliminary matter, the statement was written by Crawford, and Crawford testified that Byrd merely suggested for Crawford to pursue Crawford's online backup inventions.  Ex. A, Trial Tr. at 1304:12-1305:8, 1321:21-1322:8.  Indeed, the proposal itself states that it "is the ***by-product*** of an earlier one titled "ACS Online Member Services," authored by Crawford on March 31, 1992.  Ex. AG, PX011 at PX011-1477.  Moreover, the Federal Circuit has found that testimony of a non-inventor concerning incomplete written conception "was not probative of what the inventors conceived." *Bosies*, 27 F.3d at 543.  That is because the non-inventor's testimony "as to what he, the non-inventor, thought the [written statement] meant" cannot satisfy the burden of proof and rebut the presumption in favor of the actual inventor. *Id.*

Defendants' questioning to elicit testimony of Campos' understanding of a statement in the May 23, 1992 Proposal illustrates why a non-inventor's testimony cannot be used to prove an alleged co-inventor's conception:

22

Q.  So it reads, "Specifically, it is in response to Jack Byrd's idea to provide automated off-site backup services for PC users.
*In your mind*, is that proof that Mr. Byrd came up with the basic idea in the patents, a service for off-site backup for PC users?

A.  It's part of the overall proof, yes.

Ex. A, Trial Tr. at 657:2-8.  Campos cannot provide competent evidence as to Byrd's conception of an online backup idea, because what is in ***Campos' mind*** is irrelevant to the definiteness in ***Byrd's mind*** of any ideas.  *z4 Techs.*, 2006 WL 2401099, at *14 ("[Conception is] the ***formation in the mind of the inventor*** of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.") (emphasis added); *Coleman*, 754 F.2d at 359 ("Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his '***completed thought expressed in such clear terms*** as to enable those skilled in the art' to make the invention.") (emphasis added).

**E.    The Evidence Demonstrates That Byrd Did Not Communicate Any Conception Of Online Backup To Crawford Before Crawford's Conception Of Online Backup In The March 31, 1992 Proposal.**

The evidence at trial demonstrates that Byrd is not a co-inventor because Byrd had no communication with Crawford at the time Crawford conceived the idea of online backup.  "It is [] uncontroversial that the alleged joint inventor seeking to be listed on a patent must demonstrate that his labors were ***conjoined*** with the efforts of the named inventors."  *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).  "Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs-that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts."  *Id.*

The evidence demonstrates that Byrd did not talk to Crawford, much less about online backup, before April 1992.  Crawford testified that Byrd did not arrive into the same office as Crawford until May 1992 (*Id.* at 1255:3-11), and that Crawford did not talk to Byrd about online

23

backup until May 1992. *Id.* at 1304:12-23, 1308:4-7 ("Q.  Prior to writing the March 31st

document, how many times had you talked to Jack Byrd about online backup?  A.  Never.").

Atwood confirmed that Byrd did not tell Crawford anything about online backup before April

1992.

> Q. . . . Mr. Crawford was added to the group in April of 1992, correct?
> A. I believe that's the general time frame.
> Q. That's your best recollection, correct?
> A. Yes.
> . . .
> Q. Now, before Mr. Crawford was added to the group, he wasn't told about the online
>     backup ideas that you and Mr. Byrd and Mr. Campos were working on, right?
> A. I don't believe so.
> Q. So, I'm correct.  You believe I'm correct, right?
> A. Yes.

*Id.* at 822:4-8, 12-17.  It was undisputed by the witnesses at trial that Crawford's March 31, 1992

Proposal disclosed an invention for online backup.  *See* Ex. B, PX-45; Ex. A, Trial Tr. at 468:2-

6, 464:7-10 ("Q.  The first document that exists in this case regarding online backup is a

document dated March 31st, 1992, by Christopher Crawford, correct?  A.  Correct."); *see also id.*

at 466:14-16.  And Atwood testified that it was possible that Crawford came up with online

backup independently of Atwood and Byrd.  *See id.* at 815:23-816:1 ("Q.  In fact, you agree that

it's possible that Mr. Crawford came up with online backup independent of you and Mr. Byrd,

right?  A.  It's possible.").

