# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | |
| | § | Case No. 4:10-CV-00435 |
| v. | § | Judge Mazzant |
| | § | |
| CARBONITE, INC., EMC CORP., and | § | |
| DECHO CORP. | | |

## <u>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

Pending before the Court is Oasis' Motion for Judgment as a Matter of Law Under Rule 50(b) and Alternative Request for a New Trial Under Rule 59(a) (Dkt. #732). After considering the motion, the responses, and the relevant trial testimony and evidence, the Court finds that Plaintiff's motion for judgment as a matter of law is granted.

## PROCEDURAL BACKGROUND

In its First Amended Complaint, Plaintiff Oasis Research, LLC ("Oasis" or "Plaintiff") accuses twelve defendants of infringing United States Patent Nos. 5,771,354 (the "'354 Patent"), 5,901,228 (the "'228 Patent"), 6,411,943 (the "'943 Patent"), and 7,080,051 (the "'051 Patent") (collectively "the patents-in-suit") (Dkt. #253 at 4). "Specifically, the patents claim methods for allowing home computer users to remotely connect to an online service system for purposes of external data and program storage and additional processing capabilities in exchange for a fee." *In re EMC Corp.*, 677 F.3d 1351, 1353 (Fed. Cir. 2012). Plaintiff asserts that each of the Defendants have infringed the patents-in-suit through each Defendants' "online backup/storage services." Plaintiff accuses a variety of products and online backup/storage services provided by

each Defendant,[1] and in some cases website addresses where the services can be located (Dkt. #253).

In their First Amended Answers, Defendants assert that the patents are unenforceable due to inequitable conduct committed by the named inventor, Christopher Crawford ("Crawford") (Dkt. #404; #411). Defendants contend that Crawford failed to notify the United States Patent and Trademark Office ("PTO") that he was not the sole inventor, and that he should have informed the PTO that there were other co-inventors. Specifically, Defendants assert that three other individuals, Jack Byrd ("Byrd"), Donald Atwood ("Atwood"), and Charles Campos ("Campos"), worked with Crawford on developing the concepts disclosed in the patents-in-suit.

On May 23, 2011, the undersigned entered a Report and Recommendation denying Defendants' motions to dismiss for misjoinder, severance, and transfer (Dkt. #204). After considering the objections of Defendants, United States District Judge Michael H. Schneider adopted the Report and Recommendation of the United States Magistrate Judge (Dkt. #246). On February 17, 2012, this case was assigned to the undersigned by consent of the parties for all further proceedings (Dkt. #352). On September 7, 2011, Defendants EMC Corp. and DECHO Corp. (collectively, "EMC") petitioned the Federal Circuit for a writ of mandamus vacating the July 25, 2011 order of the District Court adopting the undersigned's recommendations. Defendant Carbonite, Inc. ("Carbonite") joined in EMC's petition. On May 4, 2012, the Federal Circuit granted the writ of mandamus in part, and the Court reconsidered Defendants' motions in light of the Federal Circuit's mandamus order (Dkt. #364; #435). The Court severed the Defendants into five separate actions, and then consolidated the actions for pretrial issues unrelated to venue (Dkt. #435). The Court also denied the Defendants' motions to transfer.

---

[1] Only three Defendants remain in this litigation, and those Defendants are Carbonite, Inc., EMC Corp., and DECHO Corp.

On February 20, 2013, the Court entered an order denying both Plaintiff's and Defendant's motion for summary judgment on inventorship issues (Dkt. #645), finding that material fact issues existed.

At the suggestion of Defendants, the undersigned presided over a trial in this case as to the issues related to inventorship only, which began on March 14, 2013 (Dkt. #683). The jury rendered a verdict on March 22, 2013, finding that each of the patents-in-suit were invalid for failure to add one or more co-inventors, and that Jack Byrd was the only omitted co-inventor (Dkt. #713; #718).

On May 7, 2013, Plaintiff filed its Motion for Judgment as a Matter of Law Under Rule 50(b) and Alternative Request for a New Trial Under Rule 59(a) (Dkt. #732). On May 28, 2013, Defendants filed their response in opposition (Dkt. #736). Plaintiff filed its reply on June 10, 2013 (Dkt. #739). Defendants filed their sur-reply on June 20, 2013 (Dkt. #742).

