# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| OASIS RESEARCH, LLC | § | |
|---|---|---|
| | § | Case No. 4:10-CV-00435 |
| v. | § | Judge Mazzant |
| | § | |
| CARBONITE, INC., EMC CORP., and DECHO CORP. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants EMC Corporation, Decho Corporation, and Carbonite, Inc.'s Motion for Summary Judgment on RICO Counterclaims (Dkt. #595). After reviewing the motion, the responses, and the relevant pleadings, the Court finds Defendants' motion should be denied.

## BACKGROUND

Plaintiff Oasis Research, LLC ("Oasis") asserts counterclaims against Defendants, Carbonite, Inc. ("Carbonite"), Decho Corporation ("Decho"), and EMC Corporation ("EMC"), arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Dkt. #462). Specifically, Oasis contends that Defendants violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). *Id*.

In December 2011, counsel for EMC called Chuk Campos ("Campos"), and informed him of the litigation and that Christopher Crawford had applied for patents relating to online backup (Dkt. #722, Ex. B at 443:3-7; Ex. D, at 76:13-77:2). Subsequently, Campos called Don Atwood ("Atwood") to discuss the calls and litigation. *Id*., Ex. A at 227:6-10, 229:11-23. Both indicated an unwillingness to participate initially, and did not claim at that time that they were inventors. *Id*., Ex. E, PX 41 (Campos stating "if money were not an issue for me right now, the right thing would be to focus our efforts on getting the patent approvals taken away"; Atwood

1

stating "I agree with you, no patent should have issued, however it was, so the game becomes who are we more valuable to in this charade.").

Subsequently, Campos and Atwood were again contacted by Defendants to discuss their potential involvement in the litigation. Oasis argues that Defendants threatened, "badgered," and coerced Campos and Atwood to get involved. Defendants state that they informed Campos and Atwood of the issues in litigation, and notified them that they could be subpoenaed to testify in the litigation regardless of whether they cooperated or not. Campos conveyed to Atwood that working with Defendants would be an "opportunity [for them] to make a few bucks." *Id*., Ex. A 230:23-231:1.

Atwood, Campos, and Teri Todd ("Todd") were subpoenaed to testify during June and July of 2012. A week before these depositions, counsel for Defendants hosted a joint conference call between Atwood, Campos, and counsel for Defendants in which they reviewed the documents and the testimony for the depositions. *Id*., Ex. D, 328:19-330:22, 337:2-338:11, 346:2-11; Ex. A, 250:12-252:16, Ex. B, 649:5-13, 649:19-651:24, 352:9-353:7, 832:25-834:13. Oasis argues that this conference gave the witnesses a preview of each other's testimony.

At Atwood's deposition, Atwood stated that Defendants offered to pay Atwood, Campos, and Todd $75,000 for their testimony approximately 45 days before their depositions. *Id*., Ex. A at 232:6-234:9. Oasis argues that Atwood repeatedly testified that this amount was in exchange "for testimony;" however, Defendants note that Atwood later clarified in his deposition that the payment was a license for his rights under the patents-in-suit. These individuals declined Defendants' "initial offer" because it was too low, "just didn't seem appropriate," and was not reasonable "for what [Defendants] were expecting." *Id*., Ex. A at 233:2-9, 234:5-9; Ex. D at 381:24-382:13, 383:23-384:6. In a written agreement, dated August 30, 2012, Defendants

2

agreed to pay Campos, Atwood, and Todd $200,000 upfront and an additional $140,000 once the litigation is completed, plus expenses and legal fees. *Id.*, Ex. C, PX 517. At trial, the three witnesses indicated that they were required by their agreement to come to trial and testify that they are co-inventors.

Oasis alleges that "the Defense Group pursued a scheme of offering and providing improper inducements to fact witnesses Atwood, Campos, and Todd in exchange for fact testimony and production of 'evidence' that the Defense Group believed would help prove its allegations" (Dkt. #462). The undersigned presided over a trial in this case as to the issues related to inventorship only, which began on March 14, 2013 (Dkt. #683). The jury rendered a verdict on March 22, 2013, finding that each of the patents-in-suit were invalid for failure to add one or more co-inventors, and that Jack Byrd was the only omitted co-inventor (Dkt. #713; #718). When asked to identify which person was proven a co-inventor of that patent, the jury selected Jack Byrd on all four patents and did not select Atwood or Campos. *Id.*

On January 1, 2013, Defendants filed their motion for summary judgment on RICO counterclaims (Dkt. #595). On April 15, 2013, Plaintiff filed its response (Dkt. #722). On April 25, 2013, Defendants filed their reply (Dkt. #723). On May 6, 2013, Plaintiff filed its sur-reply (Dkt. #731).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

"Claims under RICO, 18 U.S.C. § 1962, have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)

(citing *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id*. The predicate acts may be either state or federal crimes; however they must be acts that are criminal in nature. *Id*.

Oasis contends that Defendants have committed two criminal predicate acts. 18 U.S.C. § 201(c)(2) states that it is a crime to "directly or indirectly, give[], offer[], or promise[] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court[.]" Oasis argues that Defendants' conduct throughout this litigation is sufficient to establish a fact issue for the jury to consider whether, under the totality of the circumstances, the contact between Defendants and Atwood, Campos, and Todd and the agreement to compensate the witnesses in exchange for their testimony is sufficient to constitute a crime. There is evidence to indicate that Defendants actively pursued cooperation from Atwood, Campos, and Todd in pursuit of their testimony regarding co-inventorship, that Defendants directly gave, offered, and promised money either "for" or "because of" the testimony that the witnesses gave at both their depositions and at trial. The Court finds that these are issues of material fact, which must be resolved by a jury.

18 U.S.C. § 1512(b)(1) states that it is a crime to use "intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to… influence, delay, or prevent the testimony of any person in an official proceeding." Again, there are material fact issues as to whether Defendants engaged in misleading conduct towards Atwood, Campos, and Todd in order to influence their

testimony, or whether these witnesses were intimidated or corruptly persuaded to influence their testimony.

Defendants further argue that there is no evidence that the Defense Group in this litigation is an "enterprise" as required by the RICO Act. One of the requirements to show a RICO enterprise is that there "must be an ongoing organization." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). The Fifth Circuit has held that an association that has "as its purpose a single, relatively short-lived goal" that was "formed for the immediate accomplishment of one specific end… lack[s] the continuity required to bring it within RICO's ambit." *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). Defendants argue that the Defense Group was formed for the short-lived purpose of this litigation, and it has accomplished its goal, and it therefore, lacks continuity to constitute an "ongoing organization." Further, Defendants direct the Court to consider *In re Burzynski*, 989 F.2d 733, 742-744 (5th Cir. 1993), in which the Fifth Circuit found no long-term criminal activity and no legally sufficient criminal enterprise where the alleged acts occurred during the course of a litigation that lasted more than five years. Oasis asserts in response that *In re Burzynski* involved predicate acts that took place in a past litigation that ended. *Id*. In the present case, the litigation is ongoing, and Defendants have declared that they "obtained [] Atwood's, Campos's, and Todd's causes of action against Oasis, Crawford and Intellectual Ventures for fraud and unjust enrichment," indicating that Defendants could continue to pursue claims against these entities (Dkt. #595 at 8). Consequently, the Court finds that there is a fact issue as to whether the Defense Group constitutes an "enterprise."

Defendants also argue that there is no pattern of activity that would "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S.

229, 239 (1989). Oasis must demonstrate both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity. *Id*. Oasis has demonstrated that the acts are related to each other, in that they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240. As noted above, Oasis also has demonstrated evidence that indicates Defendants can continue to pursue claims either in this litigation or in future litigation using the testimony and evidence allegedly improperly procured from Atwood, Campos, and Todd. This is sufficient to demonstrate that there is a fact issue as to whether there is a pattern of activity sufficient to amount to or pose a threat of continued criminal activity. Accordingly, the Court finds Defendants' motion for summary judgment on Plaintiff's RICO claims is denied.

## CONCLUSION

Based on the foregoing, the Court finds that Defendants EMC Corporation, Decho Corporation, and Carbonite, Inc.'s Motion for Summary Judgment on RICO Counterclaims (Dkt. #595) is hereby **DENIED**.

**SIGNED** this 5th day of February, 2015.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE