# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | |
| | § | |
| v. | § | CASE NO. 4:10-CV-435 |
| | § | consolidated with |
| | § | |
| | § | CASE NO. 4:12-CV-526 |
| | § | Judge Mazzant |
| EMC CORP., ET AL | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Motion of Defendants EMC Corporation and Decho Corporation to Amend the Court's Order Compelling Production of Documents to Certify It for Interlocutory Appeal (Dkt. #987). After reviewing the motion and the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

The action before the Court consists of patent infringement claims and Racketeer Influenced and Corrupt Organizations Act ("RICO") counterclaims. Plaintiff Oasis Research, LLC ("Oasis") asserts counterclaims against Defendants, Carbonite, Inc. ("Carbonite"), Decho Corporation, and EMC Corporation (collectively with Decho, Corporation, "EMC") arising under RICO, 18 U.S.C. § 1961 *et seq.* (Dkt. #462). Specifically, Oasis contends that Defendants violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (Dkt. #462).

In December 2011, counsel for EMC called Chuk Campos ("Campos"), informed him of the litigation, and that Christopher Crawford ("Crawford") had applied for patents relating to online backup (Dkt. #722, Ex. B, at 443:3-7; Ex. D, at 76:13-77:2). Subsequently, Campos called Don Atwood ("Atwood") to discuss the calls and litigation (Dkt. #722, Ex. A, at 227:6-10, 229:11-23). Both indicated an unwillingness to participate initially, and did not claim at that

1

time that they were inventors. (Dkt. #722, Ex. E, PX 41) (Campos stating "if money were not an issue for me right now, the right thing would be to focus our efforts on getting the patent approvals taken away;"; Atwood stating "I agree with you, no patent should have issued, however, it was, so the game becomes who are we more valuable to in this charade.").

Subsequently, Campos and Atwood were again contacted by Defendants to discuss their potential involvement in the litigation. Oasis argues that Defendants threatened, "badgered," and coerced Campos and Atwood to get involved. Defendants state that they informed Campos and Atwood of the issues in the litigation, and notified them that they could be subpoenaed to testify in the litigation, regardless of whether they cooperated or not. Campos conveyed to Atwood that working with Defendants would be an "opportunity [for them] to make a few bucks." (Dkt. #722, Ex. A, at 230:23-231:1).

Atwood, Campos, and Teri Todd ("Todd") were subpoenaed to testify during June and July of 2012. A week before these depositions, counsel for Defendants hosted a joint conference call between Atwood, Campos, and counsel for Defendants in which they reviewed the documents and the testimony for the depositions. (Dkt. #722, Ex. D, at 328:19-330:22, 337:2-338:11, 346:2-11; Ex. A, at 250:12-252:16, Ex. B, 649:5-13, 649:19-651:24, 832:25-834:13). Oasis argues that this conference gave the witnesses a preview of each other's testimony.

At Atwood's deposition, Atwood stated that Defendants offered to pay Atwood, Campos, and Todd $75,000 for their testimony approximately 45 days before their depositions (Dkt. #722, Ex. A, at 232:6-234:9). Oasis argues that Atwood repeatedly testified that this amount was in exchange "for testimony;" however, Defendants note that Atwood later clarified in his deposition that the payment was license for his rights under the patents-in-suit. These individuals declined Defendants' "initial offer" because it was too low, "just didn't seem appropriate," and was not

2

reasonable "for what [Defendants] were expecting." (Dkt. #722, Ex. A, at 233:2-9, 234:5-9; Ex. D, at 381:24-382:13, 383:23-384:6). In a written agreement, dated August 30, 2012, Defendants agreed to pay Campos, Atwood, and Todd $200,000 upfront and an additional $140,000 once the litigation was completed, plus expenses and legal fees (Dkt. #722, Ex. C, PX 517). At trial, the three witnesses indicated that they were required by their agreement to come to trial and testify that they were co-inventors.

Oasis alleges that "the Defense Group pursued a scheme of offering and providing improper inducements to fact witnesses Atwood, Campos, and Todd in exchange for fact testimony and production of 'evidence' that the Defense Group believed would help prove its allegations" (Dkt. #462). On January 29, 2013, Defendants filed their motion for summary judgment on RICO counterclaims (Dkt. #595). On April 15, 2013, Plaintiff filed its response (Dkt. #722). On April 25, 2013, Defendants filed their reply (Dkt. #723). On May 6, 2013, Plaintiff filed its sur-reply (Dkt. #731). On February 5, 2015, the Court denied Defendants' motion for summary judgment finding "that there is a fact issue as to whether there is a pattern of activity sufficient to amount to or post a threat of continued criminal activity." (Dkt. #749 at p. 7).

On May 22, 2015, Plaintiff wrote Defendants requesting the production of documents relating to Defendants' co-inventorship claims, and the payments allegedly made or offered in connection with Plaintiff's RICO allegations (Dkt. #823 at p. 3). Specifically, Oasis requested:

> All documents related to any payment or offer of payment to, or for the benefit of, Charles Campos, Don Atwood, Teri Todd, and/or their counsel, including communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.
>
> All communications relating to Charles Campos, Don Atwood, Teri Todd, Donald Doss, Jack Byrd, Robert Lynch, and/or any of their attorney/agents, including

> communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.
>
> All communications relating to the inventorship of the Patents-in-Suit, including any communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.
>
> All documents related to any potential causes of action against Oasis, [Christopher] Crawford, and/or Intellectual Venture including communications internal to Carbonite/EMC as well as communications between any members of the joint Defense Group.
>
> Defendants joint defense agreement in this case and all documents related to any party joining or withdrawing from the joint defense group.

(Dkt. #823 at pp. 3-4). Defendants refused to produce the documents asserting attorney-client privilege, common interest privilege, and the work product doctrine. Plaintiff alleged that the documents should be produced under the crime-fraud exception of the attorney-client privilege.

On June 23, 2015, Plaintiff filed its Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement (Dkt. #823). On June 30, 2015, Defendants filed their responses (Dkt. #838; Dkt. #840). On July 2, 2015, Plaintiff filed its reply (Dkt. #843). On July 6, 2015, Defendants filed their sur-replies (Dkt. #856; Dkt. #858). On July 13, 2015, EMC filed their Unopposed Motion to Allow for Supplemental Briefing on Plaintiff's Motion to Compel (Dkt. #870; Dkt. #871). The Court granted EMC's motion on July 14, 2015 (Dkt. #880). On July 17, 2015, Plaintiff filed its response to EMC's supplemental briefing (Dkt. #888). On July 22, 2015, the Court granted in part and denied in part Plaintiff's Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement (Dkt. #898). The Court required Defendants to produce the Joint Defense Agreement to Plaintiff at that time, and required

4

Defendants to produce for *in camera* inspection documents related to the RICO allegations (*See* Dkt. #898). However, the Court found that the documents related to potential causes of action against Oasis, Crawford, and/or Intellectual Ventures were privileged, as those communications were not relevant to Plaintiff's RICO counterclaims (*See* Dkt. #898).

On July 24, 2015, the Court held a telephone conference with the parties to clarify its Order. On July 28, 2015, EMC filed notice with Court that it complied with the Court's Order, and produced the Joint Defense Agreement to Plaintiff (Dkt. #922). On August 11, 2015, EMC filed notice with the Court that it complied with the Court's Order, and produced the relevant documents for *in camera* review by the Court (Dkt. #936).

On August 28, 2015, after reviewing the *in camera* submissions, the Court ordered that EMC produce 357 documents to Plaintiff, as they met the criteria under the crime-fraud exception of the attorney-client privilege, by September 4, 2015 (Dkt. #968). On September 3, 2015, the Court received a letter from EMC's counsel informing the Court that they did not agree with the Court's ruling, and intended to seek appellate review of the Court's Order (Dkt. #989, Exhibit E).

On September 4, 2015, EMC filed the instant motion arguing that the Court's Order compelling the production of documents should be certified to the Federal Circuit for interlocutory appeal (Dkt. #987). Specifically, EMC asserts that the Court should submit the following questions to the Federal Circuit:

> (a) [W]hether the crime-fraud exception to the attorney-client privilege may be invoked on the basis of a patent Assignment Agreement, in light of the Federal Circuit's express recognition that such agreements are "very common" and do not demonstrate that a party has paid for witnesses' testimony (*See* Dkt. #840 at p. 9) (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998)); and
> (b) [W]hether the common-place investigatory steps undertaken here by EMC (including interviewing witnesses, asking them documents, and informing

5

them that they can be subpoenaed) support the application of the crime-fraud exception to attorney-client privilege?

(Dkt. #987 at pp. 1-2). On September 8, 2015, Plaintiff filed its response (Dkt. #989). On September 9, 2015, EMC filed their reply (Dkt. #993).

## ANALYSIS

Under 28 U.S.C. § 1292(b), the Court may certify its order compelling document production for interlocutory appeal if it determines "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" EMC alleges that they have met this standard, and the Court should certify its Order.

As stated above, an order is appropriate for certification if (1) it involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Litton Sys., Inc. v. Raytheon Co.*, 979 F.2d 215, 1992 WL 276681, at *2 (Fed. Cir. Aug. 4, 1992). Interlocutory appeals under 28 U.S.C. § 1292(b) "are rarely granted." *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003); *Jang v. Bos. Sci. Corp.*, 767 F.3d 1334, 1339 (Fed. Cir. 2014). ("[O]ur court grants interlocutory review in [] multi-faceted patent cases only rarely."). "Both the legislative history of Section 1292(b) and the case law emphasize that appellate courts should only grant interlocutory appeals under rare circumstances." *Fujitsu Ltd. v. Tellabs Inc.*, 539 F. App'x 1005, 1006 (Fed. Cir 2013); *see also Clark-Dietz & Assocs. – Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional."). "Satisfying these three statutory criteria is not always sufficient, 'as district court

judges have unfettered discretion to deny certification even when all three are satisfied." *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:07-cv-341, 2011 WL 738871, at *4 (E.D. Tex. Feb. 23, 2011) (internal citation omitted), *judgment vacated on other grounds by Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920 (May 26, 2015).

Plaintiff first argues that EMC's motion is untimely because it was filed months after the Court's original decision to apply the crime-fraud exception was entered (Dkt. #989 at p. 8). While there is no statutory deadline for the filing of the request for certification, there is a nonstatutory requirement that the request for certification "be filed in the district within a *reasonable time* after the order sought to be appealed." *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 675-76 (7th Cir. 2000) (citing *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (emphasis in original)). Without good reason for delay, "a district judge should not grant an inexcusably dilatory request" for interlocutory certification. *Richardson Elecs., Ltd.*, 202 F.3d at 958 (holding that "delay alone was sufficient grounds for us to refuse our permission to appeal" because "no excuse for the defendants' taking two months to appeal has been offered except the patently inadequate one that the case had been 'largely dormant' for nine years, requiring the defendant's lawyer to refamiliarize himself with it…"). Other courts that have considered this issue have found a delay of two months or more to be untimely. *See Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990); *Ferraro v. Sec'y of HHS*, 780 F. Supp. 978 (E.D.N.Y. 1992) (denying motion to certify as untimely after plaintiff's two-and-one-half-month delay); *Green v. City of New York*, No. 05-CV-0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (denying motion for certification of interlocutory appeal where no justification was offered for two-month delay); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ, 2001 WL 883303 (S.D. Fla. Jan. 26, 2001) (denying motion to certify as untimely after

forty-six day delay). EMC first informed the Court that they would not comply with the Court's Order, and of their intent to seek appellate review on September 3, 2015, one day before their production deadline. EMC has offered no explanation or justification for their delay. Additionally, EMC was well-aware that the RICO trial was scheduled to begin on October 26, 2015, seven weeks after they filed their motion. Therefore, the Court finds that the motion is untimely.

Additionally, the Court finds that the elements for certification of interlocutory appeal are not met here. First, the Court's order compelling production of documents under the crime-fraud exception to attorney-client privilege does not raise a controlling question of law. An order may only be certified for interlocutory appeal under § 1292(b) if it turns on "a pure issue of law, i.e., a question the appellate court can efficiently rule on without making an intensive inquiry into the record." *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511, 2009 WL 1797996, at *2 (E.D. Tex. June 24, 2009) (citations omitted); *see also IP Innovation LLC v. Google Inc.*, No. 2:07-CV-503-RRR, 2010 WL 691130 (E.D. Tex. Jan. 6, 2010) (Rader, J. sitting by designation) (denying certification because the question was not a "pure issue of law"). "1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). EMC contends that there are two controlling issues of law: whether the crime-fraud exception may be invoked (1) on the basis of a patent Assignment Agreement or (2) on the basis of common-place investigatory steps (Dkt. #987 at pp. 1-2). The Court agrees with Plaintiff that neither of those questions is "controlling," or an issue of pure law. "[A] question of law is 'controlling' within the meaning of Section 1292(b) only if [the] resolution of that issue could

have an immediate impact on the course of the litigation." *Fujitsu*, 539 F. App'x at 1007. In its *in camera* review, the Court did not rely on any particular action or any singular act to justify its application of the crime-fraud exception, but rather the totality of Defendants' actions, the alleged co-inventor testimony, and the record evidence before the Court. Therefore, even if the appellate court were to conclude that the particular actions identified in isolation by Defendants do not justify the application of the crime-fraud exception, it would not change the Court's conclusion because the Court did not view the evidence in isolation, but rather in totality of Defendants' actions. Therefore, the Court finds that EMC's questions do not present an issue of controlling law.

Additionally, even if EMC's questions were controlling, they are not pure issues of law. Rather, EMC's interlocutory review involves the Court's fact-specific evaluation of the patent Assignment Agreement, and any of a number of EMC, and other Joint Defense Group, actions to purportedly induce the alleged co-inventors to come forward and testify in support of Defendants' inventorship defense. *See, e.g., Mae v. Hurst*, No. 14-60864, 2015 WL 3463001, at *3 (5th Cir. June 2, 2015) (affirming the district court's refusal to certify an interlocutory appeal since "[a]ppelants' argument amount[ed] to a fact-specific dispute over the application of the discovery rules"). Those are not issues of "pure law," but would require an appellate court to make a fact-intensive inquiry into a large evidentiary record, which is not the purpose of interlocutory review. The Court finds that any difference of opinion as to the importance of EMC's predicate acts would require an intensive analysis of the underlying facts of the RICO allegations; and therefore, do not present an issue of pure law.

Finally, an immediate appeal will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The RICO trial is set to begin in seven weeks on October 26,

2015, and EMC now asks the Court to certify fact-intensive questions for interlocutory review. The resolution of those questions would not advance the ultimate termination of Oasis' RICO claims. In its motion for a stay, EMC argues that even if it were successful in its order regarding the Court-ordered production, Oasis' claims would still go forward, and "Oasis has the information it needs to litigate the case." (*See* Dkt. #986 at p. 8). Therefore, the Court finds that an appeal of the Court's discovery order would not advance the ultimate termination of the litigation.

EMC cites *Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009), for the proposition that interlocutory review is appropriate in this case. However, the Court agrees with Plaintiff that *Mohawk* does not support that proposition. In *Mohawk*, the Supreme Court confirmed that there was no collateral appellate review of a district court's application of the crime-fraud exception. 558 U.S. at 105, 114. Although the Supreme Court stated that interlocutory review was among several possible remedies for reviewing a novel issue of law decided by a trial court, it also stated that "[m]ost district court ruling on [matters of privilege] involve the routine application of settled legal principles [and] are unlikely to be reversed on appeal, particularly when they rest on factual determinations for which appellate deference is the norm." *Mohawk Indus.*, 558 U.S. at 110. Although EMC argues that "Oasis' underlying RICO allegations, and its resulting theory under the crime-fraud exception, are novel, and have huge ramifications, because they call into question whether ordinary litigation activities, and common types of agreements, can vitiate the attorney-client privilege[,]" they have not presented evidence demonstrating that the Court's application of the crime-fraud exception presents a novel question of law (Dkt. #987 at p. 2).[1] Therefore, the Court finds that interlocutory review is not appropriate in this case.[2]

---

[1] EMC seems to be arguing about whether the RICO allegations that Plaintiff has asserted against Defendants can stand. EMC cites *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998), as its source for why

**CONCLUSION**

It is therefore **ORDERED** that Motion of Defendants EMC Corporation and Decho Corporation to Amend the Court's Order Compelling Production of Document to Certify It for Interlocutory Appeal (Dkt. #987) is hereby **DENIED**.

**SIGNED this 11th day of September, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

the Court should certify its questions to the Federal Circuit. However, *Ethicon* does not pertain to the crime-fraud exception of the attorney-client privilege. The Court finds that EMC is attempting to appeal the ultimate issue of the RICO case—whether Defendants' conduct was permissible or fraudulent. That is not the purpose of a limited interlocutory appeal.

[2] In *Mohawk Industries*, the Supreme Court stated that "appellate courts can remedy improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protect material and its fruits are excluded from the evidence." 558 U.S. at 109. Because the Court's disclosure order does not deal with a novel issue of law, the Court finds that the appellate court could remedy an improper disclosure of privilege material, if any, upon review of the final judgment.