# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| OASIS RESEARCH, LLC | § | |
| | § | |
| v. | § | CASE NO. 4:10-CV-435 |
| | § | consolidated with |
| | § | |
| | § | CASE NO. 4:12-CV-525 |
| | § | CASE NO. 4:12-CV-526 |
| | § | Judge Mazzant |
| CARBONITE, INC., ET AL | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motion of Defendants Decho Corporation and EMC Corporation to Stay the Court's Order Compelling Production of Documents Pending Appeal (Dkt. #986) and Carbonite, Inc's Motion to Temporarily Stay Order to Produce Privileged Documents [ECF No. 969] (Dkt. #988). After reviewing the relevant pleadings, the Court finds that the motions should be denied.

## BACKGROUND

The action before the Court consists of patent infringement claims and Racketeer Influenced and Corrupt Organizations Act ("RICO") counterclaims. Plaintiff Oasis Research, LLC ("Oasis") asserts counterclaims against Defendants, Carbonite, Inc. ("Carbonite"), Decho Corporation, and EMC Corporation (collectively with Decho, Corporation, "EMC") arising under RICO, 18 U.S.C. § 1961 *et seq.* (Dkt. #462). Specifically, Oasis contends that Defendants violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (Dkt. #462).

In December 2011, counsel for EMC called Chuk Campos ("Campos"), informed him of the litigation, and that Christopher Crawford ("Crawford") had applied for patents relating to online backup (Dkt. #722, Ex. B, at 443:3-7; Ex. D, at 76:13-77:2). Subsequently, Campos

1

called Don Atwood ("Atwood") to discuss the calls and litigation (Dkt. #722, Ex. A, at 227:6-10, 229:11-23). Both indicated an unwillingness to participate initially, and did not claim at that time that they were inventors. (Dkt. #722, Ex. E, PX 41) (Campos stating "if money were not an issue for me right now, the right thing would be to focus our efforts on getting the patent approvals taken away;"; Atwood stating "I agree with you, no patent should have issued, however, it was, so the game becomes who are we more valuable to in this charade.").

Subsequently, Campos and Atwood were again contacted by Defendants to discuss their potential involvement in the litigation. Oasis argues that Defendants threatened, "badgered," and coerced Campos and Atwood to get involved. Defendants state that they informed Campos and Atwood of the issues in the litigation, and notified them that they could be subpoenaed to testify in the litigation, regardless of whether they cooperated or not. Campos conveyed to Atwood that working with Defendants would be an "opportunity [for them] to make a few bucks." (Dkt. #722, Ex. A, at 230:23-231:1).

Atwood, Campos, and Teri Todd ("Todd") were subpoenaed to testify during June and July of 2012. A week before these depositions, counsel for Defendants hosted a joint conference call between Atwood, Campos, and counsel for Defendants in which they reviewed the documents and the testimony for the depositions. (Dkt. #722, Ex. D, at 328:19-330:22, 337:2-338:11, 346:2-11; Ex. A, at 250:12-252:16, Ex. B, 649:5-13, 649:19-651:24, 832:25-834:13). Oasis argues that this conference gave the witnesses a preview of each other's testimony.

At Atwood's deposition, Atwood stated that Defendants offered to pay Atwood, Campos, and Todd $75,000 for their testimony approximately 45 days before their depositions (Dkt. #722, Ex. A, at 232:6-234:9). Oasis argues that Atwood repeatedly testified that this amount was in exchange "for testimony;" however, Defendants note that Atwood later clarified in his deposition

2

that the payment was license for his rights under the patents-in-suit. These individuals declined Defendants' "initial offer" because it was too low, "just didn't seem appropriate," and was not reasonable "for what [Defendants] were expecting." (Dkt. #722, Ex. A, at 233:2-9, 234:5-9; Ex. D, at 381:24-382:13, 383:23-384:6). In a written agreement, dated August 30, 2012, Defendants agreed to pay Campos, Atwood, and Todd $200,000 upfront and an additional $140,000 once the litigation was completed, plus expenses and legal fees (Dkt. #722, Ex. C, PX 517). At trial, the three witnesses indicated that they were required by their agreement to come to trial and testify that they were co-inventors.

Oasis alleges that "the Defense Group pursued a scheme of offering and providing improper inducements to fact witnesses Atwood, Campos, and Todd in exchange for fact testimony and production of 'evidence' that the Defense Group believed would help prove its allegations" (Dkt. #462). On January 29, 2013, Defendants filed their motion for summary judgment on RICO counterclaims (Dkt. #595). On April 15, 2013, Plaintiff filed its response (Dkt. #722). On April 25, 2013, Defendants filed their reply (Dkt. #723). On May 6, 2013, Plaintiff filed its sur-reply (Dkt. #731). On February 5, 2015, the Court denied Defendants' motion for summary judgment finding "that there is a fact issue as to whether there is a pattern of activity sufficient to amount to or post a threat of continued criminal activity." (Dkt. #749 at p. 7).

On May 22, 2015, Plaintiff wrote Defendants requesting the production of documents relating to Defendants' co-inventorship claims, and the payments allegedly made or offered in connection with Plaintiff's RICO allegations (Dkt. #823 at p. 3). Specifically, Oasis requested:

> All documents related to any payment or offer of payment to, or for the benefit of, Charles Campos, Don Atwood, Teri Todd, and/or their counsel, including communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.

3

> All communications relating to Charles Campos, Don Atwood, Teri Todd, Donald Doss, Jack Byrd, Robert Lynch, and/or any of their attorney/agents, including communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.
>
> All communications relating to the inventorship of the Patents-in-Suit, including any communications internal to EMC/Carbonite as well as communications between any members of the joint Defense Group.
>
> All documents related to any potential causes of action against Oasis, Crawford, and/or Intellectual Venture including communications internal to Carbonite/EMC as well as communications between any members of the joint Defense Group.
>
> Defendants joint defense agreement in this case and all documents related to any party joining or withdrawing from the joint defense group.

(Dkt. #823 at pp. 3-4). Defendants refused to produce the documents asserting attorney-client privilege, common interest privilege, and the work product doctrine. Plaintiff alleged that the documents should be produced under the crime-fraud exception to the attorney-client privilege.

On June 23, 2015, Plaintiff filed its Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement (Dkt. #823). On June 30, 2015, Defendants filed their responses (Dkt. #838; Dkt. #840). On July 2, 2015, Plaintiff filed its reply (Dkt. #843). On July 6, 2015, Defendants filed their sur-replies (Dkt. #856; Dkt. #858). On July 13, 2015, EMC filed their Unopposed Motion to Allow for Supplemental Briefing on Plaintiff's Motion to Compel (Dkt. #870; Dkt. #871). The Court granted EMC's motion on July 14, 2015 (Dkt. #880). On July 17, 2015, Plaintiff filed its response to EMC's supplemental briefing (Dkt. #888). On July 22, 2015, the Court granted in part and denied in part Plaintiff's Motion to Compel Defendants to Produce Documents Related to Alleged Co-Inventors Under the Crime-Fraud Exception to the Attorney-Client Privilege and to Compel Production of Defendants' Joint Defense Agreement (Dkt. #898). The Court required

Defendants to produce the Joint Defense Agreement to Plaintiff at that time, and required Defendants to produce for *in camera* inspection documents related to the RICO allegations. (*See* Dkt. #898). However, the Court found that the documents related to potential causes of action against Oasis, Crawford, and/or Intellectual Ventures were privileged, as those communications were not relevant to Plaintiff's RICO counterclaims (*See* Dkt. #898).

On July 24, 2015, the Court held a telephone conference with the parties to clarify its Order. On July 28, 2015, EMC filed notice with Court that it complied with the Court's Order, and produced the Joint Defense Agreement to Plaintiff (Dkt. #922). On August 11, 2015, EMC filed notice with the Court that it complied with the Court's Order, and produced the relevant documents for *in camera* review by the Court (Dkt. #936). Also on August 11, 2015, Carbonite filed notice with the Court that it complied with the Court's Order, and produced the relevant documents for its *in camera* review (Dkt. #934).

On August 28, 2015, after reviewing the *in camera* submissions, the Court ordered that EMC produce 357 documents to Plaintiff, as they met the criteria under the crime-fraud exception of the attorney-client privilege, by September 4, 2015 (Dkt. #968). Also on August 28, 2015, the Court ordered that Carbonite produce 215 documents to Plaintiff as they met the criteria under the crime-fraud exception of the attorney-client privilege by September 4, 2015 (Dkt. #969). On September 3, 2015, the Court received a letter from EMC's counsel informing the Court that Defendants did not agree with the Court's ruling, and they intended to seek appellate review of the Court's Orders (Dkt. #989, Exhibit E).

On September 4, 2015, EMC filed their motion to certify the Court's Order for interlocutory review, arguing that the Court's Order compelling the production of documents

should be certified to the Federal Circuit for interlocutory appeal (Dkt. #987). Specifically, EMC asserted that the Court should submit the following questions to the Federal Circuit:

(a) [W]hether the crime-fraud exception to the attorney-client privilege may be invoked on the basis of a patent Assignment Agreement, in light of the Federal Circuit's express recognition that such agreement are "very common" and do not demonstrate that a party has paid for witnesses' testimony (*See* Dkt. #840 at p. 9) (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998)); and
(b) [W]hether the common-place investigatory steps undertaken here by EMC (including interviewing witnesses, asking them documents, and informing them that they can be subpoenaed) support the application of the crime-fraud exception to attorney-client privilege?

(Dkt. #987 at pp. 1-2). Also on September 4, 2015, EMC filed their Motion to Stay the Court's Order Compelling Production of Documents Pending Appeal (Dkt. #986). On September 4, 2015, Carbonite filed its Motion to Temporarily Stay Order to Produce Privileged Documents (Dkt. #988). On September 8, 2015, Plaintiff filed its response to the motions (Dkt. #989). On September 9, 2015, Defendants filed their replies (Dkt. #993; Dkt. #995).

## LEGAL STANDARD

District courts have the inherent power to stay proceedings pending before them, but this power is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re M.J. Beebe*, 56 F.3d 1384, 1995 WL 337666, at *2 (5th Cir. May 15, 1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts determining whether to issue a stay pending appeal may consider factors such as (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm absent a stay; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). In making its determination,

"[e]ach factor need not be given equal weight." *Standard Havens Prods., Inc.*, 897 F.2d at 512. Where "there is even a fair possibility that the stay…will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being require to go forward." *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'"(citation omitted)).

## ANALYSIS

Carbonite asserts that the Court should grant a stay of the Court's Order compelling production of documents under the crime-fraud exception of the attorney-client privilege as it seeks a writ of mandamus with the Federal Circuit (Dkt. #988 at p. 2). Carbonite asserts that requiring it to produce privileged documents while seeking appellate review of the Court's Order would vanquish its appellate rights (Dkt. #988 at p. 2). EMC asserts that "[a] stay pending appeal is warranted to avoid the very harm that is the focus of the appeal—the disclosure of [the] privileged documents." (Dkt. #986 at p. 1).

In order to stay a proceeding the movant must first demonstrate a likelihood of success on the merits. *In re First S. Sav. Ass'n*, 820 F.2d at 704. The Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. Unit A June 1981). Defendants assert that the Court's Order raises a significant legal question pertaining to the crime-fraud exception: "whether the attorney-client

privilege can be vitiated by [] routine litigation activity[.]" (Dkt. #986 at p. 2; *see* Dkt. #988 at pp. 3-6).[1] However, the Court agrees with Plaintiff that Defendants are confusing their substantive argument regarding the RICO allegations with the Court's limited piercing of the attorney-client privilege for discovery purposes.[2] Defendants seem to be arguing about whether the RICO allegations that Plaintiff has asserted against Defendants can stand. Defendants cite to *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1459 (Fed. Cir. 1998), as it source for why the Court should grant its stay pending appellate review. However, *Ethicon* does not pertain to the crime-fraud exception of the attorney-client privilege. The Court finds that Defendants are attempting to appeal the ultimate issue of the RICO case—whether Defendants' conduct was permissible or fraudulent.

Review of the Court's determination regarding attorney-client privilege is a limited review. *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003) ("[T]he clearly erroneous standard of review applies to the district court's factual findings. Still, '[w]e review the application of the controlling law de novo.'"). The appeal does not go to the merits of Plaintiff's RICO case, and

---

[1] Carbonite asserts that "the court must first consider whether the allegedly-criminal activities were in furtherance of an 'illegitimate' or 'sham' claim or defense under the *Noerr-Pennington* doctrine." (Dkt. #988 at p. 4) (citing *In re Burlington N., Inc.*, 822 F.2d 518, 525 (5th Cir. 1987)). As of the time of the Court's initial order requiring that Defendants submit documents for an *in camera* inspection under the crime-fraud exception, Defendants had not pleaded a defense under *Noerr-Pennington*. Defendants have since filed Motions for Leave to Amend Its Answer (Dkt. #914; Dkt. #916) on July 27, 2015, however, the Court has not yet ruled on these motions. Therefore, the Court finds that Carbonite's argument is inapplicable; as Defendants had not pleaded their *Noerr-Pennington* defense at the time the Court made its relevant inquiry.

[2] The Court agrees with Defendants that "[t]he attorney-client privilege is sacrosanct in the practice of law," (Dkt. #988 at p. 3; *see* Dkt. # 986 at pp. 2-3) which "should be invaded only in narrow, rare circumstances where the privilege holder engaged in "egregious abuses of the protections that the privilege affords." (Dkt. #988 at p. 3 (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005)). However, the crime-fraud exception applies when "the movant can make a *prima facie* case showing (1) a crime or fraud has been committed, and (2) the privileged materials are reasonably related to the furthering of the crime or fraud." *In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005). To make a necessary *prima facie* showing for the application of the crime-fraud exception, the proponent of the evidence must produce evidence "such as will suffice until contradicted and overcome by other evidence…a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *Id.* Plaintiffs have alleged that Defendants committed various RICO violations under the guise of the Joint Defense Group. The Court reviewed all documents submitted by the Defendants in their *in camera* submissions, and with all of the evidence available to the Court, determined that a limited amount of documents received were subject to production under the crime-fraud exception to the attorney-client privilege regarding the RICO allegations.

8

only requires "a showing of a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989). Defendants have the opportunity to argue why their conduct does not violate RICO to a jury, and to the extent that Defendants are unhappy with the jury verdict, they will have the opportunity to appeal at that time.[3]

The Court also agrees with Plaintiff that the balance of the equitable factors weigh against granting a stay. When determining whether to grant a stay, a court must also weigh equitable factors such as the following: (1) whether the movant will suffer irreparable harm absent a stay; (2) whether the non-movant will suffer injury if the stay is granted; and (3) whether a stay serves the public interest. *See In re First S. Sav. Ass'n*, 820 F.2d at 704. Defendants assert that they will suffer irreparable harm if the Court does not grant a stay because the Court's Order pertains to the disclosure of attorney-client privileged documents, which Defendants assert should not be disclosed. Defendants rely upon the notion that "[j]ust as toothpaste cannot be put back in the tube, privileged documents once disclosed pursuant to court order lose their privileged status." (Dkt. #993 at p. 4). However, the Court finds Defendants' arguments to be inapposite to the conclusion reached by the Supreme Court in *Mohawk*.[4] The

---

[3] Defendants use *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), for the proposition that the Court should stay the case and certify the case for an interlocutory appeal. However, the Court disagrees with Defendants that *Mohawk* stands for that proposition. Although the Court in *Mohawk* discussed that a district court could submit a novel question of law to the appellate court for interlocutory appeal, it nonetheless found that the crime-fraud exception to the attorney-client privilege was not subject to collateral appeal. 558 U.S. at 109-111. As the Court stated, "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from the evidence." 558 U.S. at 109. The Court disagrees with Defendants that the privilege issue in the present case presents a novel question of law; instead, the Court is of the opinion that the present case presents an application of the crime-fraud exception to the attorney-client privilege. An improper disclosure of privileged material, if any, can be remedied after final judgment.

[4] Carbonite argues that "[b]oth the Federal Circuit and the Fifth Circuit have regularly reversed orders to produce privileged documents where, as here, the party seeking production has failed to meet the requirements of the crime-fraud exception." (Dkt. #988 at p. 5) (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 808 (Fed. Cir.

Court in *Mohawk* found that the improper disclosure of privileged documents did not cause a party irreparable harm, and was not subject to collateral review. 558 U.S. at 109. Specifically, the Court stated:

> [P]ostjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

*Mohawk*, 558 U.S. at 109. Therefore, the Court finds that Defendants are not irreparably harmed by the Court's Order to disclose the relevant documents, as they will have the chance to appeal this issue upon final judgment of the case.[5][6]

---

2000); *In re Am. Cyanamid Co.*, 7 F. App'x 930 (Fed. Cir. 2001); *In re E.E.O.C.*, 207 F. App'x 426, 435 (5th Cir. 2006). However, the Court finds that these cases are not applicable given the Supreme Court's findings in *Mohawk*. *In re Spalding*, the Federal Circuit found that mandamus review was appropriate because "an appeal after disclosure of the privileged communication is an inadequate remedy." 203 F.3d 800, 804 (citing *In re Regents of the University of California*, 101 F.3d 1386, 1387 (Fed. Cir. 1996)). However, in *Mohawk*, the Supreme Court concluded that appellate review of the improper disclosure of privileged materials could be remedied after the final judgment. 558 U.S. at 109. The Court finds that the Federal Circuit has also followed the precedent established by *Mohawk*; and therefore, finds Carbonite's argument to be inapplicable. *See In re Lawson Software*, 494 F. App'x 56, 57-58 (Fed. Cir. 2012).

[5] Carbonite asserts that in the absence of the stay, "the Court will in effect force Carbonite to face contempt of the Order by not producing the Privileged Documents, or to produce the documents and thereby forfeit its appellate rights." (Dkt. #988 at p. 8). The Court is not persuaded that Defendants have forfeited their appellate rights, as *Mohawk* stated that the improper disclosure of privileged documents is reviewable upon final judgment. *Mohawk*, 558 U.S. at 109. Additionally, it is the Court's opinion that deciding whether or not to comply with the Court's Order is part of Defendants' litigation strategy. The Court believes that Defendants knew whether or not they were going to comply with the Court's Order well-before they informed the Court of their intention on September 3, 2015, and filed their motions to stay on September 4, 2015, which was the production deadline. Therefore, the Court is not persuaded by Carbonite's argument that it is in some way forcing Defendants to face contempt by not granting their motions to stay.

[6] Carbonite also asserts that "[the] harm…is compounded by the sheer volume of documents at issue." (Dkt. #988 at p. 8). The Court is not persuaded by this argument. The Court agrees with Defendants that many documents have been produced pertaining to the RICO stage of the litigation. However, Carbonite seems to assert that the Court should grant their motion for a stay because it "directed EMC to produce 357 additional documents…and Carbonite to produce 215 additional documents…for a total of 572 documents." (Dkt. #988 at pp. 8-9). Defendants have already produced these documents to the Court for the Court's *in camera* inspection. At that time, EMC produced approximately 989 documents to the Court and Carbonite produced approximately 475 documents. After reviewing all of the documents, the Court decided that only 357 documents from EMC's production should be produced to Defendant under the crime-fraud exception, and 215 documents should be produced by Carbonite. The Court finds it unlikely that this will create a burden for either Defendant as they have already produced these documents to the Court.

The Court also finds that Plaintiff would be irreparably harmed should the Court grant a stay.  Plaintiff asserts that Defendants have not yet sought mandamus review from the Federal Circuit, and any such review is likely to take time.  Therefore, Plaintiff alleges that it is unlikely to have the ordered documents with sufficient time to make use of them in the upcoming RICO trial, which the Court has scheduled for October 26, 2015 (Dkt. #989 at p. 7).  The Court agrees with Plaintiff that it would be harmed by the Court granting a stay while the Defendants seek appellate review of the production orders.  Defendants are well-aware of the RICO case's trial schedule.  In fact, during a June 18, 2015 telephone conference with the Court, Defendants requested that the Court re-schedule the RICO trial from its original January 4, 2016 date to an earlier October 26, 2015 trial date (Dkt. #989, Exhibit F, at 10:22-11:16, 19:19-20:15).  Knowing that the trial date was rapidly approaching, Defendants waited until seven weeks before the scheduled trial date to raise the possibility of their appeal.  The Court agrees with Plaintiff that granting a stay effectively "puts Oasis in the position of:  (1) not having Court-ordered, relevant discovery before trial; or (2) allowing Defendants to succeed in their efforts to delay trial[.]" (Dkt. #989 at p. 7).

Additionally, EMC asserts that "Oasis cannot complain of any delay occasioned by appellate review" because "[i]t was Oasis's decision to seek privileged documents through discovery." (Dkt. #986 at p. 8).  The Court finds that this argument is not persuasive.  Oasis has alleged that Defendants have violated various RICO statutes.  Plaintiff is allowed to conduct discovery to prove or disprove those allegations.  Because it is alleging that the Joint Defense Group bought the testimony of the alleged co-inventors through the guise of the Joint Defense Agreement, it is necessary that they obtain documents and communications that could be privileged under the attorney-client privilege to demonstrate whether the alleged misconduct

took place.  Defendants cannot state that Plaintiff is not harmed by a stay simply because they requested discovery of the privileged material, as they are allowed under the Federal Rules of Evidence.  Therefore, the Court finds that granting a stay would irreparably harm the Plaintiff.

Defendants also assert that a stay of the document production would benefit the public interest because "[i]t is not in the public interest to deprive the appeals court the opportunity to resolve these serious legal issues before the attorney-client privilege is irreparably pierced." (Dkt. #986 at p. 9).  As previously stated, the Court finds that the attorney-client privilege is not irreparably pierced, as it is reviewable, and can be properly remedied, upon appeal of the final judgment.  *See Mohawk*, 558 U.S. at 109.  Therefore, the Court finds that denying a stay would not harm the public interest, and finds that the equitable balance requires that the Court deny Defendants' motion to stay the Court's Order compelling production.

## CONCLUSION

It is therefore **ORDERED** that Motion of Defendants Decho Corporation and EMC Corporation to Stay the Court's Order Compelling Production of Documents Pending Appeal (Dkt. #986) and Carbonite, Inc.'s Motion to Temporarily Stay Order to Produce Privileged Documents [ECF No. 969] (Dkt. #988) is hereby **DENIED**.

**SIGNED this 11th day of September, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE