FILED: 12/8/15
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

————————————————

**IN RE: EMC CORPORATION, DECHO CORP.,**
*Petitioners*

————————————————

2015-151

————————————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 4:10-cv-00435-ALM, Judge Amos L. Mazzant III.

------------------------------------------------------------------------------------

**IN RE: CARBONITE, INC.,**
*Petitioner*

————————————————

2015-153

————————————————

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 4:10-cv-00435-ALM, Judge Amos L. Mazzant III.

————————————————

**ON PETITION**

————————————————

MARK ANDREW PERRY, Gibson, Dunn & Crutcher LLP, Washington, DC, for petitioner Decho Corp. and EMC Corporation. Petitioners Decho Corp. and EMC Corpora-

2                                    IN RE: EMC CORPORATION

tion also represented by JOSH KREVITT, New York, NY; THOMAS M. MELSHEIMER, Fish & Richardson P.C., Dallas, TX. Petitioner EMC Corporation also represented by KRISHNENDU GUPTA, PAUL T. DACIER, WILLIAM R. CLARK, THOMAS A. BROWN, EMC Corporation, Hopkington, MA.

BETH I.Z. BOLAND, Foley & Lardner LLP, Boston, MA, for petitioner Carbonite, Inc,. Also represented by MICHAEL THOMPSON; RACHEL M. BLISE, Milwaukee, WI; DAVID B. GOROFF, Chicago, IL.

JONAS R. MCDAVIT, Desmarais LLP, New York, NY, for respondent Oasis Research, LLC. Also represented by TAMIR PACKIN, ALAN S. KELLMAN.

————————————

Before DYK, MOORE, and CHEN, *Circuit Judges*.

Order for the court filed by *Circuit* Judge CHEN.

Dissenting order filed by *Circuit Judge* MOORE.

# O R D E R

CHEN, *Circuit Judge*.

EMC Corporation and Decho Corporation (collectively, EMC) and Carbonite, Inc. (Carbonite) separately submit petitions for writs of mandamus to direct the United States District Court for the Eastern District of Texas to vacate and reverse its (1) orders requiring EMC and Carbonite to produce allegedly privileged materials,[1] and (2) order imposing sanctions against EMC and Carbonite.

————————————

[1]   The papers discuss both the attorney-client privilege and work-product protection.  Because both may be overcome by the crime-fraud exception, we refer to the documents here simply as being asserted to be privileged.

EMC and Carbonite also separately submit motions to stay production of their documents pending this court's review of the mandamus petition. On September 16, 2015 and September 18, 2015, we temporarily stayed the orders requiring the production of documents in these matters.

## I. BACKGROUND

On August 30, 2010, Oasis Research, LLC (Oasis) sued EMC and Carbonite (collectively, the Petitioners) for infringement of four patents related to online data backup and storage. Christopher Crawford is the sole named inventor on the patents-in-suit. In October 2010, the Petitioners entered into a Joint Defense/Common Interest and Confidentiality Agreement (JDA).

Petitioners through their counsel discovered information concerning the existence of one or more other potential co-inventors who were not named in the patents. After a series of communications and negotiations, an agreement was reached whereby the putative co-inventors agreed to assign all rights they had in the patents to the Petitioners in exchange for a pre-determined sum (Agreement to Assign Patent Rights). The putative co-inventors also agreed to provide documents and testimony to support their status as co-inventors.

The inventorship issue was tried to a jury and the jury returned a verdict finding that one of the putative co-inventors, Jack Byrd, was actually an omitted co-inventor. The jury's verdict was later set aside by the district court on a post-trial motion.

Oasis also asserted claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962(c) and (d). Oasis alleges that the Petitioners engaged in a pattern of acts falling under the scope of the RICO Act. "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related

and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (citation omitted).

Oasis argues that the Petitioners committed two predicate acts:  bribery of witnesses under 18 U.S.C. § 201[2] and witness tampering under 18 U.S.C. § 1512.[3]  To support these claims, Oasis moved to compel the Petitioners to produce allegedly privileged documents related to the putative co-inventors under the crime-fraud exception, and to compel production of the JDA.

On July 22, 2015, the district court granted the motion to compel in part and ordered production of the documents for *in camera* review.  The order recounts the nature of Oasis's RICO allegations but does not explain the basis for the ruling other than to state: "After considering the pleadings in this case, the Court finds that the motion should be granted in part and denied in part." The court ordered production of a limited set of documents, and ordered production of a different set of documents for *in camera* review.

Following that *in camera* review, on August 28, 2015, the district court issued separate orders to EMC and

---

[2]    Under 18 U.S.C. § 201, it is a crime to "directly or indirectly, give[], offer[], or promise[] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court[.]"

[3]    Under 18 U.S.C. § 1512, it is a crime to use "intimidation, threaten[], or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding."

Carbonite instructing the production of certain documents. The orders state that the documents "meet the criteria under the crime fraud exception" with respect to Oasis's RICO allegations but do not otherwise set forth the district court's reasons for granting the orders.

Prior to the deadline to produce the documents, the Petitioners moved to stay the orders pending appeal to this court. The district court denied these motions on September 11, 2015. On the same day, EMC filed a motion for stay pending appellate review with this court. On September 14, 2015, Carbonite filed its motion for stay pending appellate review with this court.

On September 15, 2015, EMC filed its petition for mandamus to this court. On that same day, the district court entered a sanctions order against EMC and Carbonite for not complying with the production order.[4] We entered an order temporarily staying production of EMC's privileged documents on the next day, September 16, 2015.[5]

――――――――――――――――

[4]   The district court held that, at the RICO trial:

1.   The Court will inform the jury that it ordered Defendants to produce documents that it found relevant to Oasis' RICO claims, and Defendants violated the Court's Orders by refusing to produce those documents; and

2.   Based upon Defendants' conduct, the jury may infer that those documents supported Oasis' claims and were damaging to Defendants' case.

[5]   Carbonite filed its mandamus petition on September 17, 2015. We entered an order temporarily staying production of Carbonite's documents on September 18, 2015.

## II. LEGAL STANDARD

### A

While the remedy of mandamus is reserved for extraordinary situations, it may be employed when necessary to correct a "clear abuse of discretion or 'usurpation of judicial power'" by the trial court. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) (quoting *DeBeers Consol. Mines v. United States*, 325 U.S. 212, 217 (1945)). In such situations, mandamus review of privilege issues may be a "useful 'safety valve' for promptly correcting serious errors." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (internal citation omitted).

There are "three conditions [that] must be satisfied before [mandamus] may issue." *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004). The petitioner must show a clear and indisputable right to relief. *Id.* at 381 (quoting *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.,* 426 U.S. 394, 403 (1976)). The petitioner must "lack adequate alternative means to obtain the relief" it seeks. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989); *Cheney*, 542 U.S. at 380; *Kerr*, 426 U.S. at 403. And "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

Because this petition does not involve substantive issues of patent law, this court applies the law of the regional circuit in which the district court sits, in this case the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003)).

The privilege associated with communications between attorneys and clients "is the oldest of the privileges for confidential communications known to the common

law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted); *see also United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (the attorney-client privilege is "the oldest and most venerated" of the common law privileges). This is because "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn*, 449 U.S. at 389.   The work-product doctrine likewise has strong public policy roots. *United States v. Nobles*, 422 U.S. 225, 236–37 (1975) ("The work-product doctrine . . . reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'") (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

But the privileges are not absolute and are subject to certain exceptions.  Under the crime-fraud exception, the privileges are overcome "where communication or work product is intended 'to further continuing or future criminal or fraudulent activity.'" *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000) (quoting *United States v. Dyer*, 722 F.2d 174, 177 (5th Cir. 1983)).  This exception is narrow and reserved for "egregious abuses of the protections that the privilege affords." *In re Grand Jury Investig.*, 399 F.3d 527, 535 (2d Cir. 2005); *see also* Cary Bricker, *Revisiting the Crime-Fraud Exception to the Attorney-Client Privilege*, 82 Temp. L. Rev. 149, 150 (2009) (exception applies only "in extremely rare circumstances where a court finds that the privilege holder abused the privilege by an established quantum of proof . . . .").

"In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982).  To describe the necessary prima facie showing for the application of the crime-fraud exception, the Fifth Circuit has applied the definition of prima facie contained in Black's

8                                        IN RE: EMC CORPORATION

Law Dictionary (4th ed. 1968): "(s)uch as will suffice until
contradicted and overcome by other evidence . . . (a) case
which has proceeded upon sufficient proof to that stage
where it will support [a] finding if evidence to [the] con-
trary is disregarded."  *In re Grand Jury Proceedings in
Matter of Fine*, 641 F.2d 199, 203 (5th Cir. 1981).

Meeting the prima facie test ordinarily requires "an
initial showing that the client intended to further an
ongoing or future crime or fraud during the attorney-
client representation" and "a secondary showing of some
valid relationship between the work product . . . and the
prima facie violation; that is, the work product must
reasonably relate to the fraudulent activity."  *In re Grand
Jury Subpoena*, 419 F.3d 329, 346 (5th Cir. 2005) (inter-
nal quotation marks and citations omitted).  Allegations
in pleadings are not evidence sufficient to make a prima
facie showing that the crime-fraud exception applies.  *Int'l
Sys.*, 693 F.2d at 1242.

"[T]he specific standard that we apply here is that
mandamus will be granted upon a determination that
there has been a clear abuse of discretion."  *In re
Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008)
(en banc).  To apply that standard, however, an appellate
court must have a clear understanding of the grounds of
the decision under review.  Where an opinion explaining a
decision lacks adequate fact findings or explanation,
meaningful review is not possible and it is appropriate to
vacate and remand for further findings.  *See Micron
Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1327 (Fed. Cir.
2011); *see also In re Rhone-Poulenc Rorer, Inc.*, No. 546,
155 F.3d 569 (Fed. Cir. June 5, 1998) ("When there is an
insufficient basis for a prima facie showing of crime or
fraud, mandamus may issue to correct the district court's
vitiation of a privilege.") (unpublished decision) (citation
omitted).

### III. DISCUSSION

We find the problem with this case is that the district court did not explain the basis for its conclusion that a prima facie case has been made.

### A

We are unable to discern the court's reasoning or factual findings in the order granting the motion to compel production.

Specifically, there is no indication of what acts constituted a crime or fraud, who perpetrated those acts, or how such acts meet the requisite "showing that the client intended to further an ongoing or future crime or fraud during the attorney-client representation[.]"  *In re Grand Jury Subpoena*, 419 F.3d at 346.  If the agreement was pursued, as Petitioners contend, with the sole intent of acquiring the putative co-inventors' rights at a fairly negotiated price, it is hard to see how such acts were in furtherance of a crime.  On the other hand, if the parties involved intended to compensate the witnesses for their testimony or to induce them to testify in a certain way, the crime-fraud exception may apply.

Because the district court did not explain its reasons for the ruling, however, this court is left to speculate as to whether the law was applied correctly or whether the evidence supported the required factual findings.  *See, e.g., Myers v. Gulf Oil Corp.*, 731 F.2d 281, 283–84 (5th Cir. 1984) ("When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review.").  We find the absence of justification particularly troublesome because Petitioners stand accused of a serious abuse of the attorney-client relationship. *See In re Grand Jury Investig.*, 399 F.3d at 535 (crime-fraud exception reserved for "egregious abuses of the protections that the privilege affords.").

Oasis argues there is a "mountain of evidence" of record which it contends supports a prima facie case. Some of this evidence was referenced by the court in the context of other orders. But even if those orders are plausibly related to the order on appeal, we are again left to speculate as to how any finding contained therein applies to the crime-fraud exception as it relates specifically to the Petitioners here.

For example, Oasis points out that in the order denying Petitioners' motion to stay, the district court appeared to address the question of whether a prima facie case was met. But the district court's analysis there is likewise too cursory to permit proper review: "The Court reviewed all documents submitted by the Defendants in their *in camera* submissions, and with all of the evidence available to the Court, determined that a limited amount of documents received were subject to production under the crime-fraud exception to the attorney-client privilege regarding the RICO allegations." Mem. and Order at 8 n.2, *Oasis Research, LLC v. Carbonite, Inc.*, No. 4:10-cv-435 (E.D. Tex. Sept. 11, 2015), ECF No. 1000.

Oasis also points to the district court's order requiring production of third party documents under the crime-fraud exception to the attorney-client privilege. Whatever can be said about the acts constituting crime or fraud with respect to those *third parties and their attorneys*, such evidence cannot be automatically attributed as evidencing the intent of the *Petitioners and their attorneys*. *See In re Grand Jury Subpoena*, 419 F.3d at 346 (crime-fraud exception requires "showing that *the client intended* to further an ongoing or future crime or fraud during *the attorney-client representation*[.]") (emphasis added).

B

Petitioners also argue that the order is contrary to law set forth in this court's decision in *Ethicon, Inc. v.*

*U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998). They contend that this court in *Ethicon* approved of arrangements where omitted co-inventors assign patent rights to defendants and consent to cooperate in litigation. Because the agreement here is allegedly of the type sanctioned by *Ethicon*, Petitioners claim that the district court erred as a matter of law in finding the crime-fraud exception applied.

We find Petitioners ask too much of this court's prior decision. In *Ethicon*, this court found a district court did not abuse its discretion by admitting the testimony of a putative co-inventor. *Id*. at 1465. In doing so, we made the observation that "[a] patent license agreement that binds the inventor to participate in subsequent litigation is very common. . . . This sort of agreement simply assures the licensee that it will be able to defend the property in which it has purchased an interest." *Id*.

*Ethicon* did not set forth a per se rule that all such agreements are lawful on their face, no matter how the agreement is executed. We therefore find Petitioners' legal challenge without merit. On the other hand, *Ethicon* does acknowledge that such agreements are "very common." Thus to the extent that the district court believed that any such agreements, on their face, would implicate witness tampering or bribery, such a conclusion would be in tension with *Ethicon*. But again, we have no findings or reasons on which to base our review. Our inability to discern the district court's reasoning with respect to *Ethicon* further supports our decision to vacate.

## C

Ultimately, because the district court is much more familiar with the record, we deem it appropriate for the district court to first make the requisite findings in this matter if the crime-fraud exception is to apply. To make such finding as an appellate court based upon our review

of a cold record would in these circumstances intrude on the authority of the trial court.

We thus vacate the orders requiring production of the documents, not because we find the district court has erred on the merits whatsoever, but because the district court's analysis of the prima facie case of crime or fraud is incomplete. *See, e.g., In re Rhone-Poulenc Rorer*, 155 F.3d 569 (finding appropriate to vacate crime-fraud determination on mandamus on grounds that there is "insufficient basis" for a prima facie showing).

Importantly, the relief granted herein is without prejudice to the district court revisiting the matter and again granting the motion to compel, with sufficient findings and discussion. *Cf. In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1382 (Fed. Cir. 2010) (mandamus petition granted-in-part, vacating discovery order and remanding for reconsideration under the standards set forth and with such evidence as is relevant to the determination).

Because the Petitioners do not challenge the district court's decision to undertake an *in camera* review, we find that it is unnecessary on remand for the district court to conduct such an analysis. We also find that the district court need not explain the reasons for applying the exception on a document-by-document basis since the petitioners challenge only the district court's overall ruling and not its rulings as to particular documents.[6]

Accordingly,

IT IS ORDERED THAT:

---

[6]    Based on a brief review of the allegedly privileged materials, it does not appear that they all properly fall within either the attorney-client privilege or the attorney work product doctrine.

IN RE: EMC CORPORATION                                    13

    (1) The petitions are granted to the limited extent that (a) the orders requiring production of the documents are vacated, without prejudice to the district court revisiting the matters, and (b) the sanctions order is vacated. In all other aspects, the petitions are denied.

    (2) The motions are denied as moot.

FOR THE COURT

October 22, 2015               /s/ Daniel E. O'Toole
     Date                         Daniel E. O'Toole
                                  Clerk of Court

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

## IN RE:  EMC CORPORATION, DECHO CORP.,
*Petitioners*

———————————

2015-151

———————————

On Petitions for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 4:10-cv-00435-ALM, Judge Amos L. Mazzant III.

---------------------------------------------------------------------------

## IN RE:  CARBONITE, INC.,
*Petitioner*

———————————

2015-153

———————————

On Petitions for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 4:10-cv-00435-ALM, Judge Amos L. Mazzant III.

———————————

MOORE, *Circuit Judge,* dissenting.

I would deny the petitions for mandamus.  A writ of mandamus is a drastic and extraordinary remedy.  *Will v. United States*, 389 U.S. 90, 106 (1967); *Cheney v. U.S.*

*Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004); *Ex parte Fahey*, 332 U.S. 258, 259 (1947). The "extraordinary remedy" of mandamus is justified in "only exceptional circumstances amounting to a judicial 'usurpation of power.'" *Will*, 389 U.S. at 95; *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). It does not "run the gauntlet of reversible errors" or "control the decision of the trial court;" rather its purpose is to "confine the lower court to the sphere of its discretionary power." *Will*, 389 U.S. at 104.

Because mandamus "is one of 'the most potent weapons in the judicial arsenal,'" *Cheney*, 542 U.S. at 380 (quoting *Will*, 389 U.S. at 107), the Supreme Court has identified "three conditions [that] must be satisfied before it may issue." *Id.* (citing *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). First, the petitioner "must have no other adequate means to attain the relief he desires." *Id.* (alterations omitted). This requirement "ensure[s] that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380–81 (citing *Fahey*, 332 U.S. at 260). Second, the petitioner has the burden to show her right to mandamus is "clear and indisputable." *Id.* at 381; *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953). Finally, the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Satisfaction of these conditions is "demanding" but "not insuperable." *Id.* Mandamus is not appropriate merely "to prevent 'judicial inconvenience and hardship' occasioned by appeal being delayed until after final judgment." *Bankers Life & Cas.*, 346 U.S. at 383 (quoting *Fahey*, 332 U.S. at 259).

Petitioners argue that their right to issuance of a writ of mandamus is clear and indisputable because there has been no *prima facie* showing that the documents the district court ordered them to produce are subject to the crime-fraud exception to the attorney-client privilege. The crime-fraud exception precludes application of the

attorney-client privilege or work product protection to communications "intended to further continuing or future criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005); *United States v. Zolin*, 491 U.S. 554, 563 (1989); *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002). In the Fifth Circuit, a party must make a *prima facie* case that the crime-fraud exception applies before a court can order production of the communications-at-issue. *In re Grand Jury Subpoena*, 419 F.3d at 335-36; *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982). The *prima facie* case is made upon production of evidence "such as will suffice until contradicted and overcome by other evidence . . . a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded." *In re Grand Jury Subpoena*, 419 F.3d at 336 (quoting *In re Int'l Sys.*, 693 F.2d at 1242) (alterations omitted). The challenged-communications themselves may be a part of this evidence. *Id.* at 335–37; *Zolin*, 491 U.S. at 568–69; *see also In re Grand Jury Proceedings*, No. 15–1555, 2015 WL 5209171, at *8 (1st Cir. Sept. 4, 2015) ("[I]n camera review may be used to determine whether there is sufficient evidence to apply the crime-fraud exception to a claim of attorney-client privilege."); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036, 1038–39 (2d Cir. 1984) (concluding that the crime-fraud exception applied to one of three categories of documents after reviewing them *in camera*); *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) ("Because it is often difficult or impossible to prove that the [crime-fraud] exception applies without delving into the communications themselves, the Supreme Court has held that courts may use *in camera* review to establish applicability of the exception."). Thus, under Fifth Circuit law the crime-fraud exception applies when the evidence, including the allegedly privileged documents, suffices to support a finding of crime-fraud if evidence to the contra-

ry is disregarded.  Under this Fifth Circuit rubric, infer-
ences or disputes over evidence must be viewed in a
manner favorable to the movant.  We are to ignore con-
trary evidence.  *In re Grand Jury Subpoena*, 419 F.3d at
336.

   To be clear, the majority does not suggest that the
crime-fraud exception should not apply in this case.
Rather the majority grants mandamus solely to ask the
district court to elaborate on its reasoning.  I am sympa-
thetic to the majority's position – I too would have liked
more detailed reasoning in the district court opinion.  On
this    record,    however,    I    cannot    conclude    that
EMC/Carbonite are clearly and indisputably entitled to
the relief they seek.  They ask that we grant mandamus
because the district court was wrong in its determination
that the crime-fraud exception applied.  I cannot conclude
that they are clearly and indisputably correct that the
crime-fraud exception does not apply.  On mandamus, the
court must consider the combination of Oasis's evidence
and argument and the *in camera* documents (which Oasis
has not yet seen), and ignore all contrary evidence.  And
unless our review of this evidence convinces us that the
district court's decision that the crime-fraud exception
applies is clearly and indisputably wrong, we must leave
it intact at this stage of the proceedings.  The majority
has not concluded that the district court determination
that the crime-fraud exception applied was wrong.  The
majority needs more explanation to review the district
court's analysis.  I do not think this is an appropriate use
of mandamus.  If the record supports the district court
conclusion (and the majority does not suggest otherwise),
mandamus is not appropriate simply to get a better peek
behind the curtain.

   Moreover, as the Supreme Court has held mandamus
is only appropriate if the petitioner has "no other ade-
quate means to attain the relief he desires."  *Cheney*, 542
U.S. at 380.  As all agree, the merits of the district court's

decision that the crime-fraud exception applies could be reviewed on direct appeal. And courts have repeatedly held that mandamus should not be used as a substitute for the regular appeals process, even when the mandamus may result in some efficiency. *Bankers Life & Cas.*, 346 U.S. at 383; *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 29–31 (1943); *In re Estelle*, 516 F.2d 480, 484 (5th Cir. 1975). If a merits panel decides on appeal that the district court was wrong to conclude that the crime-fraud exception applied, then the subsequent trial which included that privileged evidence (or which included a negative inference because EMC/Carbonite refused to proffer the privileged evidence) would be unraveled. And yes that would be inefficient. If such inefficiency alone were enough for mandamus, the same argument could be made for nearly *any* discovery decision, transfer motion, venue motion, jurisdictional concern, or even denial of summary judgment, just to name a few examples. Though on occasion, we have granted mandamus for a *wrongly* denied transfer motion. *See, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2009). In those cases, the district court decisions were determined by the panel to be clearly and indisputably wrong. Not so here. Here, we have an issue that can be appealed in the normal course *and* a district court decision which is not clearly and indisputably wrong. This does not present a case for mandamus. Though patent cases are expensive, a special mandamus standard for patent cases is not appropriate. We are bound to follow the Supreme Court law and in this case to apply the mandamus law of the Fifth Circuit. And we could not find a case in any circuit where mandamus was granted when the issue could be appealed in the normal course *and* the district court decision was not clearly and indisputably wrong. The desire for more detailed reasoning is just not enough for mandamus when the record supports the district court determination.

Moreover, the majority's reliance on *In re Rhone-Poulenc Rorer, Inc.*, 155 F.3d 569 (Fed. Cir. 1998) (unpublished) is misplaced. *Rhone-Poulenc* is not a case in which this court granted mandamus because the district court's rationale was not discernible from its opinion. Rather, in *Rhone-Poulenc,* we concluded that the district court applied incorrect law, namely "the district court stated that it was unnecessary to consider whether the patent would have issued but for the omission." 155 F.3d 569 at *3. We determined that where the court expressly applied the wrong law, there was an insufficient basis for a prima facie showing. *Id. Rhone-Poulenc[1]* was not a mandamus case where the district court decision lacked an explanation of the analysis which led to its conclusion, but rather where the district court decision expressly relied upon an incorrect statement of the law. As such, it

---

[1]   *Rhone-Poulenc* stated that writs of mandamus may be sought "to prevent the wrongful exposure of privileged communications." 155 F.3d 569 (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996)). First, I note that the majority has not determined that it would be wrong to force production of the *in camera* documents in this case. Second, the Supreme Court's 2009 decision in *Mohawk Industries, Inc. v. Carpenter* indicates that parties have other options to avoid disclosing arguably privileged documents while still obtaining post-judgment review of the production order, such as by defying a disclosure order and incurring court-imposed sanctions. 558 U.S. at 109, 111. And in this case, the parties have done exactly this. Citing *Mohawk*, we have routinely denied petitions for writs of mandamus where such alternative avenues for review exist. *In re Shelbyzme*, 547 F. App'x 1001, 1002 (Fed. Cir. 2013) (unpublished); *In re Lawson Software, Inc.*, 494 F. App'x 56, 58 (Fed. Cir. 2012) (unpublished).

is no support for the decision to grant mandamus in this case.

In this case, the district court reviewed *in camera* over 900 documents submitted by EMC and 400 documents submitted by Carbonite.  It ordered EMC to produce 357 documents and Carbonite to produce 215 documents, finding that these documents "meet the criteria under the crime fraud exception to the attorney-client privilege and the work product doctrine in regards to [Oasis's RICO] allegations."  Order[s] at 1, Oasis Research, LLC v. Carbonite, Inc., No. 4:10-cv-435 (E.D. Tex. Aug. 28, 2015), ECF Nos. 968, 969.  The district court carefully reviewed each document before ordering its production, as evident from its order to Carbonite that identifies specific pages within certain documents that must be produced while others "should remain privileged."  Order at 2, Oasis Research, LLC v. Carbonite, Inc., No. 4:10-cv-435 (E.D. Tex. Aug. 28, 2015), ECF No. 969.  But, as the majority notes, in these orders the district court did not specifically identify what acts it thought were criminal or fraudulent, who performed those acts, or how they showed the clients' intent to further an ongoing or future crime or fraud as required to make out a *prima facie* showing for the crime-fraud exception.  Again mandamus requires clear and indisputable entitlement to relief be established.  For the reasons presented in Oasis's brief, the evidence and arguments it cites, *and* the *in camera* documents at least some of which support Oasis's claims, I cannot conclude that the petitioners are clearly and indisputably entitled to the relief that they seek.  The *prima facie* case is met if the evidence, including the *in camera* documents, makes a *prima facie* case for Oasis's RICO claims, ignoring all contrary evidence.  I cannot conclude that the district court's decision that a prima facie case is made out is clearly and indisputably wrong.

Petitioners argue, relying on our *Ethicon* decision that the district court made an error of law if it concluded that

a *prima facie* case was made by the assignment agreements alone. I agree with the majority's discussion of *Ethicon.* Maj. Op. at 10-11. And it certainly would have been problematic if the district court hinged its decision entirely and exclusively on the assignment agreements in this case. But there is no evidence that it did so. Oasis argued that other evidence, including witness testimony about the co-inventor being paid for testimony, and the circumstances surrounding the co-inventors' decisions to participate provide sufficient evidence to meet the crime-fraud exception. When I review this evidence and the *in camera* documents which further support Oasis's allegations,[2] I cannot conclude that the petitioners are clearly and indisputably entitled to reversal of the district court's order of production.

Finally, I agree with the majority that, following *in camera* review of the documents, it appears that some of them may not be protected by either the attorney-client privilege or work product doctrine.[3] For example, email communications with a third party fact witness who is not represented by counsel generally are not privileged.

---

[2]    Given the current posture of the case, I will not discuss the substance of the *in camera* documents and explain how they support the district court's determination. Of course, if the district court on remand determines that the crime-fraud exception applies, it may, as other courts do, discuss the *in camera* documents which support that decision.

[3]    The parties agreed to limit the logging of privileged documents in this case. Without such a log or index, Oasis is entirely in the dark regarding the individual documents claimed to be privileged and thus cannot point out to the court that some of them may not even be privileged.

IN RE: EMC CORPORATION                                                 9

These documents could be ordered produced regardless of the crime-fraud determination at the district court.

Because I believe the Petitioners have not shown a clear and undisputable right to issuance of a writ of mandamus and because there are other adequate means by which Petitioners may attain the relief they desire, I would deny the petitions.