    Indeed, even Mr. Campos' testimony is unclear as to whether Byrd communicated the

idea for online backup to Crawford before March 31, 1992.  *See* Ex. A, Trial Tr. at 357:5-

359:10,[6] 460:10-21 ("Let me refresh just to try and be clear.  In March is when the idea was

---

[6] Campos uses the term "we" to reference any alleged discussions with Crawford regarding
online backup prior to March 31, 1992.  There is no specific reference to Byrd being in those
discussions.

introduced to Chris.  *I set the stage*, and then Jack and I both talked with him.").  Regardless,

Mr. Campos, as an alleged co-inventor, cannot as a matter of law provide competent testimony to

corroborate Byrd's inventorship.[7]   *Medichem*, 437 F.3d at 1171 ("One consequence of the

independence requirement is that testimony of one co-inventor cannot be used to help

corroborate the testimony of another.").

Accordingly, no reasonable jury could find that Byrd is a co-inventor of the Crawford

patents, because the evidence shows that Byrd's only alleged contribution—the idea of online

backup—was not even communicated to Crawford until *after* Crawford's own conception of

online backup as shown in his March 31, 1992 proposal.

**F.     Given That The Jury Discredited Atwood's And Campos' Testimony, No Reasonable Jury Could Have Found Byrd To Be A Co-Inventor**

Both Atwood and Campos testified at length regarding the events of 1991 and 1992 and

their alleged contributions to Crawford's online backup inventions.  Despite hearing their

---

[7] Campos has every interest to back date his memory of the events, and his accounts are implausible, uncorroborated, and in conflict with the documentary evidence.  *See Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892) (requiring a clear and convincing evidence standard for proving invalidity with oral testimony "[i]n view of the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury"); *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1376 (Fed. Cir. 2012)  ("We have explained that [the corroboration] requirement arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent.").
For example, he testified that the group met on a weekly basis starting in April at Byrd's apartment (Ex. A, Trial Tr. at 359:25-360:1), and that Byrd came up with the name PC OASIS during the first of those meetings.  *Id.* at 393:20-394:6, 394:18-25, 460:10-21.  But Crawford provided actual documentary evidence, dated May 25, 1992, of *his* process for coming up with the name PC OASIS.  Ex. A, Trial Tr. at 1313:17-1317:5; Ex. E, PX-522.  Accordingly, any group meetings must have fallen after May 25, 1992, and certainly not in April.  Not a single document pertaining to PC OASIS is dated prior to May 23, 1992—in fact they are all dated in a one to two week period after May 23, 1992—consistent with Crawford's testimony that the group only met once in late May.  Ex. A, Trial Tr. at 1176:21-1177:8, 1332:4-14.

testimony and seeing evidence of documents concerning the PC Oasis business, the jury found that neither Atwood nor Campos are co-inventors of the Crawford patents.

But notably, there is ***no testimony from any witness*** as to any specific contribution made by Byrd rising to the level of conception—and in fact as discussed above in section C, Atwood claimed for himself all the credit for the inventive contributions to the alleged work on online backup by him and Byrd in 1990 and 1991 in Colorado.  And Campos testified that Byrd did not understand the technical details of PCs.  Ex. A, Trial Tr. at 642:9-643:12.  Essentially, any alleged joint contribution from Byrd with Atwood, Campos, or both in 1991 and 1992 in San Francisco was rejected by the jury, who had the opportunity to hear all the testimony from Atwood, Campos, Todd, and Doss ***and*** consider all the documentary evidence for which Atwood and Campos testified shows that they and Byrd made contributions.  Accordingly, no reasonable jury could have found that Byrd was a co-inventor, given that they rejected the evidence of joint collaboration between Atwood, Campos, and Byrd and was presented with no evidence of any specific independent contribution by Byrd.[8]

## II.    The Jury's Inconsistent Verdict Warrants A New Trial

As explained in the previous section I.F. above, the jury's inconsistent verdict finding Jack Byrd a co-inventor after having discredited Atwood's and Campos' testimony that they are co-inventors demonstrates confusion by the jury.  No evidence presented in this litigation shows any specific inventive contributions made by Byrd alone.

---

[8] By finding Atwood and Campos to be non-inventors, the jury rejected Atwood's and Campos' testimony that Crawford was merely assigned the responsibility of memorializing the group's discussions because he was the only one with a printer at home.  *Id.* at 361:21-362:7; 668:5-19; *see, e.g.*, Ex. AB, DTX-011; Ex. C, PX-31; Ex. AC, PX-32; Ex. AD, PX-33; Ex. D, PX-34; Ex. AE, PX-35.  Accordingly, none of those documents can establish Byrd's inventorship.

As an initial matter, even if the jury believed, contrary to the evidence, that Byrd communicated an idea for online backup to Campos and/or Crawford, Atwood provided first-hand account testimony (as discussed in Section I.C.) showing that Byrd made no inventive contributions to the idea of online backup.  And as further explained in that section, the mere idea of an online backup service for personal computers is not an inventive contribution.  Indeed, even given Atwood's testimony claiming all the inventive credit for the purported work done by him and Byrd in 1990 and 1991 in Colorado, the jury found that Atwood was not a co-inventor.

As the only individual with a common connection to Atwood, Campos, and Crawford, Byrd merely recruited them to work on a possible idea for online backup using Crawford's inventions after having spoken to Crawford[9]—this in no way makes Byrd a co-inventor on patents concerning online backup.  Nor is there any clear and convincing evidence that Byrd communicated any ideas for online backup to Crawford before Crawford's March 31, 1992 proposal.  *See* Ex. B, PX-045.

In addition, the jury heard testimony from Atwood and Campos that they and Byrd had collaborative discussions on an idea for online backup while Campos and Byrd were at ACS in 1991 and 1992 in San Francisco—months before meeting Crawford.  Ex. A, Trial Tr. at 349:3-8, 351:19-352:3, 355:16-356:19.  They also heard Atwood and Campos testify that after Crawford joined the group, the concept of online backup was explained to him.  *Id.* at 357:21-358:13.  The jury further heard testimony that Atwood, Byrd, Campos, and Crawford attended bi-weekly meetings at Byrd's apartment in San Francisco in April and May of 1992 to have collaborative

---

[9] Despite Campos claiming to have met with Byrd and Atwood before May 23, 1992 to discuss a business for online backup, all the documents in this case pertaining to a possible business fall after May 23, 1992 or are undated.  *See, e.g.*, Ex. AB, DTX-011; Ex. C, PX-31; Ex. AC, PX-32; Ex. AD, PX-33; Ex. D, PX-34; Ex. AE, PX-35; Ex. AF, PX-37.

discussions regarding an online backup service business. *Id.* at 360:13-361:20. But despite having heard this extensive testimony regarding the group's "collaborative" efforts, the jury rejected Atwood and Campos' testimony that they are co-inventors of the Crawford patents. Thus, the jury found that no inventive contributions were developed by Campos or Atwood during any of the meetings where Byrd was involved. And given that Atwood did not credit Byrd with any specific contributions during their time in Colorado in 1990 and 1991, and neither Atwood nor Campos credited Byrd with any specific contributions during their time in San Francisco before discussing with Crawford, a reasonable jury could not find that Byrd is a co-inventor of the Crawford patents based on any inventive contributions made before meeting Crawford.

Having heard Atwood and Campos testify about their alleged inventive contributions to Crawford's patents and having seen all the documents produced in this litigation concerning a potential business for online backup, the jury found that Atwood and Campos are not co-inventors of the Crawford patents. The jury's separate finding that Jack Byrd is a co-inventor of the Crawford patents while rejecting Atwood's and Campos' claims to co-inventorship demonstrates the jury's confusion meriting a new trial. *Nissho–Iwai Co.*, 729 F.2d at 1538 ("A trial judge may order a new trial if he suspects that the jury verdict reflects confusion.").

## CONCLUSION

For the foregoing reasons, Oasis respectfully requests that this Court grant Oasis' motion for judgment as a matter of law that the patents-in-suit are not invalid under 35 U.S.C. § 102(f), and in the alternative grant Oasis' request for a new trial.

Dated:  May 7, 2013                    By:    ___/s/ Eugene Chiu_____
                                              John M. Desmarais *(admitted pro hac vice)*
                                              jdesmarais@desmaraisllp.com
                                              Alan S. Kellman *(admitted pro hac vice)*
                                              akellman@desmaraisllp.com
                                              Tamir Packin *(admitted pro hac vice)*
                                              tpackin@desmaraisllp.com
                                              Eugene Chiu *(admitted pro hac vice)*
                                              echiu@desmaraisllp.com
                                              Xiao Li *(admitted pro hac vice)*
                                              xli@desmaraisllp.com

                                              DESMARAIS LLP
                                              230 Park Avenue
                                              New York, NY 10169
                                              (212) 351-3400 (Telephone)
                                              (212) 351-3401 (Facsimile)

                                              *Lead Counsel for Plaintiff*
                                              *OASIS RESEARCH, LLC*


                                              /s/ James C. Tidwell_____
                                              James C. Tidwell
                                              Texas State Bar No. 20020100
                                              jct@wtmlaw.net
                                              WOLFE, TIDWELL & MCCOY, LLP
                                              320 N. Travis, Suite 205
                                              Sherman, Texas 75090
                                              (903) 868-1933 (Telephone)
                                              (903) 892-2397 (Facsimile)

                                              *Local Counsel for Plaintiff*
                                              *OASIS RESEARCH, LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the parties conferred and the motion is opposed.

_/s/ Eugene Chiu_

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic services are being served with a notice of filing of this document on May 7, 2013 as follows:

| | |
|---|---|
| Chris R. Ottenweller<br>I. Neel Chatterjee<br>Bas de Blank<br>Jacob A. Snow<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025<br>Telephone: 650-614-7400<br>Facsimile: 650-614-7401<br>Email: EMCOasisService@orrick.com<br><br>Attorneys for Defendants<br>EMC Corporation and Decho Corporation | Matthew Lowrie<br>Kevin M. Littman<br>FOLEY & LARDNER LLP<br>111 Huntington Ave<br>Boston, MA 02199<br>Telephone: 617-342-4000<br>Fax: 617-342-4001<br>Email: BOST-File-Carbonite-OasisResearch@foley.com<br><br>Attorneys for Defendant Carbonite, Inc. |
| Eric H. Findlay<br>FINDLAY CRAFT, LLP<br>6760 Old Jacksonville Hwy, Suite 101<br>Tyler, TX 75703<br>Telephone: (903) 534-1100<br>Facsimile: (903) 534-1137<br>Email: efindlay@findlaycraft.com<br><br>Attorneys for Defendants<br>EMC Corporation and Decho Corporation | Andy Tindel<br>ANDY TINDEL, ATTORNEY & COUNSELOR AT LAW,<br>P.C.<br>112 East Line Street, Suite 304<br>Tyler, TX  75702<br>Telephone:  903-596-0900<br>Fax:  903-596-0909<br>Email:  atindel@andytindel.com<br><br>Attorneys for Defendant Carbonite, Inc. |

_/s/ Eugene Chiu_
Eugene Chiu