## FACTUAL BACKGROUND

At trial, Chris Crawford ("Crawford"), the sole named inventor of the patents-in-suit, testified that he first thought of ideas for enhancing the online service capabilities of customer computers in the 1980s. Dkt. #732, Ex. A, Trial Tr. at 1293:20-1294:17. In the early 1990s, Crawford accepted a position with a company known as Affiliated Computer Services ("ACS") in California. *Id*. at 1294:22-24. On March 31, 1992, Crawford submitted a document titled "ACS Online Member Services" to an idea box at ACS, describing the ideas, including online backup, which eventually became the subject of the patents-in-suit. *Id*. at 1296:6-1297:21; *see also* Dkt. #732, Ex. B.

Crawford testified that he met Campos, Atwood, and Byrd while working at ACS. *Id*. at 1305:14-1306:11. Crawford stated that soon after he submitted his March 31, 1992 proposal to

the idea box, Byrd, who was a senior-level manager at ACS, became aware of Crawford's ideas for online services. *Id*. at 1304:12-1305:13. Crawford presented his ideas to Byrd, and Byrd stated that he was interested in pursuing a business using Crawford's idea of online backup of personal computers. *Id*. at 1306:12-1307:24. In response to Byrd's interest in this aspect of Crawford's idea, Crawford drafted a proposal on May 23, 1992. *Id*. at 1311:16-25; *see also* Dkt. #732, Ex. AB. This proposal was disclosed to the Patent Office during the prosecution of the patents-in-suit to prove Crawford's prior conception over a reference cited by the Examiner, including the reference to Byrd. *Id*. at 1321:13-16, 1321:17-20; *see also* Dkt. #732, Ex. AG.

The four individuals, Crawford, Byrd, Atwood, and Campos, formed a group to discuss pursuing a business based on online backup, for which Crawford drafted a few documents. *Id*. at 1326:4-11, 1326:18-1328:2, 1328:25-1329:19; *see also* Dkt. #732, Ex. C. Crawford testified that he put together the technical details for his invention, and testified that he was solely responsible for coming up with a name for a business related to his ideas, which was PC OASIS and was adopted by the group. *Id*. at 1310:22-1311:5, 1313:17-1316:21, 1316:24-1317:19, *see also* Dkt. #732, Ex. E. Crawford was interested in pursuing the business for online backup, but also wanted to pursue his other ideas regarding online services for personal computers. *Id*. at 1327:10-1328:17; *see also* Dkt. #732, Ex. F, G, H, E. However, the others were not interested in pursuing any ideas beyond online backup, and Crawford ultimately decided not to go into business with them and resigned from ACS to pursue patents on all of his ideas. *Id*. at 1357:3-25. Crawford tendered his resignation letter to Campos on July 29, 1992, stating that he was leaving ACS to pursue his idea for a new technology referenced in an earlier memo that indicated Crawford's intention to pursue patent rights in his ideas. *Id*. at 1351:7-1355:5, 1355:8-1356:23; *see also* Dkt. #732, Ex. J, K. Atwood, Byrd, and Campos did not form the

contemplated business, and did not pursue online backup through patents, commercialization, or other means. *Id.* at 494:1-24, 828:19-832:11.

Beginning in 1992, Crawford prepared his patent application and prosecuted his patents in Washington, D.C., where he lived prior to working for ACS. The patent application was over a hundred pages, with 70 pages of drawings and 71 claims. Dkt. #732, Ex. L. Crawford filed his application on November 4, 1993. *Id.* After a lengthy prosecution, during which Crawford struggled to pay filing fees, legal fees, and fees for formatting drawings, the application issued as six patents relating to online services, including remote backup, additional processing power, and additional software for personal computers. Dkt. #732, Ex. A., Trial Tr. at 1379:16-1381:3, 1381:13-1383:11, 1388:18-1389:25; *see also* Dkt. #732, Ex. M, N, O, P, Q, R, S, T. In 2007, Crawford sold his patents to Kwon Holdings Group, a subsidiary of Intellectual Ventures. *Id.* at 1392:5-1393:22; *see also* Dkt. #732, Ex. U.

Atwood, Campos, Teri Todd ("Todd"), and Donald Doss ("Doss") all testified at trial that Byrd came up with the idea of providing a commercial backup service. Dkt. #736, Ex. 1, Trial Tr. at 366:20-23, 349:21-350:5, 383:21-384:1, 407:2-5, 444:6-13, 725:15-18, 880:20-881:12. According to these four witnesses, Byrd and Atwood first arrived at the idea when they were working together in a computer consulting business in Colorado in the early 1990s. Atwood testified that he and Byrd initially backed up their files by driving up to 30 miles to each other's homes to exchange diskettes. *Id.* at 715:5-716:11. Atwood explained that there were problems and limitations of backing up files in this manner, and those problems inspired him and Byrd to conceive a different solution. *Id.* at 716:14-717:4. The solution they arrived at was a service that "would have been the ability to remotely back up data from a customer's PC to some centralized site to protect the data." *Id.* at 721:17-19. Atwood testified that Byrd conceived of the idea of a

commercial backup service. *Id*. at 725:15-18, 763:20-23, 764:7-12, 772:22-773:7, 776:5-18, 776:23-777:14, 791:14-23, 795:21-796:9, 803:7-18. Ms. Todd similarly testified that Byrd, her late husband, conceived the idea for a "backup service for PCs." *Id*. at 880:16-881:12. She stated that Byrd was "an inventive person" and noted that he was "particularly passionate" about this idea. *Id*. Doss also confirmed that Byrd, working with Atwood, conceived the idea for a remote online backup service. *Id*. at 994:12-18; *see also id*. at 1036:14-1037:4. Finally, in a May 22, 1992 document, Crawford wrote that the proposal was "in response to Jack Byrd's idea to provide automate offside backup services for PC users." Dkt. #736, Ex. 2.

The jury found that all four of the patents-in-suit were invalid for failure to name a co-inventor (Dkt. #718). When asked to identify which person was proven a co-inventor of that patent, the jury selected Jack Byrd on all four patents and did not select Atwood or Campos. *Id*.

## LEGAL STANDARD

"A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford. v. Cimarron Ins. Co., Inc*., 230 F.3d 828, 830 (5th Cir. 2000). Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "A jury verdict must be upheld, and judgment as a matter of law may not be granted, unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Fractus, S.A. v. Samsung Electronics Co., Ltd*., 876 F. Supp. 2d 802, 813 (E.D. Tex. 2012) (citing *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995)). The jury's verdict must be supported by "substantial evidence" in support of each element of the claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

"A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are the sole functions of the jury." *Fractus*, 876 F. Supp. 2d at 813 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)). The moving party is entitled to judgment as a matter of law, "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *International Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

"The court may, on motion, grant a new trial on all or some of the issues[.]" FED. R. CIV. P. 59(a)(1). "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right – and indeed the duty – to set the verdict aside and order a new trial." *Smith v. Trans World Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citation omitted). In ruling on a motion for new trial, the jury's verdict may not be lightly set aside. *See Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001) ("[C]ourts 'must attempt to reconcile the jury's findings, by exegesis, if necessary, before we are free to disregard the jury's verdict and remand the case for a new trial.'"). "In considering whether the seemingly inconsistent verdicts may be reconciled, the court must view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency." *Id*.

## ANALYSIS

In its motion, Oasis contends that judgment as a matter of law that the patents-in-suit are not invalid for failure to name Jack Byrd as a co-inventor is appropriate for a number of reasons, which are as follows: (1) there is no testimony or documents from Byrd regarding his conception of any contributions to the inventions; (2) the oral testimony from Atwood, Campos, Todd, and Doss is insufficient as a matter of law to establish Byrd's co-inventorship; (3) Byrd's

alleged "idea" for online backup for PCs is insufficient to establish co-inventorship; (4) there is no documentary evidence to corroborate Byrd's co-inventorship; (5) Byrd did not communicate any conception of online backup to Crawford prior to Crawford's conception of online backup in the March 31, 1992 proposal; (6) Given that the jury failed to find Atwood and Campos co-inventors, no reasonable jury could have found Byrd to be a co-inventor; and (7) the jury's inconsistent verdict warrants a new trial.

The issuance of a patent by the United States Patent and Trademark Office ("PTO") creates a presumption that the named inventor is the true and only inventor. *See Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (stating that where the patent has been outstanding for a considerable time and the patented device is successful, that "there is an equally strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention."). To rebut this presumption, the burden of proof on an alleged co-inventor is a "heavy one" to prove joint inventorship by "clear and convincing" evidence. *Id*. at 980; *accord Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1305 (Fed. Cir. 2010). "All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (*citing Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)).

Since, "'[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention." *Ethicon*, 135 F.3d at 1460 (Fed. Cir. 1998) (*quoting Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994)). Conception is "the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, 2006 WL 2401099, at *14 (E.D. Tex. Aug. 18, 2006) (*citing Burroughs*, 40 F.3d at 1228). "An idea is definite and permanent when the inventor has a specific settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Id.* Merely having a general idea is insufficient for showing conception – "each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice." *Vanderbilt*, 601 F.3d at 1303; *see also Garrett Corp. v. U.S.*, 422 F.2d 874, 881 (Ct. Cl. 1970) ("One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor."). However, "[a co-inventor] need not 'make the same type or amount of contribution' as the other co-inventors." *Tavory v. NTP, Inc.*, 297 F. App'x 976, 979 (Fed. Cir. 2008). "As a result, no individual co-inventor need have a 'definite and permanent idea of the complete and operative invention' so long as all of the co-inventors collectively satisfy that requirement." *Id.*; *Fina Oil*, 123 F.3d at 1473 ("One need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship."); *Vanderbilt*, 601 F.3d at 1303 ("[E]ach contributor need not have their own contemporaneous picture of the final claimed invention in order to qualify as joint inventors.").

"[A]n alleged co-inventor must supply evidence to corroborate his or her testimony." *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) (citation omitted).

"[W]ithout corroboration, the oral testimony cited by [an alleged co-inventor] is simply insufficient as a matter of law to meet the clear and convincing standard of proof required to establish co-inventorship." *Weaver v. Houchin*, 467 F. App'x 878, 880 (Fed. Cir. 2012). "[H]owever, 'the law does not impose an impossible standard of 'independence' on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence having a source totally independent of the inventor.'" *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006) (*citing Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998)). Whether a co-inventor's claim is sufficiently corroborated is determined by a "rule of reason," based on the totality of the evidence. *See Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000). Under the "rule of reason," "an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached." *Ethicon*, 135 F.3d at 1461. Co-inventorship may be corroborated through testimony from non-inventors, records made contemporaneously with the inventive process, or circumstantial evidence. *Gemstar-TV Guide Int'l Inc. v. United States ITC*, 383 F.3d 1352, 1382 (Fed. Cir. 2004); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004); *Medichem*, 437 F.3d at 1171.

As a matter of law, an alleged co-inventor's testimony standing alone cannot rise to the level of clear and convincing proof of inventorship. *See Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) ("Uncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of a patent."); *Ethicon*, 135 F.3d at 1461; *see Weaver*, 467 F. App'x at 880. In addition, the Federal Circuit has found "a clear requirement that such oral testimony by interested parties must be corroborated by documentary testimony." *Lacks Indus., Inc. v. McKechnie Vehicle Components*

*USA, Inc*., 322 F.3d 1335, 1350 (Fed. Cir. 2003). "The requirement of independent knowledge remains key to the corroboration inquiry." *Medichem*, 437 F.3d at 1170.

"Conception must be proved by corroborating evidence which shows that the inventor disclosed to others his 'completed thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) (citation omitted). "Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs*, 40 F.3d at 1228. "This evidence can be in the form of contemporaneous documents or the oral testimony of an independent witness," but in either case it must disclose or describe the invention in such detail to "enable one skilled in the art to make the invention." *Tavory,* 297 F. App'x at 979. Also, the Federal Circuit requires an alleged co-inventor to show competent evidence that conception of his purported contribution "was more than just the exercise of ordinary skill" in the art, in order to establish co-inventorship under § 102(f). *Id*. at 979-80; *Pannu*, 155 F.3d at 1351 (requiring alleged co-inventors to "do more than merely explain to the real inventors well-known concepts and/or the current state of the art."). Where the alleged co-inventor "has not established that [the contribution] was not in the prior art," he has failed to establish co-inventorship. *Tavory*, 297 F. App'x at 980.

Plaintiff argues that there is no evidence of Byrd's conception of the complete invention or a portion of the invention claimed by the patents-in-suit. Specifically, Plaintiff contends that there is no evidence of the formation of an idea in the "mind of the inventor," and Plaintiff

asserts that Defendant cannot prove the formation of any idea in Byrd's mind either though testimony or documentary evidence.[2]

Defendants contend that Byrd made significant contributions to the patents-in-suit, which were established by testimony from Todd, Atwood, Campos, and Doss, and by the documents in evidence. Defendants argue that Byrd conceived the "centerpiece" idea of the patents-in-suit, which was "a commercial service for online backup of data for PC users." Dkt. #736 at 8. The testimony at trial demonstrated that automated off-site backup was the central concept of the patents-in-suit. Defendants further argue that Byrd made other contributions to the patents, such as a "remote storage area," the "online internet session," several of the limitations in the '228 patent, "off-site backup and restore service" referred to in the '943 patent, and contributions to the '051 patents.

First, the Court will look at the evidence presented at trial to determine if a reasonable jury could have concluded that Byrd contributed in some significant manner to the conception or reduction to practice of the invention, which is the first prong of the test to determine co-inventorship. *Pannu*, 155 F.3d at 1351. There is no allegation that Byrd contributed to the reduction to practice of the invention; therefore, the Court will look at whether Byrd contributed in a significant manner to the conception of the invention. At trial, evidence was presented by Atwood, Campos, Todd, and Doss, that Byrd conceived of the idea for "a commercial service for online backup of data for PC users." Byrd is deceased, and thus, was unavailable to testify at trial. There are no documents authored by Byrd, and no documents created contemporaneously with the alleged conception to present insight into the formation of an idea in the mind of Byrd, the alleged co-inventor. Thus, the Court will look to the remaining evidence admitted at trial to

---

[2] The Court will not consider Plaintiff's argument that because Byrd did not testify he cannot be named a co-inventor. Plaintiff did not raise this argument in its Rule 50(a) motion for judgment as a matter of law, and its argument is now waived. *Allied Bank-West, N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993).

determine whether Byrd contributed in some significant manner to the conception of the invention.

Atwood testified that in the early 1990s, he and Byrd worked together in starting a consulting firm. Dkt. #736, Ex. 1 at 709:11-17. At that time, they noticed a need to backup their files, and would copy the files onto diskettes and drive to each other's homes to backup the files. *Id*. at 715:7-15. Due to the inconvenience of transporting these files manually, Atwood and Byrd began to experiment with the idea of transferring a file from Atwood's computer to Byrd's computer, and vice versa, using a program called Carbon Copy. *See id*. at 717:5-718:5. Atwood testified that he and Byrd discussed the idea of forming a business to help small businesses and other individuals with their backup needs. *Id*. at 721:17-722:6. Although they were able to determine that the idea was feasible in 1990 and 1991 through testing, they encountered two difficulties with their ideas. *Id*. at 725:15-21. The first difficulty was the communication speeds for the modems, and the fact that a room filled with computers would be necessary for the personal computers to service the requests. *Id*. at 725:22-726:4. Thus, Atwood and Byrd abandoned the idea until 1991, when they were both living in California working for two different companies. *Id*. at 730:6-10. At that time, Atwood identified the AS/400 as a possible solution to the problem of having a room filled with computers, and he revisited the idea with Byrd in late summer of 1991. *Id*. at 733:13-16. In the fall of 1991, Atwood and Byrd brought Campos into the group because he had more experience working with the AS/400, and Byrd was impressed with his technical skills. Dkt. #727 at 734:2-16. The group met a few times and discussed their ideas, and determined in 1992 that they needed a fourth person with technical knowledge and information to configure a system and find out how much it would cost. *Id*. at 742:11-23. Around mid-April 1992, Crawford was invited to join the group, and accepted the

offer.  *Id*.  The group discussed their ideas, and Atwood testified to the following regarding the group dynamic:

> We all had kind of assumed roles that we did.  Jack was oriented more toward, you know, how the business would run.  Chuk's role was more along the lines of how the application would work in managing the members, keeping track of their information, those kinds of things.  Chris' input was more technical about how an AS/400 could communicate or could gather data, make connections, make phone calls, how the disks would work and those types of things.  My role at that point was pretty much operational, how are we going to run this thing once we get it put together.

*Id*. at 746:13-23.  Atwood testified that the group had an estimated three or four meetings, and that those are the only times he communicated with Crawford.  *Id*. at 823:15-23.  Atwood also testified that he did not understand everything in the patents from a technical point of view, but they contained the same basic ideas that he and Byrd arrived at in Colorado in the early 1990s. *Id*. at 854:3-856:18.

Campos testified that he was approached by his boss, Byrd, in November of 1991, regarding an online backup idea.  Dkt. #736, Ex. 1 at 349:3-8.  Campos testified that Atwood and Byrd related to him their ideas for online backup and asked him to act as the person who would take the business concepts and translate them into functional requirements.  *Id*. at 351:10-16. Campos stated that Crawford joined the group in early March 1992.  *Id*. at 352:18-21.  Campos was Crawford's boss at that time, and Crawford was invited to join the group because he was the most technical and had the most experience with the AS/400.  Campos testified that he, Atwood, and Byrd contributed significantly to the claims of the patents, and that he believed that they were co-inventors.  *See id*. at 365-433.  Campos also testified that in the summer of 1992, the group decided not to pursue the idea of online backup because it was not financially viable to go forward at that point.  *Id*. at 446:13-18.  They needed faster and more evolved technology and resources to go forward.  *Id*.

Todd testified that in early 1990, Byrd discussed with her an idea he had been working on with Atwood for online backup of PCs. Dkt. #732, Ex. A at 881:7-12. However, Todd also testified that she did not recall the specific details. *Id*. at 881:23-882:3. Todd stated that she observed Atwood and Byrd discussing their ideas both in Colorado and California. *Id*. at 882:6-10, 883:12-17. Todd also confirmed that any documents Byrd might have kept while working on his ideas for remote backup no longer exist, because after his death, she moved and threw a lot of things away. *Id*. at 886:12-19.

Doss testified that he is good friends with Campos, and the two worked at ACS together. *Id*. at 990:8-18. Doss stated that he did not know Byrd, and the information he received regarding the ideas for online backup came from Campos. *Id*. at 993:16-994:4, 1030:2-12.

Based on the record before the Court, developed at trial, there is insufficient evidence for a jury to conclude that Byrd conceived of some significant portion of the invention. As stated above, to be a co-inventor, one must "conceive[] some important element or some important claim that is claimed in the patent." *Hess*, 106 F.3d at 980. Merely having a general idea is insufficient for showing conception – "each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice." *Vanderbilt*, 601 F.3d at 1303; *see also Garrett Corp.*, 422 F.2d at 881 ("One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor."). The evidence before the Court is that Byrd's contribution to the patents-in-suit was the idea for "remote online backup services." Todd cannot remember any of the specifics of Byrd's ideas. Atwood testified that many of the ideas that he and Byrd discussed collectively in the early stages were, in fact, Atwood's ideas. Campos testified to the many contributions that he allegedly made to the patents, but gave little credit to Byrd and Atwood, other than to note that the original idea for

remote online backup services was their idea. The Court agrees that "[a co-inventor] need not 'make the same type or amount of contribution' as the other co-inventors." *Tavory,* 297 F. App'x at 979. However, the evidence reveals that the contributions made by Byrd merely suggest an idea of a result to be accomplished, i.e., remote online backup services,[3] rather than a means of accomplishing it. The evidence also reveals that there were multiple times where Byrd and Atwood encountered difficulties with their ideas, so that they were unable to pursue them. They encountered technical difficulties in Colorado, and when they began to revisit the idea, Byrd and Atwood determined that they needed the assistance of Campos and then Crawford to bring their general idea for online backup services to fruition.

In addition, there is simply no basis for a reasonable jury to conclude that Byrd conceived of some significant portion of the invention, and Atwood did not. All of the testimony at trial revealed that the two worked together to develop the general idea of online backup both in Colorado, and again in California.[4] In fact, it was Atwood who brought up the idea for remote backup after Byrd and Atwood abandoned the idea in Colorado. Further, the Campos documents and the Crawford documents do not provide any evidence of Byrd's conception of the patents-in-suit. These documents suggest that there was a business to be created as a result of the invention, and indicate that the ideas arrived at for the business PC OASIS were a collaborative effort.

---

[3] Any other claims in the patents-in-suit asserted to be conceived by Byrd are only supported by the testimony of Atwood and Campos, and, since they are both alleged co-inventors, cannot be used to corroborate any assertion that Byrd conceived of any of those claims. Thus, the only contribution to the patents considered by the Court is the "remote online backup services," since this is the only one of Byrd's idea that has any alleged corroborating evidence.

[4] The Court makes this statement, and is fully aware of Defendants' argument that the jury could have found Byrd and Atwood were both co-inventors, but only Byrd's status as co-inventor was adequately corroborated by the evidence. The Court will address this argument at length below, but makes such statement for the purpose of discussing the conception issue alone.

Thus, the Court finds for this reason alone, Plaintiff's motion for judgment as a matter of law is granted.[5]

Even if there was sufficient evidence to determine that Byrd conceived of some significant portion of the invention, there is insufficient evidence to satisfy the Federal Circuit's corroboration requirements for co-inventors. As a matter of law, the testimony of Atwood and Campos are insufficient to corroborate Byrd's status as a co-inventor. *See Medichem*, 437 F.3d at 1157 ("One consequence of the independence requirement is that testimony of one co-inventor cannot be used to help corroborate the testimony of another."). So the Court must look elsewhere to satisfy the corroboration requirements. Byrd's widow, Teri Todd, also testified at trial that Byrd was an "inventive person", and came up with the idea for a "backup service for PCs." Dkt. #736, Ex. 1 at 880:16-881:12. However, Plaintiff argues, and the Court agrees, that Todd is a party with a financial interest in this litigation.[6] Todd, Atwood, and Campos reached an agreement with Defendants, and memorialized their agreement in writing. *See* Dkt. #732, Ex. Y. In that agreement, Defendants agreed to pay these witnesses $200,000 up front and an additional $140,000 once the litigation is over, plus expenses and legal fees. *Id*. In exchange for the payment, Todd, Atwood, and Campos assigned their interests in the patents-in-suit to Defendants. *Id*. The agreement contains a provision in which Todd, Atwood, and Campos

---

[5] Plaintiff also contends that Defendants failed to prove by clear and convincing evidence that Byrd's idea was not in the prior art. Specifically, Plaintiff cites four references that appear on the face of the '943 Patent, in which their titles reflect the presence of a general concept of remote backup service. Defendants contend that these exhibits were never entered into evidence and did not appear before the jury; however, this is not accurate. While the four prior art references themselves are not in evidence, the '943 Patent was admitted and before the jury in both Plaintiff's and Defendants' exhibit lists. Dkt. #715, #716. The titles of these references alone indicate the presence of Byrd's idea for online backup existed in the prior art. Further, it is Defendants' burden to show by clear and convincing evidence that Byrd's generic idea was not in the prior art. Where the alleged co-inventor "has not established that [the contribution] was not in the prior art," he has failed to establish co-inventorship. *Tavory*, 297 F. App'x at 980. The Court finds that there was no evidence presented by Defendants on this topic, and no reasonable jury could have concluded that Byrd's idea for remote online backup services was not in the prior art.

[6] Even if Todd wasn't a person with a financial interest in the litigation, Todd offers testimony in place of Byrd, who is unable to testify, and thus, her testimony should be treated as that of a co-inventor, which cannot be used for the purposes of corroboration either.

"agree to cooperate with any or all of the Assignees to establish that the Unnamed Co-Inventors are true co-inventors of the patents and patent applications." *Id*. The parties confirmed at trial that as part of the agreement they were required to cooperate, and came to trial to testify that they were co-inventors. Dkt. #732, Ex. 1 at 853:13-16; 565:6-18; 560:21-24. The Court finds that this agreement and the payments made make Todd an interested party, and the Federal Circuit has established "a clear requirement that [] oral testimony by interested parties must be corroborated by documentary testimony" to establish the invalidity of a patent. *Lacks Indus.*, 322 F.3d at 1350. In addition, the testimony of Doss is insufficient to corroborate Byrd's co-inventorship claim. The record indicates that Doss testified to what he heard from Campos who heard from Byrd about "an idea that Don Atwood and Jack Byrd had had while working together in Colorado." Dkt. #736, Ex. 1 at 1036:14-21. The Federal Circuit recently found that the testimony of a witness who: (1) the alleged co-inventor did not talk to about his contribution to the invention; (2) "did not [] work on the invention"; and (3) was not present for any meetings involving conception, was insufficient as a matter of law to establish co-inventorship. *Weaver*, 467 F. App'x at 881. Doss did not talk to Byrd about his contribution to the invention, did not work on the invention, and did not attend any meeting involving conception. Thus, his testimony is insufficient as a matter of law to corroborate Byrd's status as a co-inventor.

Finally, none of the testimony indicates that Byrd "disclosed [to them] his completed thought expressed in such clear terms as to enable those skilled in the art to make the invention." *Coleman*, 754 F.2d at 359; *Burroughs*, 40 F.3d at 1228. Byrd never revealed any thoughts to Doss, whose information came solely from Campos. Todd cannot remember any specific details regarding Byrd's ideas that were disclosed to her. Further, the evidence given by Atwood and Campos reveals that the idea was a work in progress while they were working on it, and neither

witness testified that Byrd disclosed to them thoughts in such clear terms that would allow anyone, skilled in the art or not, to make the invention.

Having found that the oral testimony presented at trial was insufficient to corroborate Byrd's account of conception and claim of co-inventorship, the Court will now turn to the documentary evidence presented at trial. Defendants argue that the May 23, 1992 document authored by Crawford is corroborating evidence of Byrd's contribution as a co-inventor. The document states:

> This proposal is the by-product of an earlier one titled "ACS Online Member Services", March 31, 1992. Specifically, it is in response to Jack Byrd's idea to provide automated offsite backup services for PC users.

Dkt. #736, Ex. 2. This is the only mention of Byrd in the document, and the document goes on to describe an offsite archival, software and information server. The document itself states that it is in response to an earlier proposal on March 31, 1992. Dkt. #732, Ex. B. This March 31, 1992 proposal lists a variety of online member services that could be offered by ACS, one of which included a disaster recovery service.

Read in the light most favorable to Defendants, this May 23, 1992 document can merely corroborate Byrd's "idea to provide automate offsite backup services for PC users." The Court has already determined that there is no evidence that Byrd conceived of a significant portion of the invention, and that his idea for online backup was a suggestion of an idea of a result to be accomplished, rather than means of accomplishing that result. Thus, this document cannot corroborate Byrd's assertions of co-inventorship. Further, Defendants failed to demonstrate that Byrd's idea was not in the prior art. Finally, this document, authored by Crawford, on its face acknowledges that it is a continuation of a prior document, also authored by Crawford, that elaborates on an idea already set out in the March 31, 1992 proposal for a variety of services,

including backup and disaster recovery. The fact that Crawford acknowledges Byrd's idea does not negate the fact that Crawford had a similar idea prior to beginning his discussion with Byrd, Atwood, and Campos in April of 1992. Thus, this document fails to corroborate Byrd's claims of co-inventorship.[7]

Defendants also contend that the Campos documents corroborate Byrd's contributions. As Defendants acknowledge, the Campos documents reflect that the group collaborated on their ideas as a team. The documents do not credit a particular person with any specific idea or contribution, but, rather, assign tasks and other duties to members for their completion. This is precisely why these documents cannot corroborate the claim that Byrd, and only Byrd, is a co-inventor of the patents-in-suit. Nothing in these documents suggests that only Byrd was responsible for the idea of online backup, and, in fact, the documents reflect the opposite. The four individuals did operate as a team, and this illustrates the unreasonableness of the jury verdict, in which the jury concluded that only Byrd should be named a co-inventor on the patents-in-suit. Further, the documents point to no conception on the part of Byrd, or a contribution made by him to the invention. Thus, these documents fail to corroborate Byrd's claims of co-inventorship.

For the foregoing reasons, the Court finds that no reasonable jury could have found that Byrd was a co-inventor of the patents-in-suit. Defendants failed to show by clear and convincing evidence that Byrd conceived of a significant part of the invention. Defendants also failed to provide evidence sufficient to corroborate Byrd's claims of co-inventorship. The jury in this case reached a verdict that simply was not reasonable given the evidence presented at trial.

---

[7] The Court is well aware of its statement made in its order on summary judgment that this document is "strong corroborating evidence" of co-inventorship. However, in light of the testimony and evidence introduced at trial, even in the light most favorable to the Defendants, the Court no longer finds this to be "strong corroborating evidence." The Court's statement in its prior order has no weight in the context of a motion for judgment as a matter of law.

There was simply no basis for the jury to conclude that Byrd was a co-inventor, especially given the fact that the jury found that Atwood was not a co-inventor. Therefore, the Court finds that Plaintiff's motion for judgment as a matter of law is granted.

**CONCLUSION**

For the foregoing reasons, the Court finds Oasis' Motion for Judgment as a Matter of Law Under Rule 50(b) and Alternative Request for a New Trial Under Rule 59(a) (Dkt. #732) is **GRANTED**.

**IT IS SO ORDERED.**
**SIGNED this 8th day of January, